KRISTIN L. MARTIN (SBN 206528)
LUKE DOWLING (SBN 328014)
McCracken, Stemerman & Holsberry, LLP
475 14th Street, Suite 1200
Oakland, CA 94612
Telephone:      (415) 597-7200
Facsimile:       (415) 597-7201
E-mail:          klm@msh.law
                 ldowling@msh.law

*Attorneys for Plaintiff UNITE HERE*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITE HERE,<br><br>                          Plaintiff,<br><br>v.<br><br>Wilton Rancheria,<br><br>                          Defendants. | Case No.<br><br>**VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR** |

1.     This is a petition to compel arbitration and selection of an arbitrator under an agreement (the "Agreement") between three parties: UNITE HERE (the "Union") which is a labor union that represents casino employees throughout the United States; the Wilton Rancheria (the "Tribe") which is an Indian tribe that owns the Sky River Casino (the "Casino"); and Boyd Gaming Corporation (the "Casino Operator") which operates the Casino for the Tribe.  That Agreement provides that the Union may become the collective bargaining representative of the Casino's employees through a "card check" procedure in which an arbitrator determines whether the majority of employees have signed cards designating the Union to serve as their collective bargaining representative.

2.      The Agreement requires that card check to be conducted by an arbitrator selected by the Union and the Tribe, but the card check has not taken place because the Tribe refuses to select an arbitrator by the method set forth in the Agreement or any other method.  Accordingly, the Union seeks an order compelling the Tribe immediately to select an arbitrator under the Agreement, and submit any disputes with the Union about the interpretation or application of that Agreement to arbitration.

## PARTIES

3.      Plaintiff UNITE HERE is a labor organization representing employees in industries affecting commerce within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, including in casinos, hotels and food service operations.  UNITE HERE represents employees in the Eastern District of California.

4.      Defendant Wilton Rancheria owns a casino gaming facility under the name Sky River Casino.  The Casino is located in Sacramento County, California, which is in the Eastern District of California.  Wilton Rancheria is an employer within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* because the Tribe, the Casino Operator and the Union are parties to a contract requiring that disputes under the contract be decided by an arbitrator.  The Casino Operator is also an employer within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

6.      Venue lies within this judicial district pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

7.      The Union is informed and believes and thereupon alleges that less than 1,000 people are enrolled members of the Tribe.

8.      The Tribe and the United States have not entered into any treaty.  No treaty between the Tribe and the United States exempts the Tribe from jurisdiction of the Labor Management Relations Act.

2

9.      On about June 2017, the Governor of California and the Chairman of the Tribe signed a Compact pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, that authorizes the Tribe to operate the Casino.  The Compact requires the Tribe to adopt a "Tribal Labor Relations Ordinance" that is attached to the Compact.  A true and correct copy of the Tribal Labor Relations Ordinance is attached hereto as Exhibit A.

10.     On about August 2017, the Union, the Tribe and the Casino Operator entered into a Memorandum of Agreement (the "Agreement") setting out the process by which the Union could become the collective bargaining representative for certain classifications of employees at the Casino ("Employees").  The Agreement refers to the Casino Operator as the "Operator".  A true and correct copy of the Agreement is attached hereto as Exhibit B.

11.     At no time before the Union and Tribe entered into the Agreement did the Tribe or the Casino Operator tell the Union that it was the Tribe's position that ratification of the Compact and/or the Tribe's adoption of the Tribal Labor Relations Ordinance, as required by the Compact, would void any provision of the Agreement.

12.     The Agreement states, in paragraph 14, "The Union hereby agrees to actively support before the appropriate federal, state, and local administrative, bureaucratic, legislative and regulatory bodies, the Tribe's efforts to obtain ratification of the Compact by the California legislation, and to take all reasonable and necessary steps to assist the Tribe in connection therewith."  The "Compact" refers to the Compact that the Governor of California and the Tribe's Chairman signed on about June 2017.

13.     In accordance with paragraph 14 of the Agreement, on about August 22, 2017, the Union's California Political Director (Jack Gribbon) testified before the California Legislature's Senate Governmental Organization Committee in support of the Compact.  On about August 29, 2017, Jack Gribbon testified before the California Legislature's Assembly Governmental Organization Committee in support of the Compact.

14.     On about September 11, 2017, the Tribe posted on its website an article from GGB News (Global Gaming Business News) which lauds UNITE HERE for Jack Gribbon's testimony and support for the Compact.  A true and correct copy of that posting is attached hereto as Exhibit C.

15.     At no time before the Union, through its California Political Director, testified in support

VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION           CASE NO.

of ratification of the Compact by the California Legislature did the Tribe or the Casino Operator tell the Union that it was the Tribe's position that ratification of the Compact and/or the Tribe's adoption of the Tribal Labor Relations Ordinance as required by the Compact would void any provision of the Agreement.

16.     On about October 3, 2017, the California Legislature ratified the Compact without making any changes to the Compact, including the Tribal Labor Relations Ordinance.

17.     On about January 22, 2018, the United States Secretary of Interior approved the Compact without making any changes to the Compact, including the Tribal Labor Relations Ordinance.

18.     On about August 2022, the Casino opened to the public and since then, has remained open twenty-four hours each day and seven days each week.  The Casino's gaming facilities occupy 100,000 square feet and include at least 21,000 slot machines and more than eighty table games.  The Casino has seventeen food and beverage outlets and offers live entertainment.

19.     The Union is informed and believes and thereupon alleges that in the second quarter of 2023, the Casino generated approximately $68 million in revenue.

20.     The Union is informed and believes and thereupon alleges that the vast majority of the people who patronize the Casino are not members of the Tribe or of any other federally-recognized Native American tribe.  The vast majority of the people who work at the Casino are not members of the Tribe or of any other federally-recognized Native American tribe.

21.     The Agreement provides, in paragraph 5, that "[i]f the Union provides written notice to the Tribe or the Operator of its intent to organize Employees covered by this Agreement, the Tribe and the Operator shall provide access to its premises and to such Employees by the Union."  Paragraph 5 of the Agreement further states, "The Union may engage in organizing efforts in non-public areas of the Casino during Employees' non-working times (before work, after work, and during meals and breaks) and/or during such other periods as the parties may mutually agree upon.  'Organizing' includes communicating with Employees before and after recognition of the Union as provided in Paragraph 7."

22.     No later than February 2, 2023, in accordance with paragraph 5 of the Agreement, the Union provided written notice of its intent to organize Employees covered by the Agreement, and thereafter the Tribe and the Casino Operator provided the Union's representatives access to Employees

VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION          CASE NO.

in non-public areas of the Casino.

23.     The Agreement provides, in paragraph 7, that if the Union requests recognition as the exclusive bargaining agent for Employees, "[t]he Arbitrator identified in Paragraph 11, or another person mutually agreed to by the parties, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of such employees.  If that review establishes that a majority of such Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Tribe and the Operator will recognize the Union as such representative of such Employees."

24.     The Agreement provides, in paragraph 11, that "any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration."

25.     The Agreement provides, in paragraph 11, and that the Union and the Tribe will select an arbitrator from a seven-member panel of arbitrators, received from the Federal Mediation and Conciliation Service ("FMCS"), who are members of the National Academy of Arbitrators and who reside in California, Arizona, New Mexico or Nevada, unless the parties agree to refer the matter in dispute to an arbitrator selected from any other source.

26.     On about March 8, 2023, the Union requested from the FMCS a panel of seven arbitrators who are members of the National Academy of Arbitrators and who reside in California, Nevada, Arizona or New Mexico which the FMCS provided on the same day.  A true and correct copy of the FMCS's communication is attached hereto as Exhibit D.  The Union requested the FMCS list so that the arbitrator would be available to conduct the card check under paragraph 7 of the Agreement and resolve any other disputes that might arise about the interpretation or application of the Agreement.

27.     Beginning on February 23, 2023 and continuing thereafter, the Union's counsel (Kristin Martin) repeatedly requested by email that the Casino Operator's counsel (Kevin Wazinski) identify the counsel for Tribe.  A true and correct copy of that email trail is attached hereto as Exhibit E.  The Casino Operator's counsel did not identify the Tribe's counsel to the Union until June 7, 2023, at which point Mr. Wazinski identified Christina Kazhe as the Tribe' General Counsel.  A true and correct copy of that email trail is attached hereto as Exhibit F.

28.     On about June 12, 2023, the Union notified the Casino's Vice President of Human

VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION          CASE NO.

Resources (Josh Yeltman) that the Union was ready to "pick and schedule a neutral party to count the union authorization cards" which is what paragraph 7 of the Agreement requires.

29.     Since on about June 16, 2023, the Tribe's General Counsel (Christina Kazhe) has refused to select an arbitrator from the panel provided by the FMCS which is what paragraph 11 of the Agreement requires.  A true and correct copy of that email trail is attached hereto as Exhibit G.

30.     On about June 20, 2023, the Union emailed the following notice to the Tribe's General Counsel (Christina Kazhe), the Casino's President and Chief Operating Officer (Chris Gibase) and the Casino's Vice President of Human Resources (Josh Yeltman): "UNITE HERE has collected authorization cards from a majority of employees at Sky River Casino in the bargaining unit covered by our Agreement.  Pursuant to paragraph 7 of that agreement, UNITE HERE requests recognition as the exclusive bargaining agent for such employees."  A true and correct copy of that June 20, 2023 email and attached notice is attached hereto as Exhibit H.

31.     In response to the Union's June 20, 2023 email, the Casino's President and Chief Operating Officer (Chris Gibase) sent an email on about June 21, 2023 in which Mr. Gibase notified the Union that the Union's representatives would no longer be allowed access to the Employees at the Casino, as paragraph 5 of the Agreement requires.  A true and correct copy of the June 21, 2023 email is attached hereto as Exhibit I.  The Union is informed and believes and thereupon alleges that the Tribe directed Mr. Gibase to deny the Union's representatives access to non-public areas of the Casino.

32.     An arbitrator has not reviewed the Union's authorization cards, as required by paragraph 7 of the Agreement, because the Tribe has refused to select an arbitrator from the panel provided by the FMCS and has not agreed with the Union to an arbitrator selected from another source.  Until the Union and the Tribe select an arbitrator, the review of the Union's authorization cards cannot take place and until that review takes place, the Tribe and the Casino Operator will not recognize the Union as the employees' collective bargaining representative.

33.     The Tribe's General Counsel has asserted that the card-check process in paragraph 7 of the Agreement is invalid because, in her view, paragraph 7 conflicts with the Tribal Labor Relations Ordinance.  A dispute about the validity of paragraph 7 and other provisions of the Agreement are properly resolved by arbitration.

VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION          CASE NO.

34.     On about June 2023, the Union sought to resolve the dispute about the card-check process's validity through arbitration under paragraph 11 of the Agreement, but could not do so because the Tribe refused to select an arbitrator from the panel provided by the FMCS and has not agreed with the Union to an arbitrator selected from another source.

35.     The Tribal Labor Relations Ordinance provides for arbitration before an arbitrator who is a member of the Tribal Labor Panel.  The American Arbitration Association administers the Tribal Labor Panel.  On about August 18, 2023, the Tribe submitted a demand for arbitration to the American Arbitration Association.  A true and correct copy of the Tribe's August 18, 2023 demand for arbitration is attached hereto as Exhibit J.

36.     On about October 16, 2023, the Union agreed to arbitrate the dispute described in the Tribe's August 18, 2023 demand for arbitration before an arbitrator selected from the Tribal Labor Relations Ordinance's Tribal Labor Panel rather from the panel of arbitrators provided months early by the FMCS under the Agreement.  The Union agreed with the goal of expediting resolution of the parties' dispute about the validity of the card-check process required by paragraph 7 of the Agreement and so that the card check could be completed.

37.     On about November 7, 2023, the Union and the Tribe selected Arbitrator Norman Brand to arbitrate in response to the Tribe's August 18, 2023 demand for arbitration.  The Union and the Tribe have scheduled that arbitration hearing for February 8, 2024.  The Tribal Labor Relations Ordinance requires that Arbitrator Brand make a decision no later than thirty days after the hearing.

38.     On November 27, 2023, the Tribe's General Counsel stated in an email that the Tribe's position is that, even if Arbitrator Brand decides that the Agreement's card-check process is valid, Arbitrator Brand may not order the Tribe to participate in a card check.  The Tribe also refused to agree that if Arbitrator Brand decides that the Agreement's card-check process is valid that Arbitrator Brand will conduct the card check.  A true and correct copy of the November 27, 2023 email from the Tribe's General Counsel is attached hereto as Exhibit K.

39.     The Union has been waiting since June 2023 for an arbitrator to conduct the card check required under paragraph 7 of the Agreement.  Delay in selecting the arbitrator under paragraph 11 of the Agreement until after Arbitrator Brand decides whether the Agreement is valid will further delay

7

1  the card-check process and recognition of the Union under paragraph 7 of the Agreement.  Such a delay
2  will cause the Union irreparable harm.

3  ### FIRST CAUSE OF ACTION

4  **Order Compelling the Tribe to Arbitrate Disputes under the Agreement and to Participate in
5  Selecting an Arbitrator under the Agreement**

6  40.     The Union incorporates by reference the allegations contained in Paragraphs 1 to 39 as if
7  fully set forth herein.

8  41.     The Union and the Tribe have a dispute about whether the Tribe and the Casino
9  Operator are required to recognize the Union as the Employees' collective bargaining representative in
10 accordance with the procedure set out in paragraph 7 of the Agreement.

11 42.     The Union and the Tribe have a dispute about the Union's continued right to access to
12 non-public areas of the Casino in accordance with paragraph 5 of the Agreement after the Union
13 requested that the card check be completed in accordance with paragraph 7 of the Agreement.

14 43.     The Agreement requires that the aforementioned disputes, which are about the
15 interpretation and application of the Agreement, be decided by an arbitrator selected in accordance with
16 paragraph 11 of the Agreement.

17 44.     The Tribe's failure and refusal to participate in selecting an arbitrator in accordance with
18 paragraph 11 of the Agreement violates the Agreement.

19 45.     The Tribe's failure and refusal to arbitrate its disputes with the Union under paragraphs
20 5 and 7 of the Agreement violates the Agreement.

21 46.     The Tribe's failure and refusal to allow an arbitrator to conduct the card check under
22 paragraph 7 of the Agreement violates the Agreement.

23 ### REQUEST FOR RELIEF

24 Wherefore, the Union prays that this Court:

25 a.     Enter a judgment in the Union's favor and compel the Tribe immediately to select an
26         arbitrator from the panel of arbitrators provided by the FMCS on or about March 8, 2023
27         by the method set out in paragraph 11 of the Agreement, unless by mutual agreement, the
28         Tribe and the Union waive use of the FMCS panel and select another person to serve as

1    the arbitrator;

2    b.    Enter a judgment in the Union's favor and compel the Tribe to arbitrate any disputes with

3    the Union over the interpretation or application of the Agreement, including but not

4    limited to the dispute that has arisen under paragraph 7 of the Agreement about the Tribe's

5    and the Casino Operator's obligation to recognize the Union pursuant the procedure set

6    forth in that paragraph and the dispute that has arisen under paragraph 5 of the Agreement

7    about the Union's right of access to non-public areas of the Casino;

8    c.    Enter a judgment in the Union's favor and compel the Tribe to participate in the card-

9    check process required under paragraph 7 of the Agreement

10    d.    Award the Union its costs and reasonable attorney's fees expended in bringing this

11    Complaint; and

12    e.    Award to the Union any and all other relief as this Court deems just and proper.

Dated:  November 29, 2023           Respectfully submitted,

**McCracken, Stemerman & Holsberry, LLP**

By:

KRISTIN L. MARTIN (SBN 206528)
LUKE DOWLING (SBN 328014)
McCracken, Stemerman & Holsberry, LLP
475 14th Street, Suite 1200
Oakland, CA 94612
Telephone:    (415) 597-7200
Facsimile:    (415) 597-7201
E-mail:    klm@msh.law
           ldowling@msh.law

*Attorneys for Plaintiff UNITE HERE*

VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION    CASE NO.

## Verification

I, Aamir Deen, am an International Vice President of UNITE HERE and I am based in the Sacramento area. I am authorized to make this verification. I have read the foregoing Verified Complaint and Petition to Compel Selection of an Arbitrator and know the contents thereof. I have personal knowledge of the factual allegations stated therein, except those alleged on information and belief, and declare under penalty of perjury under the laws of the United States that the same are true and correct.

Executed this 29 day of November, 2023 at Sacramento, California.

Aamir Deen

Exhibit A to UNITE HERE's Complaint
to Compel Arbitration

## Appendix C

## Tribal Labor Relations Ordinance

### Section 1:  Threshold of Applicability

(a)     If the Tribe employs 250 or more persons in a tribal casino and related facility, it shall adopt this Tribal Labor Relations Ordinance (TLRO or Ordinance). For purposes of this Ordinance, a "tribal casino" is one in which class III gaming is conducted pursuant to the tribal-state compact. A "related facility" is one for which the only significant purpose is to facilitate patronage of the class III gaming operations.

(b)     Upon the request of a labor union or organization which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, the Tribal Gaming Commission shall certify the number of employees in a tribal casino or other related facility as defined in subsection (a) of this Section 1. Either party may dispute the certification of the Tribal Gaming Commission to the Tribal Labor Panel, which is defined in Section 13 herein.

### Section 2:  Definition of Eligible Employees

(a)     The provisions of this ordinance shall apply to any person (hereinafter "Eligible Employee") who is employed within a tribal casino in which class III gaming is conducted pursuant to a tribal-state compact or other related facility, the only significant purpose of which is to facilitate patronage of the class III gaming operations, except for any of the following:

(1)     any employee who is a supervisor, defined as any individual having authority, in the interest of the Tribe and/or employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment;

C-1

(2)     any employee of the Tribal Gaming Commission;

(3)     any employee of the security or surveillance department, other than those who are responsible for the technical repair and maintenance of equipment;

(4)     any cash operations employee who is a "cage" employee or money counter; or

(5)     any dealer.

(b)     On [month] 1 of each year, the Tribal Gaming Commission shall certify the number of Eligible Employees employed by the Tribe to the administrator of the Tribal Labor Panel.

## Section 3:  Non-Interference with Regulatory or Security Activities

Operation of this Ordinance shall not interfere in any way with the duty of the Tribal Gaming Commission to regulate the gaming operation in accordance with the Tribe's National Indian Gaming Commission- approved gaming ordinance. Furthermore, the exercise of rights hereunder shall in no way interfere with the tribal casino's surveillance/security systems, or any other internal controls system designed to protect the integrity of the Tribe's gaming operations. The Tribal Gaming Commission is specifically excluded from the definition of Eligible Employees.

## Section 4:  Eligible Employees Free to Engage in or Refrain From Concerted Activity

Eligible Employees shall have the right to self-organization, to form, to join, or assist employee organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities.

## Section 5:  Unfair Labor Practices for the Tribe

It shall be an unfair labor practice for the Tribe and/or employer or their agents:

(a)     to interfere with, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

(b)     to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it, but this does not restrict the Tribe and/or employer and a certified union from agreeing to union security or dues check off;

(c)     to discharge or otherwise discriminate against an Eligible Employee because s/he has filed charges or given testimony under this Ordinance; or

(d)     after certification of the labor organization pursuant to Section 10, to refuse to bargain collectively with the representatives of Eligible Employees.

## Section 6:  Unfair Labor Practices for the Union

It shall be an unfair labor practice for a labor organization or its agents:

(a)     to interfere, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

(b)     to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a primary or secondary boycott or a refusal in the course of his employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce or other terms and conditions of employment. This section does not apply to Section 11;

(c)     to force or require the Tribe and/or employer to recognize or bargain with a particular labor organization as the representative of Eligible

C-3

**Exhibit A**
**A-3**

Employees if another labor organization has been certified as the representative of such Eligible Employees under the provisions of this TLRO;

(d)     to refuse to bargain collectively with the Tribe and/or employer, provided it is the representative of Eligible Employees subject to the provisions herein; or

(e)     to attempt to influence the outcome of a tribal governmental election, provided, however, that this section does not apply to tribal members.

## Section 7:  Tribe and Union Right to Free Speech

(a)     The Tribe's and union's expression of any view, argument or opinion or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of interference with, restraint, or coercion if such expression contains no threat of reprisal or force or promise of benefit.

(b)     The Tribe agrees that if a union first offers in writing that it and its local affiliates will comply with (b)(1) and (b)(2), the Tribe shall comply with the provisions of (c) and (d).

    (1)     For a period of three hundred sixty-five (365) days following delivery of a Notice of Intent to Organize (NOIO) to the Tribe:

        (A)     not engage in strikes, picketing, boycotts, attack websites, or other economic activity at or in relation to the tribal casino or related facility; and refrain from engaging in strike-related picketing on Indian lands as defined in 25 U.S.C. § 2703(4);

        (B)     not disparage the Tribe for purposes of organizing Eligible Employees;

        (C)     not attempt to influence the outcome of a tribal government election; and

        (D)     during the three hundred sixty-five (365) days after the Tribe received the NOIO, the Union must collect dated

and signed authorization cards pursuant to Section 10 herein and complete the secret ballot election also in Section 10 herein. Failure to complete the secret ballot election within the three hundred sixty five (365) days after the Tribe received the NOIO shall mean that the union shall not be permitted to deliver another NOIO for a period of two years (730 days).

(2)    Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13 herein.

(c)    Upon receipt of a NOIO, the Tribe shall:

(1)    within two (2) days provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought-after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses;

(2)    for period of three hundred sixty-five (365) days thereafter, Tribe will not do any action nor make any statement that directly or indirectly states or implies any opposition by the Tribe to the selection by such employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent. This includes refraining from making derisive comments about unions; publishing or posting pamphlets, fliers, letters, posters or any other communication which could reasonably be interpreted as criticizing the union or advising Eligible Employees to vote "no" against the union. However, the Tribe shall be free at all times to fully inform Eligible Employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe; and

(3)    resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13 herein.

C-5

(d)     The union's offer in subsection (b) of this Section 7 shall be deemed an offer to accept the entirety of this Ordinance as a bilateral contract between the Tribe and the union, and the Tribe agrees to accept such offer. By entering into such bilateral contract, the union and Tribe mutually waive any right to file any form of action or proceeding with the National Labor Relations Board for the three hundred sixty-five (365)-day period following the NOIO.

(e)     The Tribe shall mandate that any entity responsible for all or part of the operation of the casino and related facility shall assume the obligations of the Tribe under this Ordinance. If at the time of the management contract, the Tribe recognizes a labor organization as the representative of its employees, certified pursuant to this Ordinance, the labor organization will provide the contractor, upon request, the election officer's certification which constitutes evidence that the labor organization has been determined to be the majority representative of the Tribe's Eligible Employees.

## Section 8:  Access to Eligible Employees

(a)     Access shall be granted to the union for the purposes of organizing Eligible Employees, provided that such organizing activity shall not interfere with patronage of the casino or related facility or with the normal work routine of the Eligible Employees and shall be done on non-work time in non-work areas that are designated as employee break rooms or locker rooms that are not open to the public. The Tribe may require the union and or union organizers to be subject to the same licensing rules applied to individuals or entities with similar levels of access to the casino or related facility, provided that such licensing shall not be unreasonable, discriminatory, or designed to impede access.

(b)     The Tribe, in its discretion, may also designate additional voluntary access to the Union in such areas as employee parking lots and non-casino facilities located on tribal lands.

(c)     In determining whether organizing activities potentially interfere with normal tribal work routines, the union's activities shall not be permitted if the Tribal Labor Panel determines that they compromise the operation of the casino:

(1)     security and surveillance systems throughout the casino, and reservation;

(2)     access limitations designed to ensure security;

(3)     internal controls designed to ensure security; or

(4)     other systems designed to protect the integrity of the Tribe's gaming operations, tribal property and/or safety of casino personnel, patrons, employees or tribal members, residents, guests or invitees.

(d)     The Tribe agrees to facilitate the dissemination of information from the union to Eligible Employees at the tribal casino by allowing posters, leaflets and other written materials to be posted in non-public employee break areas where the Tribe already posts announcements pertaining to Eligible Employees. Actual posting of such posters, notices, and other materials shall be by employees desiring to post such materials.

**Section 9:  Indian Preference Explicitly Permitted**

Nothing herein shall preclude the Tribe from giving Indian preference in employment, promotion, seniority, lay-offs or retention to members of any federally recognized Indian tribe or shall in any way affect the Tribe's right to follow tribal law, ordinances, personnel policies or the Tribe's customs or traditions regarding Indian preference in employment, promotion, seniority, lay-offs or retention. Moreover, in the event of a conflict between tribal law, tribal ordinance or the Tribe's customs and traditions regarding Indian preference and this Ordinance, the tribal law, tribal ordinance, or the Tribe's customs and traditions shall govern.

**Section 10:  Secret Ballot Elections**

(a)     The election officer shall be chosen within three (3) business days of notification by the labor organization to the Tribe of its intention to present authorization cards, and the same election officer shall preside thereafter for all proceedings under the request for recognition; provided, however, that if the election officer resigns, dies, or is

incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the  dispute resolution provisions herein. Dated and signed authorized cards from thirty percent (30%) or more of the Eligible Employees within the bargaining unit verified by the elections officer will result in a secret ballot election. The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards. If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election. The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

(b)     Upon the showing of interest to the election officer pursuant to subsection (a), within two (2) working days the Tribe shall provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses. Nothing herein shall preclude a Tribe from voluntarily providing an election eligibility list at an earlier point of a union organizing campaign with or without an election.  The election shall be conducted by the election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1. In the event either that a party refuses to enter into the consent election agreement or that the parties do not agree on the terms, the election officer shall issue an order that conforms to the terms of the form consent election agreement and shall have authority to decide any terms upon which the parties have not agreed, after giving the parties the opportunity to present their views in writing or in a telephonic conference call. The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 13(b)(2). All questions concerning representation of the Tribe and/or Eligible Employees by a labor organization shall be resolved by the election officer.

(c)     The election officer shall certify the labor organization as the exclusive collective bargaining representative of a unit of employees if the labor organization has received the support of a majority of the

Eligible Employees in a secret ballot election that the election officer determines to have been conducted fairly. The numerical threshold for certification is fifty percent (50%) of the Eligible Employees plus one. If the election officer determines that the election was conducted unfairly due to misconduct by the Tribe and/or employer or union, the election officer may order a re-run election. If the election officer determines that there was the commission of serious Unfair Labor Practices by the Tribe, or in the event the union made the offer provided for in Section 7(b) that the Tribe violated its obligations under Section 7(c), that interferes with the election process and precludes the holding of a fair election, and the labor organization is able to demonstrate that it had the support of a majority of the employees in the unit at any time before or during the course of the Tribe's misconduct, the election officer shall certify the labor organization as the exclusive bargaining representative.

(d)     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel mutually chosen by both parties, provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

(e)     A union which loses an election and has exhausted all dispute remedies related to the election may not invoke any provisions of this ordinance at that particular casino or related facility until one (1) year after the election was lost.

## Section 11:  Collective Bargaining Impasse

(a)     Upon recognition, the Tribe and the union will negotiate in good faith for a collective bargaining agreement covering bargaining unit employees represented by the union.

(b)     Except where the union has made the written offer set forth in Section 7(b), if collective bargaining negotiations result in impasse, the union shall have the right to strike. Strike-related picketing shall not be conducted on Indian lands as defined in 25 U.S.C. § 2703(4).

(c)     Where the union makes the offer set forth in Section 7(b), if collective bargaining negotiations result in impasse, the matter shall be resolved as set forth in Section 13(c).

**Section 12:   Decertification of Bargaining Agent**

(a)     The filing of a petition signed by thirty percent (30%) or more of the Eligible Employees in a bargaining unit seeking the decertification of a certified union, will result in a secret ballot election. The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards. If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election. The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

(b)     The election shall be conducted by an election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1. The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 13(b)(2). All questions concerning the decertification of the union shall be resolved by an election officer. The election officer shall be chosen upon notification to the Tribe and the union of the intent of the Eligible Employees to  present a decertification petition, and the same election officer shall preside thereafter for all proceedings under the request  for decertification; provided however that if the election officer resigns, dies or is incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the  dispute resolution provisions herein.

(c)     The election officer shall order the labor organization decertified as the exclusive collective bargaining representative if a majority of the Eligible Employees support decertification of the labor organization in a secret ballot election that the election officer determines to have been conducted fairly. The numerical threshold for decertification is fifty percent (50%) of the Eligible Employees plus one (1). If the election officer determines that the election was conducted unfairly

due to misconduct by the Tribe and/or employer or the union the election officer may order a re-run election or dismiss the decertification petition.

(d)     A decertification proceeding may not begin until one (1) year after the certification of a labor union if there is no collective bargaining agreement. Where there is a collective bargaining agreement, a decertification petition may only be filed no more than ninety (90) days and no less than sixty (60) days prior to the expiration of a collective bargaining agreement. A decertification petition may be filed any time after the expiration of a collective bargaining agreement.

(e)     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel chosen in accordance with Section 13(c), provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

## Section 13:  Binding Dispute Resolution Mechanism

(a)     All issues shall be resolved exclusively through the binding dispute resolution mechanisms herein.

(b)     The method of binding dispute resolution shall be a resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the parties which panel shall serve all tribes that have adopted this ordinance. The Tribal Labor Panel shall have authority to hire staff and take other actions necessary to conduct elections, determine units, determine scope of negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all other activities needed to fulfill its obligations under this Ordinance.

(1)     Each member of the Tribal Labor Panel shall have relevant experience in federal labor law and/or federal Indian law with preference given to those with experience in both. Names of individuals may be provided by such sources as, but not limited to, Indian Dispute Services, Federal Mediation and Conciliation Service, and the American Academy of Arbitrators.

C-11

(2)     Unless either party objects, one (1) arbitrator from the Tribal Labor Panel will render a binding decision on the dispute under the Ordinance. If either party objects, the dispute will be decided by a three (3)-member panel, unless arbitrator scheduling conflicts prevent the arbitration from occurring within thirty (30) days of selection of the arbitrators, in which case a single arbitrator shall render a decision. If one (1) arbitrator will be rendering a decision, five (5) Tribal Labor Panel names shall be submitted to the parties and each party may strike no more than two (2) names. If the dispute will be decided by a three (3)-member panel, seven (7) Tribal Labor Panel names will be submitted and each party can strike no more than two (2) names. A coin toss shall determine which party may strike the first name. The arbitrator will generally follow the American Arbitration Association's procedural rules relating to labor dispute resolution. The arbitrator must render a written, binding decision that complies in all respects with the provisions of this Ordinance within thirty (30) days after a hearing.

(c)     (1)     Upon certification of a union in accordance with Section 10 of this Ordinance, the Tribe and union shall negotiate for a period of ninety (90) days after certification. If, at the conclusion of the ninety (90)-day period, no collective bargaining agreement is reached and either the union and/or the Tribe believes negotiations are at an impasse, at the request of either party, the matter shall be submitted to mediation with the Federal Mediation and Conciliation Service. The costs of mediation and conciliation shall be borne equally by the parties.

(2)     Upon appointment, the mediator shall immediately schedule meetings at a time and location reasonably accessible to the parties. Mediation shall proceed for a period of thirty (30) days. Upon expiration of the thirty (30)-day period, if the parties do not resolve the issues to their mutual satisfaction, the mediator shall certify that the mediation process has been exhausted. Upon mutual agreement of the parties, the mediator may extend the mediation period.

(3)     Within twenty-one (21) days after the conclusion of mediation, the mediator shall file a report that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process. With respect to any issues in dispute between the parties, the report shall include the basis for the mediator's determination. The mediator's determination shall be supported by the record.

(d)     In resolving the issues in dispute, the mediator may consider those factors commonly considered in similar proceedings.

(e)     Either party may seek a motion to compel arbitration or a motion to confirm or vacate an arbitration award, under this Section 13, in the appropriate state superior court, unless a bilateral contract has been created in accordance with Section 7, in which case either party may proceed in federal court. The Tribe agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming or vacating an arbitration award issued pursuant to the Ordinance in the appropriate state superior court or in federal court. The parties are free to put at issue whether or not the arbitration award exceeds the authority of the Tribal Labor Panel.

<u>Attachment</u> 1

CONSENT ELECTION AGREEMENT PROCEDURES

Pursuant to the Tribal Labor Relations Ordinance adopted pursuant to section 12.10 of the compact, the undersigned parties hereby agree as follows:

1.      Jurisdiction. Tribe is a federally recognized Indian tribal government subject to the Ordinance; and each employee organization named on the ballot is an employee organization within the meaning of the Ordinance; and the employees described in the voting unit are Eligible Employees within the meaning of the Ordinance.

2.      Election.  An election by secret ballot shall be held under the supervision of the elections officer among the Eligible Employees as defined in Section 2 of the Ordinance of the Tribe named above, and in the manner described below, to determine which employee organization, if any, shall be certified to represent such employees pursuant to the Ordinance.

3.      Voter Eligibility.  Unless otherwise indicated below, the eligible voters shall be all Eligible Employees who were employed on the eligibility cutoff date indicated below, and who are still employed on the date they cast their ballots in the election, i.e., the date the voted ballot is received by the elections officer. Eligible Employees who are ill, on vacation, on leave of absence or sabbatical, temporarily laid off, and employees who are in the military service of the United States shall be eligible to vote.

4.      Voter Lists.  The Tribe shall electronically file with the elections officer a list of eligible voters within two (2) business days after receipt of a Notice of Election.

5.      Notice of Election.  The elections officer shall serve Notices of Election on the Tribe and on each party to the election. The Notice shall contain a sample ballot, a description of the voting unit and information regarding the balloting process. Upon receipt, the Tribe shall post such Notice of Election conspicuously on all employee bulletin boards in each facility of the employer in which members of the voting unit are employed.  Once a Notice of Election is posted, where the union has made the written offer set forth in Section 7(b) of the Tribal Labor Relations Ordinance, the Tribe shall continue to refrain from

publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises employees to vote "no" against the union. The Tribe shall be free at all times to fully inform employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe.

6.      Challenges.  The elections officer or an authorized agent of any party to the election may challenge, for good cause, the eligibility of a voter. Any challenges shall be made prior to the tally of the ballots.

7.      Tally of Ballots.  At the time and place indicated below, ballots shall be co-mingled and tabulated by the elections officer. Each party shall be allowed to station an authorized agent at the ballot count to verify the tally of ballots. At the conclusion of the counting, the elections officer shall serve a Tally of Ballots on each party.

8.      Objections and Post-election Procedures.  Objections to the conduct of the election may be filed with the elections officer within five (5) calendar days following the service of the Tally of Ballots. Service and proof of service is required.

9.      Runoff Election.  In the event a runoff election is necessary, it shall be conducted at the direction of the elections officer.

10.      Wording on Ballot.  The choices on the ballot shall appear in the wording and order enumerated below.

> FIRST:       [***]
> SECOND:   [***]
> THIRD:       [***]

11.      Cutoff Date for Voter Eligibility:  [***]

12.      Description of the Balloting Process.  A secret ballot election will take place within thirty (30) days after delivery of the voter list referenced in paragraph 4. The employer will determine the location or locations of the polling places for the election. There must be at least one (1) neutral location (such as a high school, senior center, or similar facility) which is not within the gaming facility and employees must also be afforded the option of voting by mail through procedures established by the elections officer.  Such procedures must include provisions that

provide meaningful protection for each employee's ability to make an informed and voluntary individual choice on the issue of whether to accept or reject a union. Such procedures must also ensure that neither employer nor union representatives shall observe employees personally marking, signing, and placing their ballot in the envelope.  Only voters, designated observers and the election officer or supporting staff can be present in the polling area. Neither employer nor union representatives may campaign in or near the polling area. If the election officer or supporting staff questions an employee's eligibility to vote in the election, the ballot will be placed in a sealed envelope until eligibility is determined. The box will be opened under the supervision of the election officer when voting is finished. Ballots submitted by mail must be received by the elections officer no later than the day of the election in order to be counted in the official tally of ballots.

13.     Voter List Format and Filing Deadline:  Not later than two (2) business days after receipt of the Notice of Election, the Tribe shall file with the elections officer, at [**address**], an alphabetical list of all eligible voters including their job titles, work locations and home addresses.

Copies of the list shall be served concurrently on the designated representative for the [***]; proof of service must be concurrently filed with elections officer.

In addition, the Tribe shall submit to the elections officer on or before [***], by electronic mail, a copy of the voter list in an Excel spreadsheet format, with columns labeled as follows: First Name, Last Name, Street Address, City, State, and Zip Code. Work locations and job titles need not be included in the electronic file. The file shall be sent to [***].

14.     Notices of Election:  Shall be posted by the Tribe no later than [***].

15.     Date, Time and Location of Counting of Ballots:  Beginning at [**time**] on [**date**], at the [**address**].

16.    Each signatory to this Agreement hereby declares under penalty of perjury that s/he is a duly authorized agent empowered to enter into this Consent Election Agreement.

| (Name of Party) | | (Name of Party) | |
|---|---|---|---|
| By | | By | |
| (Title) (Date) | | (Title) (Date) | |

| (Name of Party) | | (Name of Party) | |
|---|---|---|---|
| By | | By | |
| (Title) (Date) | | (Title) (Date) | |

Date approved: _____

[**Author**]
Elections Officer

Exhibit B to UNITE HERE's Complaint
to Compel Arbitration

<u>MEMORANDUM OF AGREEMENT</u>

THIS AGREEMENT is made and entered into by and between Wilton Rancheria (the "Tribe"), Boyd Gaming Corp. (the "Operator") and UNITE HERE International Union (the "Union").

1.       This Agreement shall cover all employees defined as "Eligible Employees" by the Tribal Labor Relations Ordinance (referred to hereinafter as "Employees") at any casino and related facility (collectively the "Casino") which during the term of this Agreement is owned by, operated by or substantially under the control of the Tribe, except that the following classifications shall be excluded: sports book writer, slot machine mechanics, casino guest service representatives, bingo employees, keno runners, keno writers, and office clerical employees, and confidential employees as defined in Section 2(11) of the National Labor Relations Act (along with those classifications excluded from the definition of "Eligible Employee" in the Tribal Labor Relations Ordinance). The term "related facility" shall mean any facility the only significant purpose of which is to facilitate patronage of Class III gaming operations. The term "Tribe" shall be deemed to include any person, firm, partnership, corporation, joint venture or other legal entity substantially under the control of: (a) the Tribe covered by this Agreement; (b) one or more principal(s) of the Tribe covered by this Agreement; (c) a subsidiary of the Tribe covered by this Agreement; or (d) any person, firm, partnership, corporation, joint venture or other legal entity which substantially controls the Tribe covered by this Agreement. The term "Operator" shall be deemed to include any person, firm, partnership, corporation, joint venture or other legal entity substantially under the control of: (a) the Operator covered by this Agreement; (b) one or more principal(s) of the Operator covered by this Agreement; (c) a subsidiary of the Operator covered by this Agreement; or (d) any person, firm, partnership, corporation, joint venture or other legal entity which substantially controls the Operator covered by this Agreement.

2.       The parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino, and to hereby establish the following procedure for the purpose of ensuring an orderly environment for Employees to exercise their rights under the Tribal Relations Ordinance to organize collectively, should employees choose to do so, and to avoid picketing and/or other economic action directed at the Tribe in the event the Union decides to conduct an organizing campaign among the Employees.

3.       The Tribe and the Operator will take a neutral approach to unionization of Employees. The Tribe and the Operator will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Tribe or the Operator to the selection by such Employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

4.       The Union and its representatives will not coerce or threaten any Employee in an effort to obtain authorization cards.

5.       If the Union provides written notice to the Tribe or the Operator of its intent to organize Employees covered by this Agreement, the Tribe and the Operator shall provide access to its premises and to such Employees by the Union.  The Union may engage in organizing efforts in non-public areas of the Casino during Employees' non-working times (before work, after work, and during meals and breaks) and/or during such other periods as the parties may mutually agree upon. "Organizing" includes communicating with Employees before and after recognition of the Union as provided in Paragraph 7.

6.       Within fifteen (15) days following receipt of written notice of intent to organize

1

Employees, the Tribe or the Operator will furnish the Union with a complete list of Employees, including both full and part-time Employees, showing their job classifications, departments, home and email addresses, and telephone numbers. Thereafter, the Tribe or the Operator will provide updated complete lists monthly.

7.      The Union is not presently recognized as the exclusive collective bargaining representative of the Employees.  The Union may request recognition as the exclusive collective bargaining agent for such Employees. The arbitrator identified in Paragraph 11, or another person mutually agreed to by parties, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of such Employees. If that review establishes that a majority of such Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Tribe and the Operator will recognize the Union as such representative of such Employees. The Tribe and the Operator will not file a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided for in this agreement.  The parties agree that if any other person or entity petitions the National Labor Relations Board for any election as a result of or despite recognition of the Union pursuant to this Paragraph, (a) the parties will each request that the NLRB dismiss the petition on grounds of recognition bar or, if they have agreed to a collective bargaining agreement covering Employees at the time the petition is filed, on grounds of contract bar, (b) if the petition is not dismissed, the parties shall agree to a full consent election agreement under Section 102.62(c) of the NLRB's Rules and Regulations, and (c) the parties shall at all times abide by the provisions of this Agreement except that the Union may file unfair labor practice charges. Except as provided above, the parties will not file any charges with the National Labor Relations Board in connection with any act or omission occurring within the context of this agreement; arbitration under Paragraph 11 shall be the exclusive remedy.

8.      If the Union is recognized as the exclusive collective bargaining representative as provided in paragraph 7, negotiations for a collective bargaining agreement shall be commenced immediately and conducted diligently and in good faith to the end of reaching agreement expeditiously. If the parties are unable to reach agreement on a collective bargaining agreement within 120 days after recognition pursuant to Paragraph 7, all unresolved issues shall be submitted for resolution to final and binding arbitration pursuant to Paragraph 11.  The arbitrator identified in paragraph 11 below shall be the arbitrator, unless another arbitrator is mutually agreed to by the parties. The arbitrator shall be guided by the following considerations: a) Tribe's financial ability; b) size and type of the Tribe's operations; c) cost of living as it affects the Employees; d) ability of the Employees, through the combination of wages, hours and benefits, to earn a living wage to sustain themselves and their families; and e) Employees' productivity.

9.      During the term of this Agreement, the Union will not engage in any strike, picketing or other adverse economic or public relations' activity at, or in connection with, the Casino, and the Tribe and the Operator will not engage in a lockout of the Employees. Notwithstanding the termination provision above, if the Tribe or the Operator recognizes any union besides Union as the exclusive collective bargaining representative of Employees, or any of them, this paragraph shall terminate immediately and without notice.

10.     The Tribe and the Operator shall incorporate the entirety of paragraphs 3, 5, 6, 7 and 8 of this of Agreement in any contract, subcontract, lease, sublease, operating agreement, franchise agreement or any other agreement or instrument giving a right to any person to operate any enterprise

in the Casino employing employees in classifications covered by the Tribal Labor Relations Ordinance, and shall obligate any person taking such interest, and any and all successors and assigns of such person, to in turn incorporate said paragraphs in any further agreement or instrument giving a right as described above. The Tribe or the Operator shall enforce such provisions, or at its option, assign its rights to do so to the Union. The Tribe or the Operator shall give the Union written notice of the execution of such agreement or instrument and identify the other party(ies) to the transaction within 15 days after the agreement or instrument is signed. The terms "Tribe", "Operator" and "Casino" shall be modified in such agreement or instrument to conform to the terminology in such agreement or instrument but retain the same meaning as in this Agreement, and the terms "Tribe" and "Operator" as used herein shall be modified to refer to the person or persons receiving a right to operate an enterprise in the Casino, and the term "Employees" shall be modified to refer to the employees of such person or persons.

11.    The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration. The Tribe's and the Union's representatives shall meet within fourteen (14) calendar days after the receipt of a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). Selection of a sole and impartial arbitrator shall be made by the Tribe and the Union representatives each alternately striking, with Union making the first strike, one (1) name from a seven (7) member panel of arbitrators, received from the ("FMCS"), who are members of the National Academy of Arbitrators and who reside in California, Arizona, New Mexico or Nevada. The person whose name remains will be requested to serve as the impartial arbitrator. By mutual agreement, the parties may waive the use of the panel named above and refer the matter in dispute to an arbitrator selected from any other source. The arbitrator shall have the authority to determine the arbitration procedures to be followed. The arbitrator shall also have the authority to order the non-compliant party to comply with this Agreement. The parties hereto agree to comply with any order of the arbitrator, which shall be final and binding. The United States District Court for the Eastern District of California shall have exclusive jurisdiction in any action concerning arbitration under this Agreement. The parties consent to the entry of any order of the arbitrator as the order or judgment of the Court, without entry of findings of fact and conclusions of law.

12.    For the sole purpose of enabling a suit to compel arbitration or to confirm an arbitration award under this Agreement, the Tribe agrees to a limited waiver of sovereign immunity and consents to be sued in federal court without exhausting tribal remedies, or in the event that the federal court declines jurisdiction, in the appropriate state superior court.

13.    This Agreement shall be in full force and effect from the date it is fully executed on behalf of the Tribe, the Operator and the Union until three (3) years from the full public opening of the Casino, or if sooner upon execution of a collective bargaining agreement or issuance of an interest arbitration award which concludes the collective bargaining agreement negotiations, either of which explicitly supersedes this document.

14.    The Union hereby agrees to actively support before the appropriate federal, state, and local administrative, bureaucratic, regulatory and legislative bodies, the Tribe's efforts to obtain ratification of the Compact by the California legislation, and to take all reasonable and necessary steps to assist the Tribe in connection therewith. For purposes of this Agreement, "active support" includes letter writing, consultation with and lobbying of elected and appointed officials, availability of members for events in furtherance of the Tribe's goals, opposition to competitor's efforts to prohibit the Tribe's entry into tribal government gaming on its lands in Elk Grove, California, and assistance with local government relations.

3

15.     The Tribal Chairperson has been authorized by an action appropriate under tribal law to enter into this Agreement, including the limited waiver of the Tribe's sovereign immunity as set forth in paragraph 12.

16.     In the event that any provision of this Agreement should be rendered invalid by applicable legislation or be declared invalid by any court or regulatory agency of competent jurisdiction, such action shall not invalidate the entire Agreement, it being the express intention of the parties hereto that all other provisions not rendered invalid shall remain in full force and effect. Both parties agree that the subject matter of any provision found to be invalid shall be renegotiated for the purpose of replacing the invalidated provision with a valid substitute which most nearly achieves the same objective. In the even the parties are unable to agree on a substitute, the matter shall be submitted to arbitration as provided in Paragraph 11; the arbitrator shall choose or formulate a substitute provision which accomplishes the purposes of the preceding sentence.

IN WITNESS WHEREOF, the parties hereto by their duly designated representatives have hereunto set their hands.

FOR THE TRIBE:                                      FOR THE UNION:

Wilton Rancheria                                    UNITE HERE International Union

By: _Raymond C Hitchcock_                           By: _Kui Kui_

Its: _Chairman_                                     Its: _INTERNATIONAL Vice pres._

Date: _8/7/17_                                      Date: _8/3/17_

FOR THE OPERATOR:

Boyd Gaming Corporation

By: _Brian A. Larson_

Its: _EVP, Sec. + General Counsel_

Date: _8/2/17_

4

Exhibit C to UNITE HERE's Complaint
to Compel Arbitration

Search...



**Wilton Rancheria** (https://wiltonrancheria-nsn.gov/Home/tabid/303/Default.aspx)

**Home**

(https://wiltonrancheria-nsn.gov/Home/tabid/303/Default.aspx)

**Tribal Officials**                                                        **Tribal Office**        **Tribal Court**

(https://wiltonrancheria-nsn.gov/TribalOfficials/tabid/320/Default.aspx)                            (https://wiltonrancheria-nsn.gov/tc)

**Employment**                                        **Sky River Casino**        **Annual NBCAWR**

(https://wiltonrancheria-nsn.gov/Employment/tabid/330/Default.aspx)(https://www.skyriver.com/)(http://nbcawr.com/)

**Members Only**

(https://wiltonrancheria.sharepoint.com)

---

## TWO CALIFORNIA TRIBAL COMPACTS APPROVED



### GGB News

California Governor Jerry Brown has signed two gaming compacts. The legislature has approved one of them and will soon take up the other. The compacts are with the Tule River tribe and the Wilton Rancheria of Miwok Indians.

### Tule River Tribe

Last week Brown signed a compact with the Tule River Indian Tribe, which extends the compact for the tribe's Eagle Mountain Casino past the 2020 expiration for the original. The compact still needs approval by both houses of the legislature.

The compact does not address the tribe's current efforts to relocate the casino to property it owns adjacent to the Porterville Municipal Airport. It will need to have the land put into trust by the Bureau of Indian Affairs, and then have the new location approved by Brown.

The tribal gaming compact was updated to bring it in line with compacts the governor has signed in recent years, including differences in the mitigation process and paying into the special distribution fund.

The special distribution fund was created in 2004 by the original gaming compacts. Its purpose was to pay mitigation for impacts to local communities. Fewer and fewer tribes have paid into it as more tribal compacts allowed them to contribute directly to those affected, rather than filter the money through the state's general fund.

The special distribution fund's coffers declined in recent years because many tribes don't pay into it any more. The Tule River tribe is one that still does. Since its establishment, more than $4 million has been distributed locally from the fund, about $350,000 each year. Most went to the City of Porterville and Tulare County.

**Exhibit C**
**C-1**

The new compact will change this arrangement. Tribal Chairman Neil Peyron told the Porterville Recorder: "In the revised compact, the tribe and local governments' work directly to address local mitigation issues ensuring that local governments are receiving their fair share of resources."

Peyron wrote a letter to a lawmaker thanking him for his vote. "The Eagle Mountain Casino is essential to the tribe's viability," he wrote. "With revenues from the casino, the tribe has invested in improving the reservation and its members by establishing a fire department, police department, medical and dental facility, elementary school, justice center, student study center, and Veterans center."

The casino helps fuel the tribal government's employment of 375 people, plus 500 the casino employs. Peyron told the Recorder the revision would "be a great benefit to the tribe and the City of Porterville and the County of Tulare."

**Wilton Tribe**

Both the Senate and Assembly unanimously approved the gaming compact the governor signed in July with the Wilton Rancheria of Miwok Indians. The compact allows the tribe to go forward with its goal of building the first Indian casino in Sacramento County on 36 acres in an unfinished shopping mall in Elk Grove, a suburb of Sacramento, adjacent to Highway 99.

The casino could open as soon as 2020.

Brown will again need to sign the compact and it must be endorsed by the Bureau of Indian Affairs.
The compact allows for a $500 million casino with 2,500 slot machines on a 110,000-square foot gaming floor. The resort would have several restaurants, a spa, a hotel tower with 302 rooms. Its convention center would rival anything in downtown Sacramento, the state capitol. The tribe would pay the state 6 percent of gaming profits into a fund for tribes that don't have casinos.

Tribal Chairman Raymond C. Hitchcock pronounced himself "ecstatic" by the twin approvals.

The federal government took away the tribe's recognition and reservation in the 1950s. Decades later, in 2009, the tribe reclaimed its recognition but not its traditional homeland. Many of the 750 tribal members live in poverty, without jobs. Hitchcock says the tribe wants to achieve "economic sustainability and self-sovereignty" to help them.

For two years the tribe has sought land for a reservation and casino and permission to build on it. The tribe originally set its sights on the town of Galt, but then turned its focus to Elk Grove and Outlet Collection at Elk Grove.

The tribe hopes to use gaming profits to help the tribe rise above its 60 percent unemployment rate, 14 percent college graduation rate and the fact that nearly 40 percent lack health insurance.

In February, the tribe acquired 36 acres in an unfinished mall in Elk Grove. Area cardrooms helped fund opposition and several local residents went to court to fight the casino, with the California casino watchdog group Stand Up California joining in. Their case was helped by the appearance that the Elk Grove city council worked behind the scenes without public input to enable the tribe to acquire the mall property by altering a development agreement it had with the mall's owner, the Howard Hughes Corporation. The tribe bought the land with money provided by its financial partner Boyd Gaming Corp.

Besides going to court the opponents also challenged the BIA's action putting the land into trust, which happened on January 19, as the Obama administration was transitioning into the Trump administration. Some aspects of the last-minute approval struck the opponents as irregular, and they challenged it—unsuccessfully.

Elk Grove City Council members and the chairman of the Elk Grove Chamber of Commerce were among those who spoke in favor of the compact at a Senate hearing held on August 22. Rep. Jim Cooper, whose district includes Elk Grove, wrote Assembly Bill 1606, the compact ratification. He introduced council members Pat Hume and Stephanie Nguyen, who spoke as individuals, rather than representing the council.

**Exhibit C**
**C-2**

Case 2:23-cv-02767-KJM-DB   Document 1   Filed 11/29/23   Page 37 of 90

Hume declared, "In its first quarter century of existence, (assistance from the Wilton Rancheria) will be north of $250 million to the county of Sacramento, the city of Elk Grove, the Elk Grove Unified School District, local nonprofits."
He said he admired the tribe's efforts to become self-sufficient "to where they're funding themselves and funding their own programs and getting themselves off of the United States' taxpayers."

Nguyen added, "Our city and our region are lacking so much of the funds to be able to support this community, and so I'm in very full support of this project," she said, adding that the community would benefit from the thousands of jobs that would be created, both directly and indirectly.

Other speakers touted the casino's ability to close the gap on "over $1 billion in retail leakage in Elk Grove" and to provide high-paying jobs while boosting the tourism industry.

John Broughton, chairman of the Elk Grove Chamber of Commerce, told the committee: "As a community partner, we say that they'll be an infusion of monies and support. As mentioned, there will be $132 million in services for payments for law enforcement, fire protection, traffic improvements, roadway maintenance and utilities. And for a philanthropic support for local charities, youth sports and school programs within our community."

Local labor unions, particularly construction unions, also supported the casino. Speaking for UNITE HERE, which has 300,000 hotel and casino worker members nationwide, Jack Gibbon said, "Given what the tribe's current mandate is—which is to lift their own tribe up with economic development—this is a very, very humbling thing for us at UNITE HERE."
Although opponents like a San Bruno cardroom owner and Stand Up for California complained that the tribal compact was being "fast tracked" and the public had no time to be heard properly, Senator Ben Hueso demurred. "Let me tell you, there's nothing that is being forced through any particular process," he said. "But in California, this is the process. We're following the process. Nothing in particular about this project, to me in my mind, is at all expedited. Nothing in my mind goes through any loophole."

Boyd Gaming, which will build and manage the property, says it is looking at groundbreaking for the casino in mid-2018, with opening the doors up to 24 months later. Boyd Gaming Chief Executive Officer Keith Smith commented after the vote: "We congratulate the Wilton Rancheria for reaching this critical milestone in the tribe's progress toward self-sufficiency. We look forward to working with them in the years ahead as we help make their vision of a world-class gaming resort a reality."

http://ggbnews.com/issue/vol-15-no-86-september-11-2017/article/two-california-tribal-compacts-approved (http://ggbnews.com/issue/vol-15-no-86-september-11-2017/article/two-california-tribal-compacts-approved)

Print

**Exhibit C**
**C-3**



 Posted: Sep 11, 2017,  Categories: Casino (https://wiltonrancheria-
nsn.gov/Home/News/TabId/562/PID/2929/evl/0/CategoryID/2/CategoryName/Casino/Default.aspx), Wilton Rancheria
(https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/evl/0/CategoryID/3/CategoryName/Wilton-Rancheria/Default.aspx),
Resort (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/evl/0/CategoryID/4/CategoryName/Resort/Default.aspx),
Comments: 0,  Author: SuperUser Account (https://wiltonrancheria-
nsn.gov/Home/News/TabId/562/PID/2929/authorid/1/AuthorName/SuperUser-Account/Default.aspx)

Tags:

| Search | | | | | | Search |

## JULY 2023

| « | | | | | | » |
| Mon | Tue | Wed | Thu | Fri | Sat | Sun |
| --- | --- | --- | --- | --- | --- | --- |
| 26 | 27 | 28 | 29 | 30 | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | 1 | 2 | 3 | 4 | 5 | 6 |

## ARCHIVE

2021, April (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/4-
2021/Default.aspx)

2020, September (1) (https://wiltonrancheria-
nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/9-2020/Default.aspx)

2020, January (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/1-
2020/Default.aspx)

2019, October (11) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/10-
2019/Default.aspx)

Case 2:23-cv-02767-KJM-DB   Document 1   Filed 11/29/23   Page 39 of 90

2019, June (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/6-2019/Default.aspx)

2019, March (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/3-2019/Default.aspx)

2019, February (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/2-2019/Default.aspx)

2019, January (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/1-2019/Default.aspx)

2018, November (3) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/11-2018/Default.aspx)

2018, June (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/6-2018/Default.aspx)

2018, May (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/5-2018/Default.aspx)

2018, March (4) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/3-2018/Default.aspx)

2018, February (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/2-2018/Default.aspx)

2018, January (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/1-2018/Default.aspx)

2017, December (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/12-2017/Default.aspx)

2017, November (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/11-2017/Default.aspx)

2017, October (8) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/10-2017/Default.aspx)

2017, September (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/9-2017/Default.aspx)

2017, August (3) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/8-2017/Default.aspx)

2017, July (8) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/7-2017/Default.aspx)

2017, June (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/6-2017/Default.aspx)

2017, March (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/3-2017/Default.aspx)

2017, February (6) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/2-2017/Default.aspx)

**Exhibit C**
**C-5**

2017, January (7) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/1-2017/Default.aspx)

2016, December (4) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/12-2016/Default.aspx)

2016, November (11) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/11-2016/Default.aspx)

2016, October (4) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/10-2016/Default.aspx)

2016, September (7) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/9-2016/Default.aspx)

2016, August (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/8-2016/Default.aspx)

2016, July (12) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/7-2016/Default.aspx)

2016, June (11) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/6-2016/Default.aspx)

2016, February (5) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/2-2016/Default.aspx)

2016, January (11) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/1-2016/Default.aspx)

2015, December (3) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/12-2015/Default.aspx)

2015, November (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/11-2015/Default.aspx)

2015, May (1) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/5-2015/Default.aspx)

2015, February (2) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/2-2015/Default.aspx)

2014, June (4) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/6-2014/Default.aspx)

2013, December (4) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/12-2013/Default.aspx)

2013, March (8) (https://wiltonrancheria-nsn.gov/Home/News/TabId/562/PID/2929/mcat/2930/ArtDateMonth/3-2013/Default.aspx)

Copyright 2023 by Wilton Rancheria  |  Privacy Statement (https://wiltonrancheria-nsn.gov/Home/News/tabid/562/ctl/Privacy/Default.aspx)  |  Terms Of Use (https://wiltonrancheria-

**Exhibit C**
**C-6**

nsn.gov/Home/News/tabid/562/ctl/Terms/Default.aspx)   |   Login (https://wiltonrancheria-nsn.gov/Logon/tabid/571/Default.aspx?returnurl=%2fHome%2fNews%2fTabId%2f562%2fArtMID%2f2929%2fArticleID%2f1129%2fTwo-California-Tribal-Compacts-Approved.aspx)

**Exhibit C**
**C-7**

Exhibit D to UNITE HERE's Complaint
to Compel Arbitration

FEDERAL MEDIATION AND CONCILIATION SERVICE
UNITED STATES GOVERNMENT
WASHINGTON, DC 20427
3/8/2023


Jesus Tarango, Chairman                           Kristin Martin, Attorney
The Wilton Rancheria d/b/a Sky River Casino       UNITE HERE
9728 Kent Street                                  475 14th Street
Elk Grove, CA 95624                               Suite 1200
                                                  Oakland, CA 94612


**ONCE YOU SELECT AN ARBITRATOR YOU ARE REQUIRED TO NOTIFY FMCS.**
***DO NOT RESPOND DIRECTLY TO THIS EMAIL—ARBSVC@FMCS.GOV IS NOT A***
***WORKING EMAIL.***
**Send an email to arbitration@fmcs.gov with the case number, the name of the arbitrator, and either the enclosed form completed accurately or a statement in the email that the selection is by mutual agreement of the parties.**


Case Number:    230308-04079
Issue:          Card check/ neutrality agreement


In response to a request, we received from one or both of the above parties, the following panel is submitted for your consideration without regard to questions of contract compliance or arbitrability.

**Steven Briggs; Edward E Hales; Herman Torosian; Carol A Vendrillo; Ruben R Armendariz; John P Difalco; Guy Z Prihar**


Once a joint selection has been made, you must notify FMCS of your selection. Please inform us of your selection at arbitration@fmcs.gov. Use the enclosed form, "Instructions to FMCS", to advise us of any additional action requested for this case. FMCS is responsible only for the arbitrators it formally appoints. Upon notification of your selection, FMCS will formally appoint the arbitrator, who is then required to communicate with you within 14 calendar days to arrange for preliminary matters such as hearing date. If the dispute is settled prior to a hearing, you must notify us, as well as the arbitrator.

You must refer to your collective bargaining agreement for your specific selection process. If your collective bargaining agreement is silent on the manner of selecting arbitrators, the parties may wish to consider any jointly determined method or FMCS will accept: (1) priority ranking; (2) striking; or (3) direct appointment.

If the priority method is used and we receive a priority selection from only one party, the second party will be notified that it has fourteen (14) calendar days to respond, or the first party's selection will be honored, as provided in FMCS Policies and Procedures under Section 1404.12(c)(3).

Requests for a second or subsequent panels will not be honored unless (1) the request is agreed to by both parties, or (2) the parties' collective bargaining agreement SPECIFICALLY authorizes a unilateral request for a second panel. You must either certify that both parties agree or send a copy of the pertinent clause of the collective bargaining agreement that authorizes a unilateral request.

YOU MUST USE THE FMCS CASE NUMBER IN ANY COMMUNCATION TO THE ARBITRATOR OR TO FMCS REGARDING THIS CASE. If you have any questions, please contact me.

Enclosures
  1. Biographical Sketches
  2. "Instructions to FMCS" Form

## INSTRUCTIONS  TO FMCS

Please check one of the 5 instructions below.  If these are joint instructions, please certify by signing number 6.

Case Number:     230308-04079
Issue:   Card check/ neutrality agreement

1. (  )     The parties have mutually  selected Arbitrator _____
and request FMCS to appoint this arbitrator to hear this case.  No payment is required for a selection of an arbitrator.

2. (  )     The undersigned designates its priority selections on the next page: (Please rank **ALL ARBITRATORS** submitted to you with **NO OMISSIONS**,  unless permitted by the CBA or applicable law.)  For this method, you **MUST**  provide CBA language that outlines your arbitrator selection process. Failure to submit this language will  delay processing your request. (See next page)

3. (  )     We mutually  request FMCS to appoint an arbitrator of its choice who was not listed on any panels associated with this case. (Certify by signing number 6 below.)

4. (  )     This case has been **SETTLED**.   No further action is required by FMCS.

_____

5. (  )     This panel is unacceptable. A new panel is requested by permission of the CBA or both  parties. (Certify by signing on number 6 below.)

   (  )     Payment is enclosed (check or money order). If by credit card, provide info below.

Name and Address: _____Amount: $ _____ Expires: _____
( ) Visa          (  ) MasterCard          (  ) Discovery          (  ) American Express

Number:  _____

Name and Address: _____ Amount: $ _____ Expires: _____
( ) Visa          (  ) MasterCard          (  ) Discovery          (  ) American Express

Number:  _____

Requirements: # of Arbitrators: _____   (  ) Metropolitan (  )     Sub region          (  ) Region
Special Requirements: (example, NAA, AAA,  Attorney, exclusions) _____
_____

_____     _____          _____     _____
Employer Representative         Date              Union Representative                Date
Jesus Tarango, Chairman                           Kristin Martin, Attorney
The Wilton Rancheria d/b/a Sky River Casino       UNITE HERE
9728 Kent Street                                  475 14th Street
Elk Grove, CA 95624                               Suite 1200
                                                  Oakland, CA 94612
Phone: (916)683-6000                              Phone: (415)597-7200
Email: jtarango@wiltonrancheria-nsn.gov           Email:  klm@msh.law

6.         I certify that both parties have agreed to the above Instructions and Appointment Statement and that I am authorized to respond for both parties.

      SIGNATURE: _____ Date: _____

Suzanne Nichter
Case Administrator
Phone: (202)606-5129
Email: snichter@fmcs.gov

**Please email this form to** **arbitration@fmcs.gov**

**Exhibit D**
**D-2**

If you checked number 2 please rank **ALL ARBITRATORS** submitted to you with **NO OMISSIONS**, unless permitted by the CBA or applicable law.)

1. _____

2. _____

3. _____

4. _____

5. _____

6 _____

7. _____

8. _____

9. _____

10. _____

11. _____

12. _____

13 _____

14. _____

15. _____

APPOINTMENT  STATEMENT

The arbitrator you select is an independent  contractor whose relationship is solely with the parties to the dispute. Arbitrators on the FMCS roster are subject to certain reporting  requirements  and to the ethical standards and procedures  set forth  in the Code of Professional Responsibility for Arbitrators of Labor Management Disputes and FMCS Arbitration Policies and Procedures.

However,  under Federal Regulations, FMCS has no power to:

        (1)  Compel parties to appear before  an arbitrator;
        (2)  Enforce an agreement  to arbitrate;
        (3)  Compel parties to arbitrate any issue;
        (4)  Influence,  alter, or set aside decisions of arbitrators on the Roster; or
        (5)  Compel, deny, or modify payment of compensation to an arbitrator.

A party who is displeased  with an arbitrator or his/her decision may or may not have further avenues of redress, but FMCS is on no position to advise or assist parties who would have preferred  a different  result or who were not happy with the arbitrator.  FMCS may note or act upon allegations  of violations  of the Code or its arbitration policies by arbitrators. While repeated complaints or findings of specific misconduct may result in suspension or removal of an arbitrator from the FMCS roster, FMCS is unable to take any action or provide  any guidance that would alter or affect the outcome of an arbitration decision.

Your signature on the Instructions to FMCS form indicates that you understand  this appointment  statement.

**Exhibit D**
**D-4**

FMCS Form R-43
Rev. September 2022
**Phone: (202) 606-5111**

FEDERAL MEDIATION AND CONCILIATION SERVICE
WASHINGTON, DC 20427
**REQUEST FOR ARBITRATION PANEL**

Form Approved
OMB No. 3076-0016
Expires 11-30-2025

Please submit this form electronically at arbitration.fmcs.gov

---

**1. EMPLOYER**

Company Name:    The Wilton Rancheria d/b/a Sky River Casino

Representative Name: (Last)    Tarango    (First)    Jesus

Street:    9728 Kent Street

City:    Elk Grove                State:    California        Zip Code:    95624

Phone:    (916)683-6000            Fax:

Email:    jtarango@wiltonrancheria-nsn.gov

---

**2. UNION**

Union Name:    UNITE HERE

Representative Name: (Last)    Martin        (First)    Kristin            UNITE HERE

Street:    475 14th Street, Suite 1200

City:    Oakland                State:    California    Zip Code:    94612

Phone:    (415)597-7200            Fax:

Email:    klm@msh.law

---

3. **Site of Dispute: City:**    Elk Grove            **State:**    California    **Zip Code:**    95624

4. Select the panel of arbitrators from below or see "Special Requirements" on page 2. See here for more information on Geographic Designations.
☒ **Regional**    ☐ **Sub-Regional**    ☐ **Metropolitan**    125 mile radius from site of dispute. ☐ 60 mile radius from site of dispute.

5. **Type of Issue:**    Card check/ neutrality agreement

6. **Panel Size:**    7        A panel of (7) names is usually provided. If this is a unilateral request, you must attach your relevant contract language which specifies a different number or "certify" on Page 2 that both parties have agreed to the number specified.

7. **Type of Industry:**        ☒ Private Sector        ☐ State or Local Government            ☐ Federal Government
8. **Payment:**        Payment is made through *Pay.gov*. Contact payments@fmcs.gov for assistance if you are having difficulty with the Pay.gov payment process.

9. **Requestor Name:**                    On behalf of:    Employer        Kristin Martin
        ((415)597-7200)  3/8/2023  Union

---

**Privacy Act Statement.** 29 U.S.C. § 172, et seq., authorize the FMCS to collect this information. The primary use of the information is to allow FMCS officials to maintain a roster of arbitrators. Additional disclosures of the information may be made: (1) to a Federal, State, or local law enforcement agency if FMCS becomes aware of a violation or potential violation of law or regulation; (2) to a court or party in a court or Federal administrative proceeding if the Government is a party or in order to comply with a judge-issued subpoena; (3) to the National Archives and Records Administration or the General Services Administration in record management inspections; (4) to the Office of Management and Budget during legislative coordination on private relief legislation; (5) in a judicial or administrative proceeding if the information is relevant to the subject matter; (6) to provide arbitrator information to parties seeking arbitration services; and (7) information collected may be used by FMCS to provide information concerning FMCS trainings, events, presentations, conferences, and other educational opportunities and programs. This information is voluntary and will not be disclosed unless authorized by law. Failure to provide the requested information could result in not being included on FMCS's arbitration roster.

**Exhibit D**
**D-5**

**REQUEST FOR ARBITRATION PANEL**

**SPECIAL  REQUIREMENTS**

Note:  ALL requests on this page must be "**CERTIFIED**" as jointly agreed **AND** signed below.
Requests on this page will NOT be honored without proper certification.

☐   Select panel from **Nationwide**
☐   **EXPEDITED  ARBITRATION**  under FMCS Procedures
      (See FMCS Arbitration Policies and Procedures, Subpart D, Section 1404.17  for specific requirements for Expedited
      Arbitration.)

*ORGANIZATIONS or CERTIFICATIONS*:
      ☐ Attorney   ☐ AAA (American  Arbitration Assoc.) ☐  Industrial Engineer  ☒ NAA (National  Academy of Arbitrators)

*SPECIALIZATIONS:*
Industry Specialization:

Issue Specialization:

*ADDITIONAL REQUIREMENTS*:  (For example, geographical restrictions, exclusions  of arbitrators)

_____

      A panel will  be sent based upon the request of a single party.  If "Special Requirements" are listed or "Expedited
Arbitration" is requested, you MUST certify  that all parties jointly agree to these requests.  This also applies to additional panel requests.
If your contract contains these "Special Requirements," including "Expedited  Arbitration," submit a copy of the relevant contract language
only.  A submission of a panel should not be construed as anything more than compliance with  a request and does not reflect on the substance
or arbitrability  of the issue(s) in dispute.


I certify that the above is jointly  agreed.


Name: _____ Signature:_____

# CAROL A. VENDRILLO                               FMCS-3704

**Email:** VENDRILLO@AOL.COM      (Preferred Contact Method)

**Present Occupation**  Arbitrator/Mediator/Factfinder

**Mailing Address**
350 Firefly Lane
Sebastopol, CA 95472

(510)703-4131

## PROFESSIONAL STATEMENT
Engaged in neutral dispute resolutions for 20 years. Member of the National Academy of Arbitrators.

## PROFESSIONAL AFFILIATIONS
National Academy of Arbitrators
American Arbitration Association
California State Mediation and Conciliation Service

## EDUCATION
JD  Hastings College of the LAW 1977
BA Psychology Ithaca College 1973

## CERTIFICATIONS
Attorney
In Person Ready

## ARBITRATION/LABOR RELATIONS EXPERIENCE
Institute for Research on Labor and Employment - University of California; California Public Employee
Relations Program , 1988 - 2011

## INDUSTRIES
Electronics, Metal fabrication, Mining, Plastics, Police & fire, Stone/quarry

## ISSUES
Arbitrability, Demotion, Discipline (non-discharge), Fringe benefits, Health/hospitalization, Jurisdictional
dispute, Merit pay, Official time, Strikes/lockouts/work stoppages/slowdowns

## PERMANENT PANELS
Bay Area Rapid Transit District; Los Angeles City Employment Relations Board; Los Angeles County Civil
Service Commission; Los Angeles Unified SchoolDistrict; Sacramento County Personnel Commission;
State Of California And California Correctional Peace Officers Assn.

## ARBITRATION ROSTERS
FMCS Arbitration Roster; CA State Med. & Conc. Service

## RATES/POLICIES
Per Diem:  $1,800.00

Cancellation:  $1,800.00

# CAROL A. VENDRILLO

**FMCS-3704**

# EDWARD E. HALES                                    FMCS-1895

**Email:** HALESARBSANDIEGO@AOL.COM   (Preferred Contact Method)

**Present Occupation**  Retired Attorney

| | |
|---|---|
| **Mailing Address** | **Additional Addresses** |
| 2726 Wolf Trail | Carlsbad, CA 92011 |
| Atlanta, GA 30349 | |

(858)212-6116

## PROFESSIONAL STATEMENT
I have over 40 years of experience as a labor arbitrator in the private, state and local  government, and Federal sectors dealing with a wide range of issues.

## PROFESSIONAL AFFILIATIONS
National Academy of Arbitrators

## EDUCATION
JD Law Univ Of Wisconsin (madison) 1962
BA History/govt Baldwin-wallace College 1955

## CERTIFICATIONS
Attorney
In Person Ready
Law - Wisconsin 1962

## ARBITRATION/LABOR RELATIONS EXPERIENCE
Clark County Nevada and Service Employees Int. Union - Arbitrator, 2010 - 2018
Social Security Adm. and AFGE - Arbitrator, 2010 - 2018
USPS and Letter Carriers Union - Former Arbitrator, 1992 - 2002
Ford Motor Co. and United Auto Workers - Former permanent Arbitrator, 1990 - 2005
US Steel Corp. and USWA - Former Arbitrator, 1975 - 1981
Wisconsin Employment Relations Board - Former Panel Arbitrator, 1973 - 1983

## INDUSTRIES
Aerospace, Agriculture, Aluminum, Automotive, Bakery, Beverage, Brewery, Broadcasting, Canning, Chemicals, Clothing, Coal, Communications, Construction, Dairy, Distillery, Education, Electrical Equipment/Appliances, Electronics, Entertainment/arts, Feed & fertilizer, Food manu/proc/service, Foundry, Furniture, Glass/pottery, Grain mill, Health care, Hotels/motels/casinos/resorts, Iron, Lumber, Machinery, Maritime, Meat packing, Metal fabrication, Mining, Nuclear energy, Packaging, Paint & varnish, Petroleum/petrochemicals, Pharmaceuticals, Plastics, Plumbing, Printing & publishing, Pulp & paper, Refrigeration/HVAC, Retail stores, Rubber/tire, Shipbuilding/dry-dock, Steel, Stone/quarry, Textile, Tobacco, Transportation, Trucking & storage

## ISSUES
Absenteeism, Arbitrability, Bargaining unit work, Cost-of-living pay, Demotion, Discipline (discharge), Discipline (non-discharge), Discrimination, Drug/alcohol offenses, Fringe benefits, Health/hospitalization, Holiday pay, Incentive pay, Job classification & rates, Job posting/bidding, Jurisdictional dispute, Layoffs/bumping/recall, Management rights, Merit pay, Official time, Overtime Pay, Past practices, Pension and welfare plans, Strikes/lockouts/work stoppages/slowdowns, Vacation pay

**Exhibit D
D-9**

# EDWARD E. HALES                                         FMCS-1895

**PERMANENT PANELS**
Clark County, Nevada and SEIU; Pacific Bell and CWA; Social Security Adm. and AFGE

**ARBITRATION ROSTERS**
FMCS Arbitration Roster

**RATES/POLICIES**
Per Diem: $1,350.00
Per diem of 6 hrs will apply for hearing, study, research and preparation of an award
Travel and lodging reimbursement for expenses incurred at and travel to the hearing location.
Travel cost will will be charged for expense incurred from the office location nearest to the hearing location.
A per diem cancellation fee of $1,350.00 will apply for a hearing cancelled 30 days or less from the scheduled hearing date.

Cancellation: $1,350.00

Expenses: $1,350.00

Other: $1,350.00
$1200.00 per diem is applicable for every 6 hours of preparation of the award.

**Exhibit D**
**D-10**

# GUY Z. PRIHAR

<b>FMCS-4186</b>

**Email: GZP.ADR@GMAIL.COM**   (Preferred Contact Method)

**Present Occupation**  Arbitrator

| | |
|---|---|
| **Mailing Address** | **Additional Addresses** |
| P. O. Box 642572 | Tampa, FL 33637 |
| Los Angeles, CA 90064 | |

(818)217-0489

**PROFESSIONAL AFFILIATIONS**
National Academy of Arbitrators
American Arbitration Association

**EDUCATION**
JD Law Chicago-kent College Of Law 2006
PH.D Biochemistry & Molecular Biology University Of South Florida 1999
BS Biomedical Engineering Boston University 1992

**CERTIFICATIONS**
Attorney
Video Arbitration Capable
In Person Ready
Law - State Bar Of California 2008
Law - Illinois State Bar 2006
Mediation - Center for Conflict Resolution, Chicago, IL 2006

**INDUSTRIES**
Aerospace, Automotive, Bakery, Beverage, Communications, Construction, Education, Electrical
Equipment/Appliances, Electronics, Food manu/proc/service, Health care, Hospital/nursing home,
Hotels/motels/casinos/resorts, Machinery, Metal fabrication, Mining, Office workers/clerical,
Organizations, Packaging, Plastics, Plumbing, Police & fire, Public sector grievance, Stone/quarry, Textile,
Transportation, Trucking & storage, Utilities, Warehousing

**ISSUES**
Absenteeism, Age, Arbitrability, Bargaining unit work, Bonus fringe benefits, Conduct (off-duty/
personal), Cost-of-living pay, Demotion, Disability, Discipline (discharge), Discipline (non-discharge),
Discrimination, Drug/alcohol offenses, Fringe benefits, Grievance mediation, Holiday pay, Job
classification & rates, Job performance, Job posting/bidding, Jurisdictional dispute,
Layoffs/bumping/recall, Leave, Management rights, Official time, Overtime Pay, Past practices, Pension
and welfare plans, Promotion, Race, Safety/health conditions, Seniority, Sexual harassment,
Strikes/lockouts/work stoppages/slowdowns, Subcontracting/contracting out, Tenure/reappointment,
Unilateral, Union security, Vacation, Vacation pay, Violence or threats, Wages, Work
Hours/Schedules/Assignments, Working conditions/work orders

**PERMANENT PANELS**
Apple Acad. Public Charter Schools - UTLA; Board of Trustees, CA State University - CFA; County of
Riverside - LIUNA, Local 777; County of Riverside - Management Res. Ord.; County of Riverside -
Riverside Sheriffs' Association; County of Riverside - SEIU, Local 721; El Camino Real Alliance - UTLA;
LA Unified School District - CSA; LA Unified School District - CSEA; LA Unified School District - SEIU,
Local 99; Regents, University of California - UAW, Local 5810; So. Cal. General Contractors – OPCMIA,

<b>Exhibit D</b><br><b>D-11</b>

# GUY Z. PRIHAR                                               FMCS-4186

Local 600; U.S. Borax - ILWU, Local 20; U.S. Borax, Inc. - ILWU, Local 30; Unified Grocers - IUOE, Local 501; UPS, Inc. - IBT (various locals); USPS - APWU

**ARBITRATION ROSTERS**
FMCS Arbitration Roster; American Arbitration Association; California State Mediation and Conciliation Service; City of Los Angeles Employee Relations Board; Los Angeles Unified School District, Personnel Commission; National Academy of Arbitrators

**RATES/POLICIES**
Per Diem:  $2,400.00
$2,400 per day ("per diem") for hearing, research, review of record, and preparation of the award. A hearing day is any portion of a day up to eight hours. Time for research, review, and preparation is prorated.

Cancellation:  $2,400.00
Please be aware that the Parties may be required to proceed by video hearing, depending on the circumstances.  If, for any reason and even if rescheduled, any scheduled hearing days are cancelled or not used, and where notice of less than thirty calendar days is provided of such cancellation or non-use, the responsible party (or both parties), as determined by this arbitrator, shall pay a cancellation fee equal to my per diem times the number of days scheduled and not used.

Expenses:  Actual expenses are charged, including but not limited to airfare, car rental, food, lodging, ground transportation, and airport parking. Air travel: lowest unrestricted business or first class fare available for convenient flights at time of purchase. Car mileage is charged at the rate of $.60/mile with total mileage cost not to exceed applicable airfare and car rental fees. Anticipated expense information is available upon request and after notification of hearing date(s) and location.

Travel Time:  Travel fees to and from hearing location will be based on the per diem rate. Anticipated travel fees are available upon request and after notification of hearing date(s) and location. No travel fees based on the per diem rate will apply, if total travel time to the hearing location is less than two hours.

Interest on Past-due Payments:  All fees and expenses are due and payable within thirty calendar days from date of invoice. Any unpaid balance after thirty calendar days from date of invoice is subject to interest charges equal to 1.5 percent per month of the outstanding balance or $25.00 per month, whichever is greater.

Interest arbitration:  $2,500.00
$2,500 per day ("per diem") for hearing, research, review of record, and preparation of the award. A hearing day is any portion of a day up to eight hours. Time for research, review, and preparation is prorated.

# HERMAN TOROSIAN                              FMCS-1670

**Email: TOROH@CHARTER.NET**     (Preferred Contact Method)

**Present Occupation**  Arbitrator (Full time since 1975)

| **Mailing Address** | **Additional Addresses** |
|---|---|
| 2516 Waukegan Road, Suite 155 | San Diego, CA 92115 |
| Glenview, IL 60025 | |

(608)231-2572

## PROFESSIONAL STATEMENT
I have arbitrated approximately 1000 cases, mediated approximately 800 mediation cases and issued or reviewed approximately 1900 unfair labor practice, declaratory and election cases.  My practice includes cases in the private and public sectors involving a wide variety of issues.  I have issued numerous interest arbitration and fact-finding decisions.  I have attended numerous labor relations conferences and participated on the program including as speaker.

## PROFESSIONAL AFFILIATIONS
National Academy of Arbitrators
Association of Labor Relations Agencies, Past Present
Wisconsin Bar Assn

## EDUCATION
JD Law University Of Wisconsin 1967
BS Economics University Of Wisconsin 1963

## CERTIFICATIONS
Attorney
In Person Ready
Law - Wisconsin

## ARBITRATION/LABOR RELATIONS EXPERIENCE
Wi Employment Relations Comm - Commissioner and Chairperson, 1975 - 1996
Wi Employment Relations Comm - Arbitrator. Mediator, & Trial Examiner, 1967 - 1975

## INDUSTRIES
Airlines, Aluminum, Automotive, Bakery, Beverage, Brewery, Broadcasting, Canning, Chemicals, Clothing, Coal, Communications, Construction, Dairy, Distillery, Education, Electrical Equipment/Appliances, Electronics, Entertainment/arts, Food manu/proc/service, Foundry, Health care, Hotels/motels/casinos/resorts, Iron, Machinery, Metal fabrication, Mining, Nuclear energy, Organizations, Packaging, Paint & varnish, Petroleum/petrochemicals, Pharmaceuticals, Plastics, Plumbing, Printing & publishing, Pulp & paper, Refrigeration/HVAC, Rubber/tire, Shipbuilding/dry-dock, Stone/quarry, Textile, Trucking & storage

## ISSUES
Absenteeism, Arbitrability, Bargaining unit work, Cost-of-living pay, Demotion, Discipline (discharge), Discipline (non-discharge), Discrimination, Drug/alcohol offenses, Fringe benefits, Health/hospitalization, Job performance, Job posting/bidding, Jurisdictional dispute, Layoffs/bumping/recall, Management rights, Merit pay, Official time, Overtime Pay, Past practices, Pension and welfare plans, Seniority, Strikes/lockouts/work stoppages/slowdowns, Subcontracting/contracting out, Vacation pay, Working

**HERMAN TOROSIAN**                                    **FMCS-1670**

conditions/work orders

**PERMANENT PANELS**

Chicago Transit Authority and ATU Local 308; City of Chicago and SEIU; State of Wisconsin/afscme Council 24

**ARBITRATION ROSTERS**

FMCS Arbitration Roster; California State Conciliation and Mediation Service; Hawaii LRB; Illinois Education Labor Relations Board; Iowa PERB; Los Angeles City Erb; Los Angeles Civil Service Commission; Montana Board of Personnel Appeals; National Mediation Board; NJ State Bd Of Meditation; NY City Office of Collective Bargaining; Oregon PERB; U S Virgin Islands PERB; Washington PERB; Wisconsin ERB

**PUBLISHED CASES**

To protect the privacy of the parties, I do not submit my awards for publication.

**RATES/POLICIES**

Per Diem: $1,600.00

$1600 per eight (8) hour day or any part thereof spent in hearing, mediation, inclusive of travel to and from hearing site (a minimum 1-day charge for hearing days). Preparation of award at pro-rated per diem rate.

Cancellation: $1,600.00

$1600 for each day when hearing is postponed or cancelled with notice of less than 14 days. Charges for cancelled lodging reservations and exchange fees charged by airlines for unused airline tickets will be billed to parties.

Expenses: All reasonable expenses associated with travel including lodging and parking. Mileage for use of personal automobile will be at IRS rate. Also, reasonable word processing costs.

**Exhibit D**
**D-14**

# JOHN P. DIFALCO <span style="float:right">FMCS-2826</span>

**Email:** johndifalco.arbitrator@gmail.com   (Preferred Contact Method)

**Present Occupation**  Arbitrator

| **Mailing Address** | **Additional Addresses** |
|---|---|
| 1298 Main Street, Unit A | Cave Creek, AZ 85331 |
| Pmb 4171 | |
| Windsor, CO 80550 | |

(970)530-2121

## PROFESSIONAL STATEMENT

30+ years as an  Arbitrator and 50 + years as an Attorney. Experience in virtually every industry and with Issues in both Private and Public Sectors. Numerous published Decisions in LRA,CCH,and various public sector reporters. Offices in Colorado and Arizona. Willing to Travel without limitation. Member of the National Academy of Arbitrators, FMCS,AAA,NAB and numerous public and private sector Panels.

## PROFESSIONAL AFFILIATIONS

National Academy of Arbitrators
American Arbitration Association
LERA

## EDUCATION

MA Public Administration Univ Northern Colorado 1986
JD Law Ohio St Univ 1968
BA Economics Ohio St Univ 1965

## CERTIFICATIONS

Attorney
In Person Ready
Law - Colorado 1972
Law - District Of Columbia 1970
Law - U.S. Supreme Court 1970
Law - Ohio 1968

## ARBITRATION/LABOR RELATIONS EXPERIENCE

Private Practice - Attorney/arbitrator, 1987 - 9999
Greeley, Co - City Attorney, 1980 - 1987
City/county Denver - Chief Negotiator, 1977 - 1980
U S Postal Service - ATTY & Lab Rels Spec, 1972 - 1977
U S Postal Service - Hearing Examiner, 1969 - 1972

## INDUSTRIES

Aerospace, Agriculture, Airlines,  Aluminum, Automotive, Bakery, Beverage, Brewery, Broadcasting, Building products, Canning, Cement, Chemicals, Clothing, Coal, Communications, Construction, Dairy, Distillery, Education, Electrical Equipment/Appliances, Electronics, Entertainment/arts, Feed & fertilizer, Food manu/proc/service, Foundry, Furniture, Grain mill, Health care, Hospital/nursing home, Hotels/motels/casinos/resorts, Iron, Machinery, Maritime, Meat packing, Metal fabrication, Mining, Nuclear energy, Office workers/clerical, Organizations, Packaging, Paint & varnish, Petroleum/petrochemicals, Pharmaceuticals, Plastics, Plumbing, Police & fire, Printing & publishing, Prison guard, Public sector grievance, Public sector interest,  Pulp & paper, Railroads,

<span style="float:right">**Exhibit D**<br>**D-15**</span>

## JOHN P. DIFALCO                                        FMCS-2826

Refrigeration/HVAC, Retail stores, Rubber/tire, Sports, Steel, Stone/quarry, Symphony orchestra, Transportation, Trucking & storage, Utilities, Warehousing

## ISSUES

Absenteeism, Affirmative action, Age, Arbitrability, Bargaining unit work, Bonus fringe benefits, Conduct (off-duty/ personal), Cost-of-living pay, Demotion, Disability, Discipline (discharge), Discipline (non-discharge), Discrimination, Drug/alcohol offenses, Fact finding, Fringe benefits, Gender, Grievance mediation, Health/hospitalization, Hiring practices, Holiday pay, Holidays, Incentive pay, Insurance, Job classification & rates, Job performance, Job posting/bidding, Jurisdictional dispute, Layoffs/bumping/recall, Leave, Management rights, Merit pay, National origin, Official time, Other (please specify), Overtime Pay, Past practices, Pension and welfare plans, Pension claim (fed. statute), Promotion, Race, Religion, Retirement, Safety/health conditions, Seniority, Sexual harassment, Strikes/lockouts/work stoppages/slowdowns, Subcontracting/contracting out, Tenure/reappointment, Union security, Vacation, Vacation pay, Violence or threats, Wages, Work Hours/Schedules/Assignments, Working conditions/work orders

## PERMANENT PANELS

City and County of Denver; Denver Pub Schools/school UnsIFAA/denver; Jefferson Cnty Schools/classified Un IRS/NTEU; King Soopers/UFCWIbpo/denver Interior/AFGE; Social Security/AFGE Usaf/AFGE

## ARBITRATION ROSTERS

FMCS Arbitration Roster; American Arbitration Association; Denver Public Service Unions; Littleton, Co/police; National Mediation Board

## PUBLISHED CASES

Labor Arbitration Reports (Numerous Cases), AAA, FRLA , public sector(state/local)publications

## RATES/POLICIES

Per Diem: $2,000.00
This Per Diem is for any Grievance Arbitration

Cancellation: $2,000.00
A cancellation fee is assessed if notice of cancellation is not received within 30 days of date scheduled for hearing.

Interest arbitration: $2,500.00
This Per Diem is for all special cases including Interest Arbitration,Fact Finding, Mediation, etc. (any non Grievance Arbitration). Cancellation fee is one day Per Diem for each date cancelled. In these cases that is $2,500.00 per day.

# RUBEN R. ARMENDARIZ                    FMCS-3535

**Email:** arbruben@gmail.com   (Preferred Contact Method)

**Present Occupation**  Labor Management Arbitrator

| | |
|---|---|
| **Mailing Address** | **Additional Addresses** |
| 29010 Pfeiffers Gate | Phoenix, AZ 85022 |
| Fair Oaks Ranch, TX 78015 | |

(210)379-0860

## PROFESSIONAL STATEMENT
Over 23 years of experience as a Labor Management Arbitrator. I have heard disputes for private, public and federal sectors. Selected by FMCS, AAA and several other permanent panels. Over 44 years of experience in Labor Management Relations.  I also have heard police and firefighters utilizing the age as Local Government code, chapter 143. I have been an Associate Professor/Adjunct faculty at St. Mary's University for the Graduate Business School and taught Labor Management Relations.

## PROFESSIONAL AFFILIATIONS
National Academy of Arbitrators
American Arbitration Association
State Bar Of Texas (ADR Section), National Society of Hispanic MBA's, Labor Employment Relations Association (LERA)

## EDUCATION
MBA Operatons Management St. Mary's University 1985
BBA Management University of Texas at El Paso 1972

## CERTIFICATIONS
Video Arbitration Capable
In Person Ready

## ARBITRATION/LABOR RELATIONS EXPERIENCE
Office of Arbitrator Ruben R. Armendariz, Inc. - Labor Management Arbitrator, 2000 - 2030
National Labor Relations Board - Resident Officer - Region 16 , 1992 - 1999
National Labor Relations Board - Lab. Mgmt. Rels. Examiner, 1975 - 1992

## INDUSTRIES
Aerospace, Agriculture, Airlines, Aluminum, Automotive, Bakery, Banking, Beverage, Brewery, Broadcasting, Building products, Canning, Cement, Chemicals, Clothing, Coal, Communications, Construction, Dairy, Distillery, Education, Electrical Equipment/Appliances, Electronics, Entertainment/arts, Feed & fertilizer, Food manu/proc/service, Foundry, Furniture, Glass/pottery, Grain mill, Health care, Hospital/nursing home, Hotels/motels/casinos/resorts, Iron, Lumber, Machinery, Maritime, Meat packing, Metal fabrication, Mining, Nuclear energy, Office workers/clerical, Organizations, Packaging, Paint & varnish, Petroleum/petrochemicals, Pharmaceuticals, Plastics, Plumbing, Police & fire, Printing & publishing, Prison guard, Public sector grievance, Public sector interest, Pulp & paper, Real estate, Refrigeration/HVAC, Restaurants, Retail stores, Rubber/tire, Shipbuilding/dry-dock, Sports, Steel, Stone/quarry, Symphony orchestra, Textile, Tobacco, Transportation, Trucking & storage, Upholstering, Utilities, Warehousing

## ISSUES
Absenteeism, Affirmative action, Age, Arbitrability, Bargaining unit work, Bonus fringe benefits, Conduct

**Exhibit D**
**D-17**

**RUBEN R. ARMENDARIZ**                                    FMCS-3535

(off-duty/ personal), Cost-of-living pay, Demotion, Disability, Discipline (discharge), Discipline (non-discharge), Discrimination, Drug/alcohol offenses, Fact finding, Fringe benefits, Gender, Health/hospitalization,  Hiring practices, Holiday pay, Holidays, Incentive pay, Insurance, Job classification & rates, Job performance, Job posting/bidding, Jurisdictional dispute, Layoffs/bumping/recall, Leave, Management rights, Merit pay, National origin, Official time, Overtime Pay, Past practices, Pension and welfare plans, Pension claim (fed. statute), Promotion, Race, Religion, Retirement, Safety/health conditions, Seniority, Severance pay, Sexual harassment, Strikes/lockouts/work stoppages/slowdowns, Subcontracting/contracting out, Tenure/reappointment, Union security, Vacation, Vacation pay, Violence or threats, Wages, Work Hours/Schedules/Assignments, Working conditions/work orders

**PERMANENT PANELS**
AAA -  Texas Local Goverment Code 436 - Police and Fire; AT&T Mobility; AT&T Southwest/CWA; Dallas Area Rapid Transit; Federal Aviation Administration; FMCS Panel - Southwest and West); Refresco/Teamsters; USPS - National Association of Letter Carriers (Region 10); Verizon/CWA

**ARBITRATION ROSTERS**
FMCS Arbitration Roster; AAA

**PUBLISHED CASES**
118 LA 1441 (2003), 121 LA 329 (2005), 121 LA 1601 (2005), and 123 LA 923 (2007).

**RATES/POLICIES**
Per Diem:  $1,800.00
$1,800 for each in-person day of hearing or $1600 for each virtual day of hearing.  A hearing day is any portion of the day up to eight (8) consecutive hours (9:00 a.m. – 5:00 p.m.). Any hearing day lasting beyond 5:00 p.m. will be billed at the hourly per diem rate. Study, Research,  Preparation and Writing of Opinion and Award will be billed at the hourly per diem rate.

Cancellation:  $1,200.00
Within 30 days of scheduled hearing (in-person or virtual) date(s), a cancellation fee of $1200.00 will be assessed for each scheduled hearing day. Additionally, if a hearing date(s) is postponed within 30 days and rescheduled with this arbitrator, no cancellation fee will be assessed. However, if the re-scheduled postponed hearing date is cancelled due to settlement negotiations or withdrawal of the case, a cancellation fee will be assessed for each previously scheduled cancelled hearing date(s

Travel Time:  $1,200.00
Travel from the primary business address to hearing location the day before is a $1200.00 flat fee rate plus travel expenses. If the arbitrator is unable to obtain transportation back home on the day hearing adjourned, an additional day of travel will be assessed.

Expenses: Arbitrator charges actual cost of reasonable travel expenses, food and lodging away from San Antonio, Texas.

**Exhibit D**
**D-18**

# STEVEN BRIGGS

**FMCS-2315**

**Email: ARBPROF@GMAIL.COM**   (Preferred Contact Method)

**Present Occupation**   Arbitrator, Record Label President

**Mailing Address**
4860 Kopper Pond Road
Hanover, IL 61041

**Additional Addresses**
San Francisco, CA 94111

(815)776-0947

## PROFESSIONAL STATEMENT
Have been serving as an arbitrator/mediator in both the private and public sectors since 1977.  Heard and decided approximately 3,000 case from that year to the present --- both grievance and interest arbitration. Member of National Academy of Arbitrators since 1984.  Experience in various facets of entertainment industry since 1969.

## PROFESSIONAL AFFILIATIONS
National Academy of Arbitrators
American Arbitration Association

## EDUCATION
PHD Industrial Rels  UCLA 1981
MS Industrial Rels  California State Univ-long Beach 1972
BS Business  Admin California State Univ-long Beach 1969

## CERTIFICATIONS
Video Arbitration Capable
In Person Ready

## ARBITRATION/LABOR RELATIONS EXPERIENCE
Marquette Univ - Professor, 1981 - 1988
La City Civil Service Commission - Hearing Officr, 1980 - 1981
UCLA - Independent Party Reviewer, 1977 - 1981
California State Univ - Lecturer, 1974 - 1981
Shell Oil Company - Pers & Lab Rels Positions, 1969 - 1977

## INDUSTRIES
Advertising, Aerospace, Agriculture, Airlines, Aluminum, Automotive, Bakery, Beverage, Brewery, Broadcasting, Building products, Canning, Cement, Chemicals, Clothing, Coal, Communications, Construction, Dairy, Distillery, Education, Electrical Equipment/Appliances, Electronics, Entertainment/arts, Feed & fertilizer, Food manu/proc/service, Foundry, Furniture, Glass/pottery, Grain mill, Health care, Hospital/nursing home, Hotels/motels/casinos/resorts, Iron, Lumber, Machinery, Maritime, Meat packing, Metal fabrication, Mining, Nuclear energy, Office workers/clerical, Organizations, Packaging, Paint & varnish, Petroleum/petrochemicals, Pharmaceuticals, Plastics, Plumbing, Police & fire, Printing & publishing, Prison guard, Public sector grievance, Public sector interest, Pulp & paper, Railroads, Refrigeration/HVAC, Restaurants, Retail stores, Rubber/tire, Shipbuilding/dry-dock, Sports, Steel, Stone/quarry, Symphony orchestra, Textile, Tobacco, Transportation, Trucking & storage, Utilities, Warehousing

## ISSUES
Absenteeism, Affirmative action, Age, Arbitrability, Bargaining unit work, Bonus fringe benefits, Conduct

**Exhibit D**
**D-19**

## STEVEN BRIGGS

FMCS-2315

(off-duty/ personal), Cost-of-living pay, Demotion, Disability, Discipline (discharge), Discipline (non-discharge), Discrimination, Drug/alcohol offenses, Fact finding, Fringe benefits, Gender, Grievance mediation, Health/hospitalization, Hiring practices, Holiday pay, Holidays, Incentive pay, Insurance, Job classification & rates, Job performance, Job posting/bidding, Jurisdictional dispute, Layoffs/bumping/recall, Leave, Management rights, Merit pay, Official time, Overtime Pay, Past practices, Pension and welfare plans, Pension claim (fed. statute), Promotion, Religion, Retirement, Safety/health conditions, Seniority, Severance pay, Sexual harassment, Strikes/lockouts/work stoppages/slowdowns, Subcontracting/contracting out, Tenure/reappointment, Unilateral, Union security, Vacation, Vacation pay, Violence or threats, Wages, Work Hours/Schedules/Assignments, Working conditions/work orders

## PERMANENT PANELS

Alaska Airlines and Aircraft Mechanics Fraternal Organization; Bridgestone Tire and United Steelworkers; Briggs & Stratton and various unions; Chicago Hotel Consortium & UNITEHere!; Chicago Metro Water Reclamation District and IBT/IUOE; Harley Davidson and various unions; Southwest Airlines and Aircraft Mechanics Fraternal Organization

## ARBITRATION ROSTERS

FMCS Arbitration Roster; American Arbitration Association (since 1977); Illinois Labor Relations Board

## PUBLISHED CASES

City of Springfield & IBEW Local 193 (128 LA 967); Asarco, LLC & USW Local 5252 (127 LA 753); City Colleges of Chicago & Cook Co. College Teachers Union (126 LA 1801); Chicago Board of Education & Chicago Teachers Union, Local 1 (125 LA 1579); Hope Institute & AFSCME Local 2481 (125 LA 1215); Village of Cary & Illinois FOP Labor Council (124 LA 332); Chicago Board of Education & Chicago Teachers Union, Local 1 (123 LA 696); Oak Forest Hospital & National Nurses Organizing Committee (122 LA 763); United Airlines & Aircraft Mechanics Fraternal Association (122 LA 232); Racing Association of Central Iowa (d/b/a Prairie Meadows Racetrack and Casino) & AFSCME Council 61 (121 LA 4); U.S. Department of Agriculture, Forest Products Laboratory & National Federation of Federal Employees (120 LA 1560); University of Chicago & Policemen's Benevolent and Protective Association of Illinois (120 LA 88); Village of Oak Park & Illinois FOP Labor Council (117 LA 99); Browning-Ferris of Illinois, Inc. & IBT Local 325 (114 LA 1424); Tazwell County, Illinois & Illinois FOP Labor Council (98-1 LAA 5314); Federal Aviation Administration & National Air Traffic Controllers Association (109 LA 699); Fitzpatrick Co. & Sheet Metal Workers International Union, Local 115 (108 LA 686); Briggs and Stratton Corp. & United Paperworkers International Union, Local 7232 (97-1 LAA 3815); D.G. Beyer, Inc. & Milwaukee and Southern Wisconsin Carpenters District Council (107 LA 1023); Briggs and Stratton Corp. & United Paperwork's International Union, Local 7232 (107 LA 1023); Cook County Public Defender & AFSCME Local 3315 (96-2 LAA 8106); Yellow Freight System, Inc. & IBT Local 14 (106 LA 1062); Advance Transportation Co. & IBT Local 710 (105 LA 1089); Cook County Public Defender & AFSCME Local 3315 (105 LA 475); Hysan Corp. & United Food and Commercial Workers (105 LA 85); United States Can Company & United Steelworkers of America, Local 7495 (104 LA 863); Elgin School District U-46 & Elgin Teachers Association (104 LA 405); Albany International Engineered Fabrics & IBT Local 563 (102 LA 1127); Central Die Casting & United Steelworkers of America, Local 2154-19 (102 LA 969); Wisconsin Electric Power Company & IBEW (102 LA 333); Rawson Contractors & International Union of Operating Engineers, Local 139 (94-1 LAA 4044); UPS & IBT Local 710 (101 LA 589); State of Wisconsin Department of Corrections, Division of Probation and Parole & AFSCME/WSEU Local 2748 (100 LA 218); Goshen Rubber, Inc. & Rubber Workers, Local 650 (93-1 LAA 3127); City of Harvard & Illinois FOP Labor Council (93-2 LAA 5735); Village of Lyons & Illinois FOP Labor Council (93-2 LAA 4546); Flexsteel, Inc. and United Steelworkers Local 1861-U (94 LA 497); Builders Plumbing Supply & IBT General Local 200 (95 LA 351); Jefferson Smurfit Corp. & IBT Local 415; (91-1 LAA 4353); City of West Allis & AFSCME Local 80 (92 LA 354); Knox Gelatin, Inc. & United Food and Commercial Workers, Local 1142 (90-2 LAA 90); Keystone Steel and Wire & Independent Steelworkers Alliance (89-2 LAA 5443; Mid-America Regional Bargaining Association & Operating Engineers Local 150 (89-1 LAA 4015);

## STEVEN BRIGGS

**FMCS-2315**

Ambrosia Chocolate Company & IBT General Local 200 (88-2 LAA 5528); Dane County & Wisconsin Professional Police Association (83 LA 1205); Twin Lakes School District & Wisconsin Education Association Council (82 LA 790); Rock County & AFSCME (80 LA 1217); Ampco-Pittsburg Corporation & United Auto Workers 80 LA 472); Gulf and Western Manufacturing Company & IBT (80 LA 332); Brinks, Inc. & IBT Local 344 (79 LA 815); A.O. Smith Corp. and Smith Steelworkers (79 LA 889).

### RATES/POLICIES
Per Diem: $1,600.00
Per diem covers 8-hour day.  Pro-rated hourly rate for additional time.  Travel time charged at per diem rate as well.  $800 fee charged for each hearing canceled or postponed for any reason within 60 calendar days of its scheduled date.  Full per diem charged if arbitrator arrives at hearing location city before being notified of cancellation/postponement.

Cancellation:  $800.00

Other:  $45 per hour paid initially by arbitrator to Independent Zoom Tech Consultant for pre-hearing set up and monitoring of virtual hearings.  Fee passed along to parties as Arbitrator's expense reimbursement)

Exhibit E to UNITE HERE's Complaint
to Compel Arbitration

**From:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Sent:** Thursday, June 1, 2023 7:24 AM
**To:** Kristin Martin <klm@msh.law>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

Hi Kristin,

I will call one of the Tribe's attorneys today to confirm that she is representing the Tribe on this matter and will let you know.

Thanks,
Kevin

**From:** Kristin Martin <klm@msh.law>
**Sent:** Tuesday, May 30, 2023 4:44 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Kevin –

We would like to renew our request to select an arbitrator, as we anticipate asking for the card check to be done at some point in the not too distant future.  Are you authorized to select an arbitrator for the Tribe?  If not, can you please refer me to the appropriate representative of the Tribe.  Thank you.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

**From:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>

**Sent:** Tuesday, March 7, 2023 4:24 PM
**To:** Kristin Martin <klm@msh.law>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

Hi Kristin,

I do not represent the Tribe in this matter.  I am in the process of confirming the Tribe's legal counsel on this matter and will let you know when I have that information.

Thanks,
Kevin

---

**From:** Kristin Martin <klm@msh.law>
**Sent:** Saturday, March 04, 2023 5:50 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kevin –

Do you represent the Tribe in this matter?  Previously you told me that you did not.  If you do, please let me know.  If you do not and you know who does represent the Tribe, please let me know.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

---

**From:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Sent:** Saturday, March 4, 2023 1:10 PM
**To:** Kristin Martin <klm@msh.law>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

Hi Kristin,

Since neither party intends to submit any issues to arbitration at this point and there are no pending disputes between the parties, it makes no sense to request an arbitration panel at this time.

Thanks,
Kevin

Kevin J. Wadzinski

## POWERS

Powers Pyles Sutter & Verville PC
1501 M Street NW, Seventh Floor | Washington, DC 20005-1700
dir 202.872.6774 | cell 703.401.1039
Kevin.Wadzinski@ppsv.com  |  www.ppsv.com

This message from the law firm of POWERS PYLES SUTTER & VERVILLE PC may contain information that is privileged and confidential and is intended solely for the use of the intended recipient.  If you are not the intended recipient, please be aware that any review, disclosure, copying, distribution, or use of the contents of this message is prohibited. Please notify the sender of the error by replying to this message, and destroy this email and any attachments.
**IRS CIRCULAR 230 DISCLOSURE**: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any matter addressed herein.

---

**From:** Kristin Martin <klm@msh.law>
**Sent:** Saturday, March 04, 2023 11:04 AM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Kevin –

I have not heard back from you.   If I don't hear from you by Monday, I will move forward without your input.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

---

**From:** Kristin Martin
**Sent:** Monday, February 27, 2023 5:46 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

Hi Kevin – following up.  Who should we tell FMCS is the representative of the Tribe, when we request a panel?

Kristin L. Martin

**Exhibit E**
**E-3**

McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

---

**From:** Kristin Martin
**Sent:** Friday, February 24, 2023 2:54 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

Hi Kevin –

At this point, we have not decided to submit any issues to arbitration.  We are going to apply for licenses, and we are hopeful that the licenses are issued quickly.  We would like to select an arbitrator now so that we know who the arbitrator is, either when needed to resolve a dispute or to do the card check.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

---

**From:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Sent:** Friday, February 24, 2023 2:45 PM
**To:** Kristin Martin <klm@msh.law>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

Hi Kristin,

Could you please tell me what specific issue you would like to submit to arbitration?  I assume based on our recent conversation that it is our ability to provide the employee list and access to the union representatives even though they have not been licensed by the Tribal Gaming Commission; however, it is not clear in your email.

Thanks,
Kevin


Kevin J. Wadzinski
**POWERS**
Powers Pyles Sutter & Verville PC
1501 M Street NW, Seventh Floor | Washington, DC 20005-1700
dir 202.872.6774 | cell 703.401.1039
Kevin.Wadzinski@ppsv.com  |  www.ppsv.com

This message from the law firm of POWERS PYLES SUTTER & VERVILLE PC may contain information that is privileged and confidential and is intended solely for the use of the intended recipient.  If you are not the intended recipient, please be aware that any review, disclosure, copying, distribution, or use of the contents of this message is prohibited. Please notify the sender of the error by replying to this message, and destroy this email and any attachments.

**Exhibit E**
**E-4**

**IRS CIRCULAR 230 DISCLOSURE**: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any matter addressed herein.

**From:** Kristin Martin <klm@msh.law>
**Sent:** Thursday, February 23, 2023 2:53 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Cc:** gkamer@kzalaw.com
**Subject:** RE: Sky River Casino

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Kevin and Gregg –

The agreement between Boyd, Wilton Rancheria and UNITE HERE provides for selection of the arbitrator under the agreement from an FMCS list.  It says that the Union's and Tribe's representatives will make the selection.  I am prepared to request a panel from FMCS, and would like to copy the Tribe's representative on that request.  Should that be one of you or someone else?  Thank you.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

Exhibit F to UNITE HERE's Complaint
to Compel Arbitration

**From:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Sent:** Wednesday, June 7, 2023 10:18 AM
**To:** Kristin Martin <klm@msh.law>
**Subject:** FW: Contact re Unite HERE

Hi Kristin,

Please see Christina Kazhe's contact information below.

Thanks,
Kevin

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Wednesday, June 07, 2023 1:15 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Subject:** Contact re Unite HERE

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello Kevin,
This is to confirm that as General Counsel for Wilton Rancheria, I am an authorized representative of the Tribe to discuss matters related to the Tribal Labor Relations Ordinance for the Sky River Casino.
Please share my contact information as needed.
Thank you,
Christina



**Christina Kazhe**

General Counsel, Wilton Rancheria

ckazhe@wiltonrancheria-nsn.gov

9728 Kent Street | Elk Grove | CA | 95624

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

**Exhibit F**
**F-2**

Exhibit G to UNITE HERE's Complaint
to Compel Arbitration

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Friday, June 16, 2023 10:21 AM
**To:** Kristin Martin <klm@msh.law>
**Subject:** Re: Contact re Unite HERE

Hello Kristin,
Thank you for the correspondence.  We will review and respond further shortly.
Best,
Christina



**Christina Kazhe**
General Counsel, Wilton Rancheria
ckazhe@wiltonrancheria-nsn.gov
9728 Kent Street | Elk Grove | CA | 95624

**From:** Kristin Martin <klm@msh.law>
**Sent:** Thursday, June 15, 2023 6:15 PM
**To:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Subject:** RE: Contact re Unite HERE

Hi Christina –

Attached is a letter I sent to Kevin Wadzinski on this issue when he raised it in January.  My understanding after I sent that letter is that the Tribe and Boyd were prepared to comply with the parties' agreement.  I drew that conclusion from subsequent communication with Keith, including where he specifically invoked the parties' agreement.

To be very clear, we do not intend to proceed to an election under the TLRO.  We intend to use the card check process in the parties' agreement.

Please let me know right away if you do not intend to comply with the card check procedure in the parties' agreement.

**Exhibit G**
G-1

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

---

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Thursday, June 15, 2023 6:05 PM
**To:** Kristin Martin <klm@msh.law>
**Subject:** Re: Contact re Unite HERE

Hello Kristin,
Thank you for the prompt response. We are harmonizing the parties' agreement (MOA) and the Tribal Labor Relations Ordinance of 2019 (TLRO). If you have authority that indicates the TLRO should not be followed, please provide your analysis and we would be happy to review it. Otherwise, we will continue reconciling the MOA and the TLRO and provide a suitable process that is compatible with both and does not run afoul of the TLRO for your review and input.

Best,

Christina



**Christina Kazhe**
General Counsel, Wilton Rancheria
ckazhe@wiltonrancheria-nsn.gov
9728 Kent Street | Elk Grove | CA | 95624

---

**From:** Kristin Martin <klm@msh.law>
**Sent:** Thursday, June 15, 2023 4:39 PM
**To:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Subject:** RE: Contact re Unite HERE

You can call me Kristin. We are proceeding under the parties' agreement, which is attached. You will see that paragraph 11 describes how an arbitrator is to be selected, and paragraph 7 describes the card check process.

It might be helpful to get on the phone. Please let me know when you are available.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

---

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Thursday, June 15, 2023 4:27 PM
**To:** Kristin Martin <klm@msh.law>
**Subject:** Re: Contact re Unite HERE

Hello Ms. Martin,

Nice to meet you as well.

As you may know, Section 12.10 of the Tribal-State Gaming Compact between the Tribe and the State of California requires the Tribe to adopt and maintain a Tribal Labor Relations Ordinance identical to the version attached to the Compact as Appendix C. The Compact can be found at the following link: http://www.cgcc.ca.gov/documents/compacts/original_compacts/Wilton_Rancheria_2017.pdf

In compliance with Section 12.10 of the Compact, the Tribe adopted the Tribal Labor Relations Ordinance of 2019 ("TLRO"). The TLRO can be found at the following link: https://wiltonrancheria.tribal.codes/WRC/7-3

I understand that you anticipate asking for the card check to be done in the not too distant future. Section 3-210(A) of the TLRO provides that the review and determinations relating to authorization cards will be conducted by an election officer.  I am currently reviewing the process for selecting the election officer. When you are prepared to conduct a card check, please notify me.

Since Section 3-210 of the TLRO requires that an election officer be chosen within three business days of your notification, it would be helpful to both parties if you hold off on providing your notification to allow us the time to provide a larger list of potential candidates and select a suitable candidate.

Thank you for your attention to this matter.
Christina



**Christina Kazhe**
General Counsel, Wilton Rancheria
ckazhe@wiltonrancheria-nsn.gov
9728 Kent Street | Elk Grove | CA | 95624

---

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Tuesday, June 13, 2023 5:11 PM
**To:** Kristin Martin <klm@msh.law>
**Subject:** Re: Contact re Unite HERE

Hello Ms. Martin,
We are currently reviewing and will respond further shortly.
Thank you.



**Christina Kazhe**
General Counsel, Wilton Rancheria
ckazhe@wiltonrancheria-nsn.gov
9728 Kent Street | Elk Grove | CA | 95624

**From:** Kristin Martin <klm@msh.law>
**Sent:** Thursday, June 8, 2023 12:54 PM
**To:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Subject:** RE: Contact re Unite HERE

You don't often get email from klm@msh.law. Learn why this is important

Hello Ms. Kazhe –

Please let me know when you are available to select an arbitrator.  Thank you.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

**From:** Kristin Martin
**Sent:** Wednesday, June 7, 2023 11:28 AM
**To:** ckazhe@wiltonrancheria-nsn.gov
**Subject:** FW: Contact re Unite HERE

Hello Ms. Kazhe:

Nice to meet you.  UNITE HERE would like to select an arbitrator, as we anticipate asking for the card check to be done in the not too distant future.  Attached is the panel of arbitrators we obtained from the FMCS, as well as a copy of our clients agreement.  Please let me know a good time to speak.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
415-597-7200/msh.law

**From:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Sent:** Wednesday, June 7, 2023 10:18 AM
**To:** Kristin Martin <klm@msh.law>
**Subject:** FW: Contact re Unite HERE

Hi Kristin,

Please see Christina Kazhe's contact information below.

Thanks,
Kevin

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Wednesday, June 07, 2023 1:15 PM
**To:** Wadzinski, Kevin <Kevin.Wadzinski@PowersLaw.com>
**Subject:** Contact re Unite HERE

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Exhibit G**
**G-4**

Hello Kevin,

This is to confirm that as General Counsel for Wilton Rancheria, I am an authorized representative of the Tribe to discuss matters related to the Tribal Labor Relations Ordinance for the Sky River Casino.

Please share my contact information as needed.

Thank you,

Christina



**Christina Kazhe**
General Counsel, Wilton Rancheria
ckazhe@wiltonrancheria-nsn.gov
9728 Kent Street | Elk Grove | CA | 95624

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

5

Exhibit H to UNITE HERE's Complaint
to Compel Arbitration

**Attachments:**     Sky River Notification.pdf

---

**From:** Aamir Deen
**Sent:** Tuesday, June 20, 2023 9:04 PM
**To:** Chris Gibase <Chris.Gibase@skyriver.com>; Josh Yeltman <joshua.yeltman@skyriver.com>;
ckazhe@wiltonrancheria-nsn.gov
**Subject:** UNITE HERE Notification

Please see attached correspondence.

Thanks,

Aamir Deen
President
UNITE HERE Local 49
(916)416-1006



3800 Watt Avenue, Suite 210   Sacramento, California 95821

Telephone (916) 564-4949   Fax (916) 564-4950

June 20th, 2023

To Whom It May Concern,

UNITE HERE has collected authorization cards from a majority of employees at Sky River Casino in the bargaining unit covered by our Agreement. Pursuant to paragraph 7 of that agreement, UNITE HERE requests recognition as the exclusive collective bargaining agent for such employees.

Sincerely,

Aamir Deen
President
UNITE HERE Local 49

Exhibit I to UNITE HERE's Complaint
to Compel Arbitration

-------- Original message --------
From: Chris Gibase <Chris.Gibase@skyriver.com>
Date: 6/21/23 12:09 PM (GMT-08:00)
To: Aamir Deen <adeen@unitehere.org>
Cc: Josh Yeltman <joshua.yeltman@skyriver.com>, ckazhe@wiltonrancheria-nsn.gov
Subject: RE: UNITE HERE Notification

Good Morning Aamir,

I wanted to acknowledge receipt of your letter.  Based on your assertion, there is no need to continue the card collection process, so the approved access to the property is no longer needed. We will ask security to collect all visitor badges that have been assigned to your team.  We appreciate your cooperation.

It is also my understanding that your legal counsel and the Tribe's General Counsel are discussing next steps and the appropriate process moving forward. We will be happy to re-engage based on their agreements.

Chris

**Chris Gibase**

Exhibit I
I-1



**President, Chief Operating Officer**

t: 916-866-0210

e: Chris.Gibase@skyriver.com | w: www.skyriver.com

a: 1 Sky River Parkway, Elk Grove, 95757

NOTE: This e-mail message is for the sole use of the intended recipient(s). The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message, deleting it from your computer and destroying all copies of the original message.

---

**From:** Aamir Deen <adeen@unitehere.org>
**Sent:** Tuesday, June 20, 2023 9:04 PM
**To:** Chris Gibase <Chris.Gibase@skyriver.com>; Josh Yeltman <joshua.yeltman@skyriver.com>; ckazhe@wiltonrancheria-nsn.gov
**Subject:** UNITE HERE Notification

Please see attached correspondence.

Thanks,

Aamir Deen
President
UNITE HERE Local 49
(916)416-1006

Exhibit I
I-2

Exhibit J to UNITE HERE's Complaint
to Compel Arbitration

**AMERICAN ARBITRATION ASSOCIATION**®

**LABOR ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

---

Date: **August 18, 2023**

Name of Filing Party: **Wilton Rancheria dba Sky River Casino**

Check applicable box: Filing Party is ☐ Union or ☑ Employer

Address: **9728 Kent Street**

| City: **Elk Grove** | State: **California** | Zip Code: **95624** |
|---|---|---|
| Telephone: **916-226-2590** | Cell Phone: **916-806-6290** | |

Email Address: **ckazhe@wiltonrancheria-nsn.gov**

Name of Filing Party's Representative: **Christina Kazhe**

Name of Firm (if applicable): **Kazhe Law Group PC**

Representative's Address: **9245 Laguna Springs Drive, Suite 120**

| City: **Elk Grove** | State: **California** ▼ | Zip Code: **95758** |
|---|---|---|
| Telephone: **916-226-2590** | Cell Phone: **916-806-6290** | |

Email Address: **ckazhe@kazhelaw.com**

Name of Billing Representative: **Christina Kazhe**

Phone Number: **916-226-2590**

Email Address: **ckazhe@wiltonrancheria-nsn.gov**

Additional Email(s) to be Copied on Correspondence:

The filing party, a party to a Collective Bargaining Agreement dated **N/A**, which provides for arbitration under the Labor Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Nature of Grievance: ☐ Discharge ☐ Suspension ☐ Other Discipline ☐ Contract Interpretation ☑ Other

Describe:

Pursuant to the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, Wilton Rancheria was required to adopt and maintain Tribal Law identical to the Tribal Labor Relations Ordinance attached to the Compact. To comply with this requirement, Wilton Rancheria enacted the Tribal Labor Relations Ordinance of 2019 ("TLRO"), codified as Chapter 3 of the Wilton Rancheria Labor Code, on April 18, 2019. The TLRO provides for a two-step certification process before an arbitrator from the Tribal Labor Panel: (1) dated and signed authorization cards from thirty percent (30%) or more of the Eligible Employees; and (2) a secret ballot election requiring more than fifty percent (50%) of Eligible Employees. The TLRO requires all issues to be resolved by a resolution by the Tribal Labor Panel. Respondent refuses to comply with the two-step certification process and the dispute resolution mechanism identified in the TLRO, relying on a Memorandum of Agreement (MOA) signed by the parties on August 7, 2017, prior to the enactment of the Tribe's TLRO.

Requested: ☑ Full Administration ☐ List with Appointment ☐ List Only

Remedy Sought:

A determination that Respondent must comply with the two-step certification process identified in the TLRO and resolve any disputes pursuant to the dispute resolution mechanism identified in the TLRO.

Name of Grievant(s) (if applicable):

N/A

---

12/2021

**Exhibit J**
**J-1**

**AMERICAN ARBITRATION ASSOCIATION**®

**LABOR ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

| |
|---|
| The filing party requests that hearings be held at the following location: **Sky River Casino** |
| Under the rules, you may file an answering statement within ten (10) days after notice from the AAA. |
| Name of Respondent: **UNITE HERE International Union**<br>Check applicable box: Respondent is ☑ Union or ☐ Employer |
| Contact Person: **Kristin Martin** |
| Address: **3800 Watt Avenue, Suite 210** |

| City: Sacramento | State: **California** | Zip Code: **95821** |
|---|---|---|
| Telephone: 916-564-4949 | Cell Phone: | |

| |
|---|
| Email Address: **klm@msh.law** |
| Name of Respondent's Representative (if known): **Kristin Martin** |
| Name of Firm (if applicable): **McCracken, Stemerman & Holsberry, LLP** |
| Representative's Address: **475 14th Street, Suite 1200** |

| City: Oakland | State: **California** | Zip Code: 94612 |
|---|---|---|
| Telephone: 415-597-7200 | Cell Phone: | |

| |
|---|
| Email Address: **klm@msh.law** |
| Name of Billing Representative: |
| Phone Number: |
| Email Address: |
| ***AAA Customer Service can be reached at 800-778-7879.*** |
| **Reminders:** Send a copy of this form to the other side at the time it is forwarded to the AAA. Please reference appropriate fees pursuant to the fee schedule outlined in the Labor Rules. You can file your case online by visiting the AAA's website at http://www.adr.org/fileonline. *You may also wish to visit our website for a complete list of our administrative services and procedures, including our Grievance Mediation Procedures, Expedited Procedures, List Only Service and List with Appointment. Your case manager can also provide additional information.* |

12/2021

**Exhibit J**
**J-2**

Exhibit K to UNITE HERE's Complaint
to Compel Arbitration

**From:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>
**Sent:** Monday, November 27, 2023 3:47 PM
**To:** Kristin Martin <klm@msh.law>
**Subject:** Re: arbitrator selection

Hello Kristin,
We cannot currently agree to Arbitrator Brand conducting a card check if Arbitrator Brand's decision is in the Union's favor. The remedy sought includes a determination that Unite Here must comply with the certification process identified in the TLRO, not a decision on whether the card check under the MOA may proceed. While this distinction may appear to be semantics, it highlights the point that Arbitrator Brand's decision can take many forms. In addition, the result of the arbitration is still subject to the rights of either party, including motions to confirm or vacate the award pursuant to Section 3-213(E) of the TLRO. Therefore, we cannot currently agree to any actions conditioned on a decision of the arbitrator as it would be highly speculative and would attempt to limit the rights of either party. Any agreement on how to move forward post-decision is better suited for after the decision is made.
Thank you.
Christina



**Christina Kazhe**
General Counsel, Wilton Rancheria
ckazhe@wiltonrancheria-nsn.gov
9728 Kent Street | Elk Grove | CA | 95624

**From:** Kristin Martin <klm@msh.law>
**Sent:** Monday, November 27, 2023 1:27 PM

Exhibit K
K-1

**To:** Christina Kazhe <ckazhe@wiltonrancheria-nsn.gov>

**Subject:** arbitrator selection

Hi Christina:

As you know, we are scheduled for arbitration before Arbitrator Brand on February 8, and Arbitrator Brand will decide whether the card check under the Memorandum of Agreement may proceed.  Will you agree that if Arbitrator Brand decides in the Union's favor, Arbitrator Brand will be the arbitrator to conduct the card check.  I note that paragraph 11 of the MOA requires the parties to select from the FMCS list, or to select from another source, and you have already refused to select an arbitrator from the FMCS list.  If you prefer that I raise this question with Sheila Carroll, please let me know.

Kristin L. Martin
McCracken, Stemerman & Holsberry, LLP
475 14th Street No. 1200, Oakland, CA  94612
1630 S. Commerce St., Las Vegas, NV  89102
415-597-7200/msh.law

Please be advised that this email and any files transmitted with it are confidential attorney-client communications or attorney work product or may otherwise be privileged or confidential and are intended solely for the individuals or entities to whom they are addressed. If you are not the intended recipient, please do not read, copy or retransmit this communication but destroy it immediately. Any unauthorized dissemination, distribution or copying of this communication is strictly prohibited.

**Exhibit K**
**K-2**