KRISTIN L. MARTIN (SBN 206528)
LUKE DOWLING (SBN 328014)
McCracken, Stemerman & Holsberry, LLP
475 14th Street, Suite 1200
Oakland, CA 94612
Telephone:   (415) 597-7200
Facsimile:   (415) 597-7201
E-mail:      klm@msh.law
             ldowling@msh.law

Attorneys for Plaintiff UNITE HERE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE,<br><br>        Plaintiff,<br><br>v.<br><br>Wilton Rancheria,<br><br>        Defendants. | Case No. 2:23-CV-02767-KJM-DB<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR**<br><br>Hearing Date:   January 26, 2024<br>Hearing Time:   10:00 A.M.<br>Location:   Courtroom 3, 15th floor<br>Judge:   Hon. Kimberly J. Mueller |

TO DEFENDANT WILTON RANCHERIA AND ITS ATTORNEYS OF RECORD:

     PLEASE TAKE NOTICE that on January 26, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 501 I Street, Sacramento, CA 95814, Plaintiff-Petitioner UNITE HERE will move before the Honorable Kimberly J. Mueller, United States District Judge for an order, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, compelling arbitration.  This motion is based on the attached memorandum of law, all papers already on file in this action, and such further evidence and argument as the Court shall permit.

The undersigned counsel certifies that she has met and conferred with counsel for the Defendant and such efforts have been exhausted. Prior to filing this case, the undersigned spoke with the Defendant's General Counsel (Christina Kazhe) on several occasions about the Plaintiff's desire to select an arbitrator to resolve disputes under the parties' agreement. On December 1, 2023 and on December 4, 2023, the undersigned spoke with Defendant's outside counsel (Sheila Carroll of the Carroll Law Firm) about this motion. A detailed discussion did not resolve the issues. Specifically, the Defendant did not agree to select an arbitrator and resolve disputes under the parties' agreement before that arbitrator.

Dated:  December 4, 2023

Respectfully submitted,

**McCracken, Stemerman & Holsberry, LLP**

By: /s/

KRISTIN L. MARTIN (SBN 206528)
LUKE DOWLING (SBN 328014)
McCracken, Stemerman & Holsberry, LLP
475 14th Street, Suite 1200
Oakland, CA 94612
Telephone:     (415) 597-7200
Facsimile:      (415) 597-7201
E-mail:           klm@msh.law
                     ldowling@msh.law

*Attorneys for Plaintiff UNITE HERE*

KRISTIN L. MARTIN (SBN 206528)
LUKE DOWLING (SBN 328014)
McCracken, Stemerman & Holsberry, LLP
475 14th Street, Suite 1200
Oakland, CA 94612
Telephone:	(415) 597-7200
Facsimile:	(415) 597-7201
E-mail:	klm@msh.law
	ldowling@msh.law

Attorneys for Plaintiff UNITE HERE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Wilton Rancheria,<br><br>　　　　　Defendants. | Case No. 2:23-CV-02767-KJM-DB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR** |

## Introduction

Plaintiff UNITE HERE ("Union") and the Defendant Wilton Rancheria ("Tribe") made an agreement ("Agreement") which they decided would be enforceable through arbitration before the Agreement's sole arbitrator. They also agreed on the process for selecting that arbitrator. At its core, the Agreement is about the process for organizing the Tribe's casino employees into a union. That organizing process culminates with what is known as a "card check," conducted by the Agreement's sole arbitrator, to determine whether the Union has support from a majority of employees and will become the employees' collective bargaining representative. Agreements of this nature are very

common and are enforced by the federal courts. *Service Employees Int'l Union v. St. Vincent Medical Ctr.*, 344 F.3d 977, 979, 984-86 (9th Cir. 2003); *HERE Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992); *see also United Steel, Paper, etc. v. TriMas Corp.*, 531 F.3d 531, 533 (7th Cir. 2008); *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 568 (2d Cir. 1993). But implementation of the Agreement's card-check process and resolution of other disputes under the Agreement are stalled because the Tribe refuses to participate in selecting the Agreement's sole arbitrator. As a result, there is not an arbitrator who can conduct the card check or resolve disputes about how the Agreement is to be interpreted or implemented. The Union now seeks a court order compelling the Tribe to select an arbitrator through the process set out in the Agreement, to take any steps necessary to enable the arbitrator to conduct the card check, and to arbitrate any disputes about the interpretation or application of that Agreement.

**Statement of Facts**

**A.     The Agreement**

The Tribe owns a large and successful casino in Sacramento County called the Sky River Casino. The Casino opened for business in August 2022 and is operated by Las Vegas-based Boyd Gaming Corporation ("Casino Operator"). Complaint, ¶¶ 1, 4, 18-19 (ECF No. 1). The Union represents hospitality-industry employees, including employees who work in casinos. Complaint, ¶ 3.

Before the Casino opened, the Tribe and the Casino Operator entered into an agreement with the Union about the procedures that would apply at that Casino if the Union sought to become the collective-bargaining representative of the Casino's employees. Complaint, ¶ 10 & Ex. B. Three provisions of the Agreement are relevant to this case.

First, paragraph 11 of the Agreement contains a broad arbitration clause. It states that "[t]he parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration." Complaint, ¶ 24 & Ex. B, at B-3. Paragraph 11 also says how the sole arbitrator is to be chosen:

> Selection of a sole and impartial arbitrator shall be made by the Tribe and the Union representatives each alternately striking, with the Union making the first strike, one (1) name from a seven (7) member panel of arbitrators received from the FMCS [i.e., the Federal Mediation and Conciliation Service], who are members of the National Academy of Arbitrators and who reside in California, Arizona, New Mexico or Nevada.

> The person whose name remains shall be requested to serve as the impartial arbitrator. By mutual agreement, the parties may waive the use of the panel named above and refer the matter in dispute to an arbitrator selected from any other source.

Complaint, ¶ 25 & Ex. B, at B-3.

Second, the Agreement provides that a card-check process will be used to determine whether the Union represents a majority of employees, that the sole arbitrator will conduct the card check, and that if the arbitrator decides that the Union does represent a majority of employees, the Tribe and the Casino Operator will recognize the Union as the employees' collective-bargaining representative:

> The Union is not presently recognized as the exclusive collective bargaining representative of the Employees. The Union may request recognition as the exclusive collective bargaining agent for such Employees. The arbitrator identified in paragraph 11, or another person mutually agreed to by the parties, will conduct a review of the Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of such Employees. If that review establishes that a majority of such Employees has designated the Union as their exclusive collective bargaining representative or has joined the Union, the Tribe and the Operator will recognize the Union as such representative of such Employees.

Complaint, ¶ 23 & Ex. B, at B-2.

Third, paragraph 5 gives the Union access to the Casino's non-public areas so that it can communicate with employees:

> If the Union provides written notice to the Tribe or the Operator of its intent to organize Employees covered by this Agreement, the Tribe and the Operator shall provide access to its premises and to such Employees by the Union. The Union may engage in organizing efforts in non-public areas of the Casino during Employees' non-working times (before work, after work, and during meals and breaks) and/or during such other periods as the parties may mutually agree upon. "Organizing" includes communicating with Employees before and after recognition of the Union as provided in Paragraph 7.

Complaint, ¶ 21 & Ex. B, at B-1.

**B.    The Tribe has obstructed enforcement of the Agreement's terms by refusing to select the arbitrator.**

In February 2023, the Union gave the Tribe notice of its intent to organize employees, and the Tribe and the Casino Operator gave the Union access to the Casino's non-public areas, all of which was in accordance with paragraph 5 of the Agreement. Complaint, ¶ 22. In March 2023, the Union requested that the Federal Mediation and Conciliation Service provide a panel of seven arbitrators who

meet the criteria in paragraph 11, which the FMCS provided.  Complaint, ¶ 26 & Ex. D.  The Union requested the FMCS panel so that an arbitrator would be available when needed, including to conduct a card check in the future.  Complaint, ¶ 26.

The Union did not make contact with the Tribe's counsel until mid-June 2023.  Complaint, ¶ 27 & Exs. E, F.  In the same month, the Union notified representatives of the Tribe and the Casino Operator that the Union had support from a majority of employees and was ready for an arbitrator to conduct the card check required by paragraph 7 of the Agreement.  Complaint, ¶¶ 28, 30 & Ex. H.  Since then, the Tribe has refused to select an arbitrator from the FMCS panel or from any other source.  Complaint, ¶¶ 29, 32.  By refusing to select an arbitrator, the Tribe has prevented the card-check process from taking place in accordance with paragraph 7 of the Agreement.  Complaint, ¶¶ 38-39.

The Tribe's stated reason for refusing to select an arbitrator is that the Tribe thinks that parts of the Agreement, including the card-check provision, are invalid because, according to the Tribe, they conflict with the so-called federal Tribal Labor Relations Ordinance ("TLRO").  Complaint, ¶¶ 29, 33 & Ex. G.  As background, the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq*, allows Indian tribes to operate Las Vegas-style gaming only if the tribe has entered into a compact with the state where the gaming will take place.  *See* 25 U.S.C. § 2510(d)(1)(C).  The Tribe's compact with California requires that the Tribe adopt the TLRO that is attached to the compact.  Complaint, ¶ 9.  Like the Agreement, the TLRO also has an arbitration provision, but the American Arbitration Association administers the selection of arbitrators under the TLRO.  Complaint, ¶ 35 & Ex. A, at A-11, 12.

While the Union was trying to persuade the Tribe to select an arbitrator from the FMCS panel, who would then be able to decide whether, as the Tribe's claims, the Agreement's card-check process is invalid and if not, conduct the card check, the Tribe submitted a request for arbitration to the American Arbitration Association.  Complaint, ¶¶ 34-35 & Ex. J.  That request states:

> Pursuant to the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, Wilton Rancheria was required to adopt and maintain Tribal Law identical to the Tribal Labor Relations Ordinance attached to the Compact. To comply with this requirement, Wilton Rancheria enacted the Tribal Labor Relations Ordinance of 2019 ("TLRO"), codified as Chapter 3 of the Wilton Rancheria Labor Code, on April 18, 2019.  The TLRO provides for a two-step certification process before an arbitrator from the Tribal Labor Panel: (1) dated and signed authorization cards from thirty percent (30%) or more of the Eligible Employees; and (2) a secret ballot election requiring more

4

than fifty percent (50%) of Eligible Employees.  The TLRO requires all issues to be resolved by a resolution by the Tribal Labor Panel.  Respondent refuses to comply with the two-step certification process and the dispute resolution mechanism identified in the TLRO, relying on a Memorandum of Agreement (MOA) signed by the parties on August 7, 2017, prior to the enactment of the Tribe's TLRO.

Complaint, Ex. J, at J-1.  Hoping to expedite resolution of the parties' dispute, the Union agreed to arbitrate the dispute described in the Tribe's request for arbitration before an arbitrator selected through the American Arbitration Association.  Complaint, ¶ 36.  That arbitration hearing is scheduled to be held before Arbitrator Norman Brand on February 8, 2024, and a decision is due by March 11, 2023.  Complaint, ¶ 37.

That arbitration may not resolve the dispute over the Agreement's validity.  After the hearing was scheduled before Arbitrator Brand, the Tribe took the position that the only issue that Arbitrator Brand may decide is whether the Union must comply with the TLRO's election process, and that Arbitrator Brand may *not* decide the related issue of whether the Tribe must comply with the card-check process under the parties' Agreement.  Complaint, ¶ 38 & Ex. K.

**C.     There is a dispute subject to arbitration over the Union's right to access non-public areas of the Casino.**

There is another dispute under the Agreement that the Union seeks to present to arbitration.  In June 2023, the Union told the Tribe and Casino management that it had collected authorization cards from a majority of employees and requested that the card check be conducted.  Complaint, ¶¶ 28, 30 & Ex. H.  Casino management responded by telling the Union that it would no longer be given access to non-public areas of the Casino:

> Based on your assertion, there is no need to continue the card collection process, so the approved access to the property is no longer needed.  We will ask security to collect all visitor badges that have been assigned to your team.  We appreciate your cooperation.

Complaint, ¶ 31 & Ex. I.  Revoking the Union's access violates paragraph 5 of the Agreement which entitles the Union to access the Casino's non-public areas "before and after recognition of the Union."  Complaint, ¶ 21 & Ex. B, at B-1.

///

///

## Argument

**A.   This Court has jurisdiction to enforce the arbitration clause in a labor contract.**

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, empowers the federal courts to enforce arbitration agreements in labor contracts by ordering parties to arbitrate. *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 450-51 (1957); *see also Goodall-Sanford, Inc. v. United Textile Workers Local 1802*, 353 U.S. 550, 551 (1957) (compelling arbitration and explaining that the right to arbitration arises under § 301(a)). Section 301 applies to all types of labor contracts, including contracts about the process for organizing workers into a union. *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25-26 (1962) ("'[C]ontracts' [in Section 301] does include more than 'collective bargaining agreements' . . . Congress was not indulging in surplusage: A federal forum was provided for actions on other labor contracts besides collective bargaining contracts."); *see also HERE Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1466 n.3 (9th Cir. 1992) (agreement for card-check process covered under Section 301). Moreover, federal labor policy encourages the use of arbitration to resolve labor disputes, including disputes about the process for union organizing. *Boys Markets, Inc. v. Retail Clerks, Local 770*, 398 U.S. 235, 253 (1970); *Carey v. Westinghouse*, 375 U.S. 261, 272 (1964). The court's "very limited" function "when the parties have agreed to submit all questions of contract interpretation to the arbitrator" is "to ascertain[] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567 (1960).

It makes no difference that the defendant in this case is an Indian tribe. The Tribe agreed, in paragraph 12 of the Agreement, that the Union could sue it in federal court:

> For the sole purpose of enabling a suit to compel arbitration or to confirm an arbitration award under this Agreement, the Tribe agrees to a limited waiver of sovereign immunity and consents to be sued in federal court without exhausting tribal remedies, or in the event that the federal court declines jurisdiction, in the appropriate state superior court.

Complaint, Ex. B, at B-3; *see also C&L Enterprises, Inc. v. Citizen Band of Potawatami Indian Tribe*, 532 U.S. 411, 420 (2001) (a tribe waives its immunity from suit by agreeing to judicial enforcement of an arbitration agreement).

**B.     The Agreement governs the Union's claims in this case.**

The Union's claim to compel arbitration has three components. First, the Union seeks an order compelling the Tribe to participate in selecting an arbitrator. Paragraph 11 of the Agreement contains a broad arbitration clause that requires "expedited and binding arbitration" about "any disputes over the interpretation or application of this Agreement." Complaint, Ex. B, at B-3. Paragraph 11 also instructs the parties to select a "sole and impartial arbitrator" either from a panel of arbitrators provided by the Federal Mediation and Conciliation Services, unless they agree to a different arbitrator. The Tribe has refused to participate in selecting an arbitrator from the FMCS list, and the Tribe has not agreed with the Union to appoint a different person to serve as the Agreement's sole arbitrator.

Second, the Union seeks an order compelling the Tribe to take any steps necessary to enable the Agreement's sole arbitrator, or another mutually agreeable arbitrator, to conduct the card check required by paragraph 7 of the Agreement. The Tribe says that the card-check process is invalid because, according to the Tribe, it conflicts with the election process in the Tribal Labor Relations Ordinance. That is also a question that the Tribe may submit to the Agreement's arbitrator. *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006) (holding that a claim that external law invalidates a contract is an issue for the arbitrator to resolve); *UNITE HERE Local 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 703-04 (9th Cir. 2022) (same with respect to tribe's claim that federal labor law invalidated a contract pertaining to the process for union organizing).

The Union was, and is, willing to submit the question whether the card-check process in the Agreement is valid to Arbitrator Norman Brand, who is scheduled to arbitrate what is essentially the same dispute, but it proceeding under the Tribal Labor Relations Ordinance. The Tribe has asked Arbitrator Brand to decide that the TLRO's election process is exclusive and invalidates the Agreement's card-check process. But the Tribe has also taken the position that, even if Arbitrator Brand decides that the TLRO's election process is not exclusive, Arbitrator Brand may *not* order the Tribe to participate in the card-check process or conduct the card check. The Union is hopeful that the Tribe will reconsider its obstructionist position. In other words, if Arbitrator Brand decide in favor of the Union that the TLRO's election process is not exclusive and does not void the Agreement's card-check process, then Arbitrator Brand should be able to order and conduct a card check under the

1  Agreement.  But unless that occurs, the Union seeks an order compelling the Tribe to arbitrate its
2  challenge to the Agreement's card-check process before the Agreement's sole arbitrator.
3         Third, the Union seeks an order compelling the Tribe to arbitrate a dispute under paragraph 5 of
4  the Agreement.  Paragraph 5 gives the Union's representatives access to non-public areas of the Casino
5  before and after the Union is recognized as the employees' collective-bargaining representative.
6  Complaint, Ex. B, at B-3.  The Union seeks to arbitrate the questions whether the Tribe (and its Casino
7  Operator) violated the Agreement by revoking such access and if so, what shall the remedy be.

**C.     The order compelling arbitration should be granted without delay.**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, supersedes the normal operation of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 81(a)(6)(B); and empowers the Court to address a motion to compel arbitration summarily:

> Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in provided by the Federal Rules of Civil Procedure.  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4; *see also* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.")  FAA and Rule 81 serve to "expedite judicial treatment of matters pertaining to arbitration." *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365-66 (2d Cir. 1965).

Courts may apply the FAA's procedures to suits involving labor arbitration if such procedures are consistent federal labor law. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) ("[T]he federal courts have often looked to the [Federal Arbitration] Act for guidance in labor arbitration cases.")  The FAA's expedited procedure for compelling arbitration is particularly appropriate here because labor arbitration is supposed to be quick. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (noting the public interest in "speedy resolution of grievances by private mechanisms"); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558 (1964) (delay of "speedy arbitrated settlement" of labor dispute is "contrary to the aims of national labor policy");

*SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr.*, 812 F.3d 725, 733 (9th Cir. 2015) (delaying labor arbitration is a breach of the duty of good faith); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1084 (9th Cir. 1993) ("One of the central purposes of arbitration proceedings is to achieve speedy and fair resolutions of disputes.")

The delay here is particular detrimental because the Union contends that a majority of employees have selected it to be their representative and the Tribe is preventing the Union from establishing that support through the agreed-upon card check process.  Until that occurs, employees cannot enjoy their federal-law right to union representation.

### Conclusion

For all of the foregoing reason, the Union respectfully requests that the Court order the Tribe to:

1. participate in selecting the sole arbitrator under the Agreement either by alternately striking from the FMCS list or by reaching agreement with the Union on another arbitrator;

2. take any steps necessary for the selected arbitrator to conduct the card check required by paragraph 7 of the Agreement; and

3. submit any disputes about the interpretation or application of the Agreement to arbitration.

Dated:  December 4, 2023                          Respectfully submitted,

**McCracken, Stemerman & Holsberry, LLP**

By: [signature]

KRISTIN L. MARTIN (SBN 206528)
LUKE DOWLING (SBN 328014)
McCracken, Stemerman & Holsberry, LLP
475 14th Street, Suite 1200
Oakland, CA 94612
Telephone:   (415) 597-7200
Facsimile:   (415) 597-7201
E-mail:      klm@msh.law
             ldowling@msh.law

*Attorneys for Plaintiff UNITE HERE*