CARROLL & ASSOCIATES, P.C.
Sheila Lamb Carroll (SBN 142764)
Dacia J. Cenat (SBN 305161)
3600 American River Drive, Suite 205
Sacramento, CA 95864
Telephone: 916.488.5388
Facsimile: 916.488.5387
scarroll@thecarrollfirm.com
dcenat@thecarrollfirm.com

Attorneys for Defendant
WILTON RANCHERIA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITE HERE, | Case No. 2:23-cv-02767-KJM-DB |
| Plaintiff, | **WILTON RANCHERIA'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS UNITE HERE'S VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR** |
| v. | |
| WILTON RANCHERIA, | |
| Defendant. | |
| | **DATE:** January 26, 2024 |
| | **TIME:** 10:00 AM |
| | **CTRM:** 3 (15th floor) |
| | **JUDGE:** Hon. Kimberly J. Mueller |

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN THAT Wilton Rancheria ("the Tribe") requests that in considering its Motion to Dismiss, the Court take judicial notice of the following documents, pursuant to Federal Rule of Evidence 201:

**Exhibit 1:** Portions of the Tribal-State Gaming Compact Between The State Of California And Wilton Rancheria.

**Exhibit 2:** Chapter 3 of the Wilton Rancheria Labor Code enacted by the Tribal Council, the Tribe's legislative body, in 2019: the Tribal Labor Relations Ordinance of 2019 ("TLRO").[1]

---

[1] The TLRO can be located on Wilton Rancheria's website: Wilton Rancheria, https://wiltonrancheria.tribal.codes/WRC/7-3 (last visited Dec. 15, 2023).

Carroll &
Associates, PC

WILTON RANCHERIA'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS
UNITE HERE'S VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION AND SELECTION
OF AN ARBITRATOR

1    This Court may take notice of facts not subject to reasonable dispute that are either (1)

2    generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate

3    and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R.

4    Evid. 201(b). The Court may take judicial notice of facts if requested and provided with the

5    necessary information. FED. R. EVID. 201(c)(2).

6    A court may take judicial notice of "matters of public record." *Lee v. City of Los*

7    *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). This includes tribal-state gaming compacts and

8    printouts from a Tribe's website. *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d

9    962, 968 n.4 (9th Cir. 2010); *Blue Lake Rancheria v. United States*, 2010 U.S. Dist. LEXIS

10    1428, at *7 n.4 (N.D. Cal. Jan. 8, 2010), rev'd on other grounds, *Blue Lake Rancheria v. United*

11    *States*, 653 F.3d 1112 (9th Cir. 2011).

12    The above-referenced documents were obtained from sources that are: (1) generally

13    known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready

14    determination by a resort to sources whose accuracy cannot reasonably be questioned.

15    Accordingly, pursuant to Federal Rule of Evidence 201, the Tribe respectfully requests

16    that judicial notice be taken of the contents of the above-referenced documents attached hereto.

17

18    Dated:  December 18, 2023

19                                    CARROLL & ASSOCIATES PC

20

21                        By:    /s/ Sheila Lamb Carroll
                                 Sheila Lamb Carroll (SBN 142764)
22                               Dacia J. Cenat (SBN 305161)
                                 Attorneys for Wilton Rancheria
23

24

25

26

27

28

WILTON RANCHERIA'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS
UNITE HERE'S VERIFIED COMPLAINT AND PETITION TO COMPEL ARBITRATION AND SELECTION
OF AN ARBITRATOR

EXHIBIT "1"

# TRIBAL-STATE GAMING COMPACT

## BETWEEN

## THE STATE OF CALIFORNIA

## AND

## WILTON RANCHERIA

**TABLE OF CONTENTS**

PREAMBLE                                                                    I

Sec. 1.0.     Purposes and Objectives.                                       4

Sec. 2.0.     Definitions.                                                   4

Sec. 3.0.     Scope of Class III Gaming Authorized.                          9

Sec. 3.1.     Authorized Class III Gaming.                                   9

Sec. 4.0.     Authorized Location of Gaming Facility, Number of Gaming
              Devices, Cost Reimbursement, and Mitigation.                   10

Sec. 4.1.     Authorized Number of Gaming Devices.                           10

Sec. 4.2.     Authorized Gaming Facility.                                    10

Sec. 4.3.     Special Distribution Fund.                                     10

Sec. 4.3.1.   Use of Special Distribution Funds.                             12

Sec. 4.4.     Cost Reimbursement and Mitigation to Local Governments.        12

Sec. 4.5.     Quarterly Payments and Quarterly Contribution Report.          13

Sec. 4.6.     Exclusivity.                                                   16

Sec. 5.0.     Revenue Sharing With Non-Gaming and Limited-Gaming
              Tribes.                                                        17

Sec. 5.1.     Definitions.                                                   17

Sec. 5.2.     Payments to the Revenue Sharing Trust Fund or the Tribal
              Nation Grant Fund.                                             19

Sec. 5.3.     Provision for Credits Related to Payments Due Under
              Section 5.2.                                                   21

Sec. 6.0.    Licensing.                                                    24

Sec. 6.1.    Gaming Ordinance and Regulations.                            24

Sec. 6.2.    Tribal Ownership, Management, and Control of Gaming
             Operation.                                                   25

Sec. 6.3.    Prohibitions Regarding Minors.                               25

Sec. 6.4.    Licensing Requirements and Procedures.                       26

Sec. 6.4.1.  Summary of Licensing Principles.                             26

Sec. 6.4.2.  Gaming Facility.                                             26

Sec. 6.4.3.  Gaming Employees.                                            30

Sec. 6.4.4.  Gaming Resource Suppliers.                                   32

Sec. 6.4.5.  Financial Sources.                                          35

Sec. 6.4.6.  Processing Tribal Gaming License Applications.               39

Sec. 6.4.7.  Suitability Standard Regarding Gaming Licenses.              42

Sec. 6.4.8.  Background Investigations of Applicants.                     43

Sec. 6.4.9.  Temporary Licensing of Gaming Employees.                     45

Sec. 6.5.0.  Tribal Gaming License Issuance.                              45

Sec. 6.5.1.  Denial, Suspension, or Revocation of Licenses.              46

Sec. 6.5.2.  Renewal of Licenses; Extensions; Further Investigation.      46

Sec. 6.5.3.  Identification Cards.                                        47

Sec. 6.5.4.  Fees for Tribal Gaming License.                             48

Sec. 6.5.5.  Suspension of Tribal Gaming License.                        48

Sec. 6.5.6.    State Determination of Suitability Process.    48

Sec. 6.6.    Submission of New Application.    51

Sec. 7.0.    Approval and Testing of Gaming Devices.    51

Sec. 7.1.    Gaming Device Approval.    51

Sec. 7.2.    Gaming Test Laboratory Selection.    53

Sec. 7.3.    Maintenance of Records of Testing Compliance.    53

Sec. 7.4.    State Gaming Agency Inspections.    54

Sec. 7.5.    Technical Standards.    55

Sec. 7.6.    Transportation of Gaming Devices.    55

Sec. 8.0.    Inspections.    56

Sec. 8.1.    Investigation and Sanctions.    56

Sec. 8.2.    Assistance by State Gaming Agency.    56

Sec. 8.3.    Access to Premises by State Gaming Agency; Notification; Inspections.    56

Sec. 8.4.    Inspection, Copying and Confidentiality of Documents.    57

Sec. 8.5.    NIGC Audit Reports.    60

Sec. 8.6.    Cooperation with Tribal Gaming Agency.    60

Sec. 8.7.    Compact Compliance Review.    60

Sec. 8.8.    Waiver of Materials.    61

Sec. 9.0.    Rules and Regulations for the Operation and Management of the Gaming Operation and Facility.    61

Sec. 9.1.      Adoption of Regulations for Operation and Management;
               Minimum Standards.                                          61

Sec. 9.1.1.    Minimum Internal Control Standards (MICS).                  64

Sec. 9.2.      Program to Mitigate Problem Gambling.                       66

Sec. 9.3.      Enforcement of Regulations.                                 67

Sec. 9.4.      State Civil and Criminal Jurisdiction.                      67

Sec. 9.5.      Tribal Gaming Agency Members.                               68

Sec. 9.6.      Uniform Tribal Gaming Regulations.                         69

Sec. 10.0.     Patron Disputes.                                            70

Sec. 11.0.     Off-Reservation Environmental and Economic Impacts.        72

Sec. 11.1.     Tribal Environmental Impact Report.                        72

Sec. 11.2.     Notice of Preparation of Draft TEIR.                        75

Sec. 11.3.     Notice of Completion of Draft TEIR.                        76

Sec. 11.4.     Issuance of Final TEIR.                                     77

Sec. 11.5.     Cost Reimbursement to County.                              77

Sec. 11.6.     Failure to Prepare Adequate TEIR.                          77

Sec. 11.7.     Intergovernmental Agreement.                               77

Sec. 11.8.     Arbitration.                                               79

Sec. 12.0.     Public and Workplace Health, Safety, and Liability.        81

Sec. 12.1.     General Requirements.                                       81

Sec. 12.2.    Tobacco Smoke.    81

Sec. 12.3.    Health and Safety Standards.    81

Sec. 12.4.    Tribal Gaming Facility Standards Ordinance.    89

Sec. 12.5.    Insurance Coverage and Claims.    89

Sec. 12.6.    Participation in State Statutory Programs Related to Employment.    93

Sec. 12.7.    Emergency Services Accessibility.    95

Sec. 12.8.    Alcoholic Beverage Service.    95

Sec. 12.9.    Possession of Firearms.    95

Sec. 12.10.    Labor Relations.    95

Sec. 13.0.    Dispute Resolution Provisions.    96

Sec. 13.1.    Voluntary Resolution; Court Resolution.    96

Sec. 13.2.    Arbitration Rules for the Tribe and the State.    97

Sec. 13.3.    No Waiver or Preclusion of Other Means of Dispute Resolution.    98

Sec. 13.4.    Limited Waiver of Sovereign Immunity.    98

Sec. 14.0.    Effective Date and Term of Compact.    99

Sec. 14.1.    Effective Date.    99

Sec. 14.2.    Term of Compact; Termination.    99

Sec. 15.0.    Amendments; Renegotiations.    100

Sec. 15.1.    Amendment by Agreement.    100

| Sec. 15.2. | Negotiations for a New Compact. | 100 |
| Sec. 15.3 | Requests to Amend or to Negotiate a New Compact. | 101 |
| Sec. 15.4 | Applicability and Enforceability of Land Use Restrictions | 101 |
| Sec. 16.0. | Notices. | 102 |
| Sec. 17.0. | Changes to IGRA. | 102 |
| Sec. 18.0. | Miscellaneous. | 102 |
| Sec. 18.1. | Third Party Beneficiaries. | 102 |
| Sec. 18.2. | Complete Agreement. | 102 |
| Sec. 18.3. | Construction. | 102 |
| Sec. 18.4. | Successor Provisions. | 103 |
| Sec. 18.5. | Ordinances and Regulations. | 103 |
| Sec. 18.6. | Calculation of Time. | 103 |
| Sec. 18.7. | Force Majeure. | 103 |
| Sec. 18.8. | Not a Model Compact. | 104 |
| Sec. 18.9. | Representations. | 104 |

APPENDICES

| A. | Legal Description of Wilton Rancheria's Trust Land | A-1 |
| B. | Off-Reservation Environmental Impact Analysis Checklist | B-1 |
| C. | Tribal Labor Relations Ordinance | C-1 |

# TRIBAL-STATE COMPACT
# BETWEEN THE STATE OF CALIFORNIA
# AND WILTON RANCHERIA

Wilton Rancheria (Tribe), a federally recognized Indian tribe listed in the Federal Register, and the State of California (State) enter into this tribal-state class III gaming compact pursuant to the Indian Gaming Regulatory Act of 1988 (IGRA).

## PREAMBLE

**WHEREAS**, Wilton Rancheria is a federally-recognized Indian Tribe located within the geographical boundaries of the County of Sacramento consisting of over 750 tribal members; and

**WHEREAS**, in 1927, the United States acquired land in trust for the Tribe near the Town of Wilton in Sacramento County and formally established a reservation there, known as the Me-Wuk Indian Community of the Wilton Rancheria, on which tribal members lived as a community despite great adversity; and

**WHEREAS**, in 1958, as part of the federal policy designed to assimilate the nation's Indians, the United States Congress enacted the Rancheria Act, P.L. 85-671, authorizing the termination of federal trust responsibilities to forty-one (41) California Indian tribes, including the Wilton Rancheria tribe; and

**WHEREAS**, the Tribe was restored to its federal recognition pursuant to a court approved Stipulation for Entry of Judgment on June 8, 2009. *Wilton Miwok Rancheria and Dorothy Andrews v Salazar* (C-07-02681) and *Me-Wuk Indian Community of the Wilton Rancheria v. Salazar* (C-07-05706) (N.D. Calif., June 8, 2009); and

**WHEREAS**, in June of 2011, the City of Elk Grove, the County of Sacramento, and the Tribe entered into a Memorandum of Understanding (2011 Agreement) under which the Tribe is to consult with the City and County as to any land to be taken into trust that is within the City and/or County, and to negotiate with the City and County for mitigation of off-site impacts concerning the development of such land; and

**WHEREAS**, under the 2011 Agreement, the City of Elk Grove, the County of Sacramento, and the Tribe established a process to determine and enforce mitigation measures for proposed off-trust tribal land environmental, social and

economic impacts and to provide a framework for future agreements for development of specific projects on lands to be taken into trust for the Tribe; and

**WHEREAS**, the Tribe has entered into a Memorandum of Understanding and Intergovernmental Agreement dated June 14, 2016 with the County of Sacramento (Sacramento County MOU) and has committed to pay over two million four hundred thousand dollars ($2,400,000) annually to the County, providing a substantial benefit to the local community for social services, roadway improvements, and community benefits; and

**WHEREAS**, the Tribe has entered into a Memorandum of Understanding dated September 29, 2016 with the City of Elk Grove (Elk Grove MOU) and has committed to pay over fourteen million five hundred thousand dollars ($14,500,000) in one-time payments to the City and five million dollars ($5,000,000) annually to the City, providing a substantial benefit to the local community for Police services, roadway maintenance and improvements, local schools, non-profits, and community benefits; and

**WHEREAS**, the State understands that the Tribe has spent considerable resources and incurred significant pre-development costs in connection with efforts to develop its casino and hotel project, and otherwise transition from being a tribe receiving Revenue Sharing Trust Fund monies to ultimately generating revenue to provide essential programs for tribal members, making investments in the local community and contributing to the Revenue Sharing Trust Fund; and

**WHEREAS**, the State recognizes the need for the Tribe to operate a Gaming Facility capable of generating sufficient revenue to service the debt associated with the high predevelopment, construction and litigation costs of its casino and hotel project; and

**WHEREAS**, the construction of the casino and hotel project by the Tribe, while benefiting the California economy and the economies of the surrounding communities, will result in approximately six hundred million dollars ($600,000,000) in tribal debt that in turn will reduce the income available to the Tribe for a number of years; and

**WHEREAS**, the Tribe is committed to improving the environment, education status, and the health, safety and general welfare of its members and local residents; and

**WHEREAS**, the State and the Tribe recognize that the exclusive rights that the Tribe will enjoy under this Tribal-State Compact Between the State of California

2

and Wilton Rancheria (Compact) will create a unique opportunity for the Tribe to operate a Gaming Facility in an economic environment free of competition from the operation of slot machines and banked card games on non-Indian lands in California and that this unique economic environment is of great value to the Tribe; and

**WHEREAS**, in consideration of the exclusive rights enjoyed by the Tribe to engage in the Gaming Activities and to operate the number of Gaming Devices specified herein, and the other meaningful concessions offered by the State in good faith negotiations, and pursuant to IGRA, the Tribe reaffirms its commitment, inter alia, to provide to the State, on a sovereign-to-sovereign basis, and to local jurisdictions, fair cost reimbursement and mitigation from revenues from the Gaming Devices operated pursuant to this Compact; and

**WHEREAS**, the Tribe and the State share an interest in mitigating the off-reservation impacts of the Gaming Facility, affording meaningful consumer and employee protections in connection with the operations of the Gaming Facility, fairly regulating the Gaming Activities conducted at the Gaming Facility, and fostering a good neighbor relationship; and

**WHEREAS**, the Tribe and the State share a joint sovereign interest in ensuring that Gaming Activities are free from criminal and other undesirable elements; and

**WHEREAS**, this Compact will afford the Tribe primary responsibility over the regulation of its Gaming Facility and will enhance the Tribe's economic development and self-sufficiency; and

**WHEREAS**, the State and the Tribe have therefore concluded that this Compact protects the interests of the Tribe and its members, the surrounding community, and the California public, and will promote and secure long-term stability, mutual respect, and mutual benefits; and

**WHEREAS**, the State and the Tribe agree that all terms of this Tribal-State Gaming Compact are intended to be binding and enforceable.

**NOW, THEREFORE**, the Tribe and the State agree as set forth herein:

meaning of IGRA or lands otherwise held in trust for the Tribe by the United States, and "tribal members" refers to the enrolled members of the Tribe.

(e)    As a matter of comity, the Tribe shall, with respect to the earnings of any person employed at the Gaming Operation or Gaming Facility, comply with all earnings withholding orders for support of a child, or spouse or former spouse, and all other orders by which the earnings of an employee are required to be withheld by an employer pursuant to chapter 5 (commencing with section 706.010) of division 1 of title 9 of part 2 of the California Code of Civil Procedure, and with all earnings assignment orders for support made pursuant to chapter 8 (commencing with section 5200) of part 5 of division 9 of the California Family Code or section 3088 of the California Probate Code.

### Sec. 12.7.  Emergency Services Accessibility.

The Tribe shall make reasonable provisions for adequate emergency fire, medical, and related relief and disaster services for patrons and employees of the Gaming Facility.

### Sec. 12.8.  Alcoholic Beverage Service.

Purchase, sale, and service of alcoholic beverages shall be subject to state law.

### Sec. 12.9.  Possession of Firearms.

The possession of firearms by any person in the Gaming Facility is prohibited at all times, except for federal, state, or local law enforcement personnel, or tribal law enforcement or security personnel authorized by tribal law and federal or state law to possess firearms at the Gaming Facility.

### Sec. 12.10.  Labor Relations.

The Gaming Activities authorized by this Compact may only commence after the Tribe has adopted an ordinance identical to the Tribal Labor Relations Ordinance attached hereto as Appendix C, and the Gaming Activities may only continue as long as the Tribe maintains the ordinance.  The Tribe shall provide written notice to the State that it has adopted the ordinance, along with a copy of

the ordinance, before commencing the Gaming Activities authorized by this Compact.

## SECTION 13.0.  DISPUTE RESOLUTION PROVISIONS.

### Sec. 13.1.  Voluntary Resolution; Court Resolution.

In recognition of the government-to-government relationship of the Tribe and the State, the parties shall make their best efforts to resolve disputes that arise under this Compact by good faith negotiations whenever possible.  Therefore, except for the right of either party to seek injunctive relief against the other when circumstances are deemed to require immediate relief, the Tribe and the State shall seek to resolve disputes by first meeting and conferring in good faith in order to foster a spirit of cooperation and efficiency in the administration and monitoring of the performance and compliance of the terms, provisions, and conditions of this Compact, as follows:

(a)   Either party shall give the other, as soon as possible after the event giving rise to the concern, a written notice setting forth the facts giving rise to the dispute and with specificity, the issues to be resolved.

(b)   The other party shall respond in writing to the facts and issues set forth in the notice within fifteen (15) days of receipt of the notice, unless both parties agree in writing to an extension of time.

(c)   The parties shall meet and confer in good faith by telephone or in person in an attempt to resolve the dispute through negotiation within thirty (30) days after receipt of the notice set forth in subdivision (a), unless both parties agree in writing to an extension of time.

(d)   If the dispute is not resolved to the satisfaction of the parties after the first meeting, either party may propose to have the dispute resolved by an arbitrator in accordance with this section, but neither party shall be required to agree to submit to arbitration.

(e)   Disputes that are not otherwise resolved by arbitration or other mutually agreed means may be resolved in the United States District Court in the judicial district where the Tribe's Gaming Facility is located, or if the federal court lacks jurisdiction, in any state court of competent jurisdiction in or over the County.  The disputes to be

(d)  Any bill from the Legislature to ratify this Compact shall not be signed by the Governor until the Tribe has provided the written proof required in subdivision (a) to the Governor.

IN WITNESS WHEREOF, the undersigned sign this Compact on behalf of the State of California and Wilton Rancheria.

STATE OF CALIFORNIA

By Edmund G. Brown Jr.
Governor of the State of California

Executed this 14th day of July, 2017, at Sacramento, California

WILTON RANCHERIA

By Raymond C. Hitchcock
Chairperson of Wilton Rancheria

Executed this 29th day of June, 2017, at Elk Grove, California

ATTEST:

Alex Padilla
Secretary of State, State of California

105

## Appendix C

## Tribal Labor Relations Ordinance

### Section 1:  Threshold of Applicability

(a)    If the Tribe employs 250 or more persons in a tribal casino and related facility, it shall adopt this Tribal Labor Relations Ordinance (TLRO or Ordinance). For purposes of this Ordinance, a "tribal casino" is one in which class III gaming is conducted pursuant to the tribal-state compact. A "related facility" is one for which the only significant purpose is to facilitate patronage of the class III gaming operations.

(b)    Upon the request of a labor union or organization which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, the Tribal Gaming Commission shall certify the number of employees in a tribal casino or other related facility as defined in subsection (a) of this Section 1. Either party may dispute the certification of the Tribal Gaming Commission to the Tribal Labor Panel, which is defined in Section 13 herein.

### Section 2:  Definition of Eligible Employees

(a)    The provisions of this ordinance shall apply to any person (hereinafter "Eligible Employee") who is employed within a tribal casino in which class III gaming is conducted pursuant to a tribal-state compact or other related facility, the only significant purpose of which is to facilitate patronage of the class III gaming operations, except for any of the following:

(1)    any employee who is a supervisor, defined as any individual having authority, in the interest of the Tribe and/or employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment;

(2)    any employee of the Tribal Gaming Commission;

(3)    any employee of the security or surveillance department, other than those who are responsible for the technical repair and maintenance of equipment;

(4)    any cash operations employee who is a "cage" employee or money counter; or

(5)    any dealer.

(b)    On [month] 1 of each year, the Tribal Gaming Commission shall certify the number of Eligible Employees employed by the Tribe to the administrator of the Tribal Labor Panel.

## Section 3:  Non-Interference with Regulatory or Security Activities

Operation of this Ordinance shall not interfere in any way with the duty of the Tribal Gaming Commission to regulate the gaming operation in accordance with the Tribe's National Indian Gaming Commission- approved gaming ordinance. Furthermore, the exercise of rights hereunder shall in no way interfere with the tribal casino's surveillance/security systems, or any other internal controls system designed to protect the integrity of the Tribe's gaming operations. The Tribal Gaming Commission is specifically excluded from the definition of Eligible Employees.

## Section 4:  Eligible Employees Free to Engage in or Refrain From Concerted Activity

Eligible Employees shall have the right to self-organization, to form, to join, or assist employee organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities.

**Section 5:  Unfair Labor Practices for the Tribe**

It shall be an unfair labor practice for the Tribe and/or employer or their agents:

(a)    to interfere with, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

(b)    to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it, but this does not restrict the Tribe and/or employer and a certified union from agreeing to union security or dues check off;

(c)    to discharge or otherwise discriminate against an Eligible Employee because s/he has filed charges or given testimony under this Ordinance; or

(d)    after certification of the labor organization pursuant to Section 10, to refuse to bargain collectively with the representatives of Eligible Employees.

**Section 6:  Unfair Labor Practices for the Union**

It shall be an unfair labor practice for a labor organization or its agents:

(a)    to interfere, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

(b)    to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a primary or secondary boycott or a refusal in the course of his employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce or other terms and conditions of employment. This section does not apply to Section 11;

(c)    to force or require the Tribe and/or employer to recognize or bargain with a particular labor organization as the representative of Eligible

Employees if another labor organization has been certified as the representative of such Eligible Employees under the provisions of this TLRO;

(d)     to refuse to bargain collectively with the Tribe and/or employer, provided it is the representative of Eligible Employees subject to the provisions herein; or

(e)     to attempt to influence the outcome of a tribal governmental election, provided, however, that this section does not apply to tribal members.

**Section 7:  Tribe and Union Right to Free Speech**

(a)     The Tribe's and union's expression of any view, argument or opinion or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of interference with, restraint, or coercion if such expression contains no threat of reprisal or force or promise of benefit.

(b)     The Tribe agrees that if a union first offers in writing that it and its local affiliates will comply with (b)(1) and (b)(2), the Tribe shall comply with the provisions of (c) and (d).

    (1)     For a period of three hundred sixty-five (365) days following delivery of a Notice of Intent to Organize (NOIO) to the Tribe:

        (A)     not engage in strikes, picketing, boycotts, attack websites, or other economic activity at or in relation to the tribal casino or related facility; and refrain from engaging in strike-related picketing on Indian lands as defined in 25 U.S.C. § 2703(4);

        (B)     not disparage the Tribe for purposes of organizing Eligible Employees;

        (C)     not attempt to influence the outcome of a tribal government election; and

        (D)     during the three hundred sixty-five (365) days after the Tribe received the NOIO, the Union must collect dated

and signed authorization cards pursuant to Section 10 herein and complete the secret ballot election also in Section 10 herein. Failure to complete the secret ballot election within the three hundred sixty five (365) days after the Tribe received the NOIO shall mean that the union shall not be permitted to deliver another NOIO for a period of two years (730 days).

(2)     Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13 herein.

(c)     Upon receipt of a NOIO, the Tribe shall:

(1)     within two (2) days provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought-after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses;

(2)     for period of three hundred sixty-five (365) days thereafter, Tribe will not do any action nor make any statement that directly or indirectly states or implies any opposition by the Tribe to the selection by such employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent. This includes refraining from making derisive comments about unions; publishing or posting pamphlets, fliers, letters, posters or any other communication which could reasonably be interpreted as criticizing the union or advising Eligible Employees to vote "no" against the union. However, the Tribe shall be free at all times to fully inform Eligible Employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe; and

(3)     resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 13 herein.

(d)     The union's offer in subsection (b) of this Section 7 shall be deemed an offer to accept the entirety of this Ordinance as a bilateral contract between the Tribe and the union, and the Tribe agrees to accept such offer. By entering into such bilateral contract, the union and Tribe mutually waive any right to file any form of action or proceeding with the National Labor Relations Board for the three hundred sixty-five (365)-day period following the NOIO.

(e)     The Tribe shall mandate that any entity responsible for all or part of the operation of the casino and related facility shall assume the obligations of the Tribe under this Ordinance. If at the time of the management contract, the Tribe recognizes a labor organization as the representative of its employees, certified pursuant to this Ordinance, the labor organization will provide the contractor, upon request, the election officer's certification which constitutes evidence that the labor organization has been determined to be the majority representative of the Tribe's Eligible Employees.

## Section 8:  Access to Eligible Employees

(a)     Access shall be granted to the union for the purposes of organizing Eligible Employees, provided that such organizing activity shall not interfere with patronage of the casino or related facility or with the normal work routine of the Eligible Employees and shall be done on non-work time in non-work areas that are designated as employee break rooms or locker rooms that are not open to the public. The Tribe may require the union and or union organizers to be subject to the same licensing rules applied to individuals or entities with similar levels of access to the casino or related facility, provided that such licensing shall not be unreasonable, discriminatory, or designed to impede access.

(b)     The Tribe, in its discretion, may also designate additional voluntary access to the Union in such areas as employee parking lots and non-casino facilities located on tribal lands.

(c)     In determining whether organizing activities potentially interfere with normal tribal work routines, the union's activities shall not be permitted if the Tribal Labor Panel determines that they compromise the operation of the casino:

C-6

(1)     security and surveillance systems throughout the casino, and reservation;

(2)     access limitations designed to ensure security;

(3)     internal controls designed to ensure security; or

(4)     other systems designed to protect the integrity of the Tribe's gaming operations, tribal property and/or safety of casino personnel, patrons, employees or tribal members, residents, guests or invitees.

(d)     The Tribe agrees to facilitate the dissemination of information from the union to Eligible Employees at the tribal casino by allowing posters, leaflets and other written materials to be posted in non-public employee break areas where the Tribe already posts announcements pertaining to Eligible Employees. Actual posting of such posters, notices, and other materials shall be by employees desiring to post such materials.

## Section 9:  Indian Preference Explicitly Permitted

Nothing herein shall preclude the Tribe from giving Indian preference in employment, promotion, seniority, lay-offs or retention to members of any federally recognized Indian tribe or shall in any way affect the Tribe's right to follow tribal law, ordinances, personnel policies or the Tribe's customs or traditions regarding Indian preference in employment, promotion, seniority, lay-offs or retention. Moreover, in the event of a conflict between tribal law, tribal ordinance or the Tribe's customs and traditions regarding Indian preference and this Ordinance, the tribal law, tribal ordinance, or the Tribe's customs and traditions shall govern.

## Section 10:  Secret Ballot Elections

(a)     The election officer shall be chosen within three (3) business days of notification by the labor organization to the Tribe of its intention to present authorization cards, and the same election officer shall preside thereafter for all proceedings under the request for recognition; provided, however, that if the election officer resigns, dies, or is

incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the  dispute resolution provisions herein. Dated and signed authorized cards from thirty percent (30%) or more of the Eligible Employees within the bargaining unit verified by the elections officer will result in a secret ballot election. The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards. If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election. The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

(b)    Upon the showing of interest to the election officer pursuant to subsection (a), within two (2) working days the Tribe shall provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses. Nothing herein shall preclude a Tribe from voluntarily providing an election eligibility list at an earlier point of a union organizing campaign with or without an election.  The election shall be conducted by the election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1. In the event either that a party refuses to enter into the consent election agreement or that the parties do not agree on the terms, the election officer shall issue an order that conforms to the terms of the form consent election agreement and shall have authority to decide any terms upon which the parties have not agreed, after giving the parties the opportunity to present their views in writing or in a telephonic conference call. The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 13(b)(2). All questions concerning representation of the Tribe and/or Eligible Employees by a labor organization shall be resolved by the election officer.

(c)    The election officer shall certify the labor organization as the exclusive collective bargaining representative of a unit of employees if the labor organization has received the support of a majority of the

Eligible Employees in a secret ballot election that the election officer
determines to have been conducted fairly. The numerical threshold for
certification is fifty percent (50%) of the Eligible Employees plus one.
If the election officer determines that the election was conducted
unfairly due to misconduct by the Tribe and/or employer or union, the
election officer may order a re-run election. If the election officer
determines that there was the commission of serious Unfair Labor
Practices by the Tribe, or in the event the union made the offer
provided for in Section 7(b) that the Tribe violated its obligations
under Section 7(c), that interferes with the election process and
precludes the holding of a fair  election, and the labor organization is
able to demonstrate that it had the support of a majority of the
employees in the unit at any time before or during the course of the
Tribe's misconduct, the election officer shall certify the labor
organization as the exclusive bargaining representative.

(d)     The Tribe or the union may appeal within five (5) days any decision
rendered after the date of the election by the election officer to a three
(3) member panel of the Tribal Labor Panel mutually chosen by both
parties, provided that the Tribal Labor Panel must issue a decision
within thirty (30) days after receiving the appeal.

(e)     A union which loses an election and has exhausted all dispute
remedies related to the election may not invoke any provisions of this
ordinance at that particular casino or related facility until one (1) year
after the election was lost.

## Section 11:  Collective Bargaining Impasse

(a)     Upon recognition, the Tribe and the union will negotiate in good faith
for a collective bargaining agreement covering bargaining unit
employees represented by the union.

(b)     Except where the union has made the written offer set forth in Section
7(b), if collective bargaining negotiations result in impasse, the union
shall have the right to strike. Strike-related picketing shall not be
conducted on Indian lands as defined in 25 U.S.C. § 2703(4).

(c)     Where the union makes the offer set forth in Section 7(b), if collective bargaining negotiations result in impasse, the matter shall be resolved as set forth in Section 13(c).

## Section 12:  Decertification of Bargaining Agent

(a)     The filing of a petition signed by thirty percent (30%) or more of the Eligible Employees in a bargaining unit seeking the decertification of a certified union, will result in a secret ballot election. The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards. If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election. The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

(b)     The election shall be conducted by an election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1. The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 13(b)(2). All questions concerning the decertification of the union shall be resolved by an election officer. The election officer shall be chosen upon notification to the Tribe and the union of the intent of the Eligible Employees to  present a decertification petition, and the same election officer shall preside thereafter for all proceedings under the request  for decertification; provided however that if the election officer resigns, dies or is incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the  dispute resolution provisions herein.

(c)     The election officer shall order the labor organization decertified as the exclusive collective bargaining representative if a majority of the Eligible Employees support decertification of the labor organization in a secret ballot election that the election officer determines to have been conducted fairly. The numerical threshold for decertification is fifty percent (50%) of the Eligible Employees plus one (1). If the election officer determines that the election was conducted unfairly

due to misconduct by the Tribe and/or employer or the union the election officer may order a re-run election or dismiss the decertification petition.

(d)     A decertification proceeding may not begin until one (1) year after the certification of a labor union if there is no collective bargaining agreement. Where there is a collective bargaining agreement, a decertification petition may only be filed no more than ninety (90) days and no less than sixty (60) days prior to the expiration of a collective bargaining agreement. A decertification petition may be filed any time after the expiration of a collective bargaining agreement.

(e)     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel chosen in accordance with Section 13(c), provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

## Section 13:  Binding Dispute Resolution Mechanism

(a)     All issues shall be resolved exclusively through the binding dispute resolution mechanisms herein.

(b)     The method of binding dispute resolution shall be a resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the parties which panel shall serve all tribes that have adopted this ordinance. The Tribal Labor Panel shall have authority to hire staff and take other actions necessary to conduct elections, determine units, determine scope of negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all other activities needed to fulfill its obligations under this Ordinance.

(1)     Each member of the Tribal Labor Panel shall have relevant experience in federal labor law and/or federal Indian law with preference given to those with experience in both. Names of individuals may be provided by such sources as, but not limited to, Indian Dispute Services, Federal Mediation and Conciliation Service, and the American Academy of Arbitrators.

(2)     Unless either party objects, one (1) arbitrator from the Tribal Labor Panel will render a binding decision on the dispute under the Ordinance. If either party objects, the dispute will be decided by a three (3)-member panel, unless arbitrator scheduling conflicts prevent the arbitration from occurring within thirty (30) days of selection of the arbitrators, in which case a single arbitrator shall render a decision. If one (1) arbitrator will be rendering a decision, five (5) Tribal Labor Panel names shall be submitted to the parties and each party may strike no more than two (2) names. If the dispute will be decided by a three (3)-member panel, seven (7) Tribal Labor Panel names will be submitted and each party can strike no more than two (2) names. A coin toss shall determine which party may strike the first name. The arbitrator will generally follow the American Arbitration Association's procedural rules relating to labor dispute resolution. The arbitrator must render a written, binding decision that complies in all respects with the provisions of this Ordinance within thirty (30) days after a hearing.

(c)    (1)     Upon certification of a union in accordance with Section 10 of this Ordinance, the Tribe and union shall negotiate for a period of ninety (90) days after certification. If, at the conclusion of the ninety (90)-day period, no collective bargaining agreement is reached and either the union and/or the Tribe believes negotiations are at an impasse, at the request of either party, the matter shall be submitted to mediation with the Federal Mediation and Conciliation Service. The costs of mediation and conciliation shall be borne equally by the parties.

(2)     Upon appointment, the mediator shall immediately schedule meetings at a time and location reasonably accessible to the parties. Mediation shall proceed for a period of thirty (30) days. Upon expiration of the thirty (30)-day period, if the parties do not resolve the issues to their mutual satisfaction, the mediator shall certify that the mediation process has been exhausted. Upon mutual agreement of the parties, the mediator may extend the mediation period.

(3)  Within twenty-one (21) days after the conclusion of mediation, the mediator shall file a report that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process. With respect to any issues in dispute between the parties, the report shall include the basis for the mediator's determination. The mediator's determination shall be supported by the record.

(d)  In resolving the issues in dispute, the mediator may consider those factors commonly considered in similar proceedings.

(e)  Either party may seek a motion to compel arbitration or a motion to confirm or vacate an arbitration award, under this Section 13, in the appropriate state superior court, unless a bilateral contract has been created in accordance with Section 7, in which case either party may proceed in federal court. The Tribe agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming or vacating an arbitration award issued pursuant to the Ordinance in the appropriate state superior court or in federal court. The parties are free to put at issue whether or not the arbitration award exceeds the authority of the Tribal Labor Panel.

Attachment 1

CONSENT ELECTION AGREEMENT PROCEDURES

Pursuant to the Tribal Labor Relations Ordinance adopted pursuant to section 12.10 of the compact, the undersigned parties hereby agree as follows:

1.      Jurisdiction. Tribe is a federally recognized Indian tribal government subject to the Ordinance; and each employee organization named on the ballot is an employee organization within the meaning of the Ordinance; and the employees described in the voting unit are Eligible Employees within the meaning of the Ordinance.

2.      Election.  An election by secret ballot shall be held under the supervision of the elections officer among the Eligible Employees as defined in Section 2 of the Ordinance of the Tribe named above, and in the manner described below, to determine which employee organization, if any, shall be certified to represent such employees pursuant to the Ordinance.

3.      Voter Eligibility.  Unless otherwise indicated below, the eligible voters shall be all Eligible Employees who were employed on the eligibility cutoff date indicated below, and who are still employed on the date they cast their ballots in the election, i.e., the date the voted ballot is received by the elections officer. Eligible Employees who are ill, on vacation, on leave of absence or sabbatical, temporarily laid off, and employees who are in the military service of the United States shall be eligible to vote.

4.      Voter Lists.  The Tribe shall electronically file with the elections officer a list of eligible voters within two (2) business days after receipt of a Notice of Election.

5.      Notice of Election.  The elections officer shall serve Notices of Election on the Tribe and on each party to the election. The Notice shall contain a sample ballot, a description of the voting unit and information regarding the balloting process. Upon receipt, the Tribe shall post such Notice of Election conspicuously on all employee bulletin boards in each facility of the employer in which members of the voting unit are employed.  Once a Notice of Election is posted, where the union has made the written offer set forth in Section 7(b) of the Tribal Labor Relations Ordinance, the Tribe shall continue to refrain from

publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises employees to vote "no" against the union. The Tribe shall be free at all times to fully inform employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe.

6.     Challenges.  The elections officer or an authorized agent of any party to the election may challenge, for good cause, the eligibility of a voter. Any challenges shall be made prior to the tally of the ballots.

7.     Tally of Ballots.  At the time and place indicated below, ballots shall be co-mingled and tabulated by the elections officer. Each party shall be allowed to station an authorized agent at the ballot count to verify the tally of ballots. At the conclusion of the counting, the elections officer shall serve a Tally of Ballots on each party.

8.     Objections and Post-election Procedures.  Objections to the conduct of the election may be filed with the elections officer within five (5) calendar days following the service of the Tally of Ballots. Service and proof of service is required.

9.     Runoff Election.  In the event a runoff election is necessary, it shall be conducted at the direction of the elections officer.

10.     Wording on Ballot.  The choices on the ballot shall appear in the wording and order enumerated below.

> FIRST:     [***]
> SECOND:   [***]
> THIRD:     [***]

11.     Cutoff Date for Voter Eligibility:  [***]

12.     Description of the Balloting Process.  A secret ballot election will take place within thirty (30) days after delivery of the voter list referenced in paragraph 4. The employer will determine the location or locations of the polling places for the election. There must be at least one (1) neutral location (such as a high school, senior center, or similar facility) which is not within the gaming facility and employees must also be afforded the option of voting by mail through procedures established by the elections officer.  Such procedures must include provisions that

provide meaningful protection for each employee's ability to make an informed and voluntary individual choice on the issue of whether to accept or reject a union. Such procedures must also ensure that neither employer nor union representatives shall observe employees personally marking, signing, and placing their ballot in the envelope.  Only voters, designated observers and the election officer or supporting staff can be present in the polling area. Neither employer nor union representatives may campaign in or near the polling area. If the election officer or supporting staff questions an employee's eligibility to vote in the election, the ballot will be placed in a sealed envelope until eligibility is determined. The box will be opened under the supervision of the election officer when voting is finished. Ballots submitted by mail must be received by the elections officer no later than the day of the election in order to be counted in the official tally of ballots.

13.    Voter List Format and Filing Deadline:  Not later than two (2) business days after receipt of the Notice of Election, the Tribe shall file with the elections officer, at [**address**], an alphabetical list of all eligible voters including their job titles, work locations and home addresses.

Copies of the list shall be served concurrently on the designated representative for the [***]; proof of service must be concurrently filed with elections officer.

In addition, the Tribe shall submit to the elections officer on or before [***], by electronic mail, a copy of the voter list in an Excel spreadsheet format, with columns labeled as follows: First Name, Last Name, Street Address, City, State, and Zip Code. Work locations and job titles need not be included in the electronic file. The file shall be sent to [***].

14.    Notices of Election:  Shall be posted by the Tribe no later than [***].

15.    Date, Time and Location of Counting of Ballots:  Beginning at [**time**] on [**date**], at the [**address**].

16.    Each signatory to this Agreement hereby declares under penalty of perjury that s/he is a duly authorized agent empowered to enter into this Consent Election Agreement.

| (Name of Party) |
| --- |
| By |
| (Title) (Date) |

| (Name of Party) |
| --- |
| By |
| (Title) (Date) |

| (Name of Party) |
| --- |
| By |
| (Title) (Date) |

| (Name of Party) |
| --- |
| By |
| (Title) (Date) |

Date approved: _____

[**Author**]
Elections Officer

EXHIBIT "2"

# WILTON RANCHERIA CODE
## TITLE 7 – LABOR CODE
## CHAPTER 3 – TRIBAL LABOR RELATIONS ORDINANCE OF 2019

### CITE AS: 7 WRC § 3-101, et seq.

### ENACTED: APRIL 18, 2019

## ARTICLE I
## GENERAL

**SECTION 3-101     TITLE**

This Ordinance shall be titled the Tribal Labor Relations Ordinance of 2019 and shall be codified as Chapter 3 of the Tribe's Labor Code.

**SECTION 3-102     AUTHORITY**

A.     Article VI, Section 2 of the Constitution of Wilton Rancheria ("Constitution") authorizes the Tribal Council to make the Tribe's laws.

B.     Article VI, Section 2(a) of the Constitution grants the Tribal Council the power to make all laws, including resolutions, codes, and statutes.

C.     Article VI, Section 2(c) of the Constitution grants the Tribal Council the power to pass laws regulating the Tribe's elections, enrollment, employment, and all other matters so long as those laws are consistent with the Constitution.

**SECTION 3-103     BACKGROUND**

This Ordinance governs the rights, responsibilities and limitations of any labor union or organization that desires to organize employees of the Tribe's class III casino or related facilities that facilitate patronage of the Tribe's class III gaming operations.  It is enacted in accordance with Section 12.10 of the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, effective January 22, 2018, which provides that the gaming activities authorized by the compact may only commence after the Tribe has adopted an ordinance identical to the Tribal Labor Relations Ordinance attached to the compact, and the gaming activities may only continue as long as the Tribe maintains the ordinance.  Article II of this Ordinance is identical to the ordinance attached to the Tribe's January 22, 2018 compact.

**SECTION 3-104     SCOPE**

This Ordinance shall be narrowly construed to apply to Eligible Employees to the extent the Ordinance provisions are lawfully required by an effective tribal-state gaming compact between the Tribe and the State of California.

**SECTION 3-105        DEFINITIONS**

A.        "Eligible Employee" has the meaning given to it in Section 3-202 of this Ordinance.

B.        "Ordinance" means this Tribal Labor Relations Ordinance of 2019.

C.        "Tribe" means the Wilton Rancheria, a federally recognized Indian tribe.

**ARTICLE II**
**APPLICABILITY, RIGHTS, DUTIES, DISPUTE RESOLUTION**

**SECTION 3-201        THRESHOLD OF APPLICABILITY**

A.        This Ordinance shall apply only if the Tribe employs 250 or more persons in a tribal casino and related facility.  For purposes of this Ordinance, a "tribal casino" is one in which class III gaming is conducted pursuant to the tribal-state compact.  A "related facility" is one for which the only significant purpose is to facilitate patronage of the class III gaming operations.

B.        Upon the request of a labor union or organization which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, the Tribal Gaming Commission shall certify the number of employees in a tribal casino or other related facility as defined in subsection (A) of this Section 3-201.  Either party may dispute the certification of the Tribal Gaming Commission to the Tribal Labor Panel, which is defined in Section 3-213 herein.

**SECTION 3-202        DEFINITION OF ELIGIBLE EMPLOYEES**

A.        The provisions of this Ordinance shall apply to any person (hereinafter "Eligible Employee") who is employed within a tribal casino in which class III gaming is conducted pursuant to a tribal-state compact or other related facility, the only significant purpose of which is to facilitate patronage of the class III gaming operations, except for any of the following:

        1.        any employee who is a supervisor, defined as any individual having authority, in the interest of the Tribe and/or employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment;

        2.        any employee of the Tribal Gaming Commission;

        3.        any employee of the security or surveillance department, other than those who are responsible for the technical repair and maintenance of equipment;

        4.        any cash operations employee who is a "cage" employee or money counter; or

        5.        any dealer.

2

B.      On July 1 of each year, the Tribal Gaming Commission shall certify the number of Eligible Employees employed by the Tribe to the administrator of the Tribal Labor Panel.

### SECTION 3-203      NON-INTERFERENCE WITH REGULATORY OR SECURITY ACTIVITIES

Operation of this Ordinance shall not interfere in any way with the duty of the Tribal Gaming Commission to regulate the gaming operation in accordance with the Tribe's National Indian Gaming Commission-approved gaming ordinance. Furthermore, the exercise of rights hereunder shall in no way interfere with the tribal casino's surveillance/security systems, or any other internal controls system designed to protect the integrity of the Tribe's gaming operations. The Tribal Gaming Commission is specifically excluded from the definition of Eligible Employees.

### SECTION 3-204      ELIGIBLE EMPLOYEES FREE TO ENGAGE IN OR REFRAIN FROM CONCERTED ACTIVITY

Eligible Employees shall have the right to self-organization, to form, to join, or assist employee organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities.

### SECTION 3-205      UNFAIR LABOR PRACTICES FOR THE TRIBE

It shall be an unfair labor practice for the Tribe and/or employer or their agents:

A.      To interfere with, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

B.      To dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it, but this does not restrict the Tribe and/or employer and a certified union from agreeing to union security or dues check off;

C.      To discharge or otherwise discriminate against an Eligible Employee because s/he has filed charges or given testimony under this Ordinance; or

D.      After certification of the labor organization pursuant to Section 3-210, to refuse to bargain collectively with the representatives of Eligible Employees.

### SECTION 3-206      UNFAIR LABOR PRACTICES FOR THE UNION

It shall be an unfair labor practice for a labor organization or its agents:

A.      To interfere, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

B.      To engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a primary or secondary boycott or a refusal in the course of his employment to use, manufacture, process,

transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce or other terms and conditions of employment.  This section does not apply to Section 3-211;

C.      To force or require the Tribe and/or employer to recognize or bargain with a particular labor organization as the representative of Eligible Employees if another labor organization has been certified as the representative of such Eligible Employees under the provisions of this Ordinance;

D.      To refuse to bargain collectively with the Tribe and/or employer, provided it is the representative of Eligible Employees subject to the provisions herein; or

E.      To attempt to influence the outcome of a tribal governmental election, provided, however, that this section does not apply to tribal members.

**<u>SECTION 3-207</u>          <u>TRIBE AND UNION RIGHT TO FREE SPEECH</u>**

A.      The Tribe's and union's expression of any view, argument or opinion or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of interference with, restraint, or coercion if such expression contains no threat of reprisal or force or promise of benefit.

B.      The Tribe agrees that if a union first offers in writing that it and its local affiliates will comply with (B)(1) and (B)(2), the Tribe shall comply with the provisions of (C) and (D).

    1.      For a period of three hundred sixty-five (365) days following delivery of a Notice of Intent to Organize (NOIO) to the Tribe:

        a.      Not engage in strikes, picketing, boycotts, attack websites, or other economic activity at or in relation to the tribal casino or related facility; and refrain from engaging in strike-related picketing on Indian lands as defined in 25 U.S.C. § 2703(4);

        b.      Not disparage the Tribe for purposes of organizing Eligible Employees;

        c.      Not attempt to influence the outcome of a tribal government election; and

        d.      During the three hundred sixty-five (365) days after the Tribe received the NOIO, the Union must collect dated and signed authorization cards pursuant to Section 3-210 herein and complete the secret ballot election also in Section 3-210 herein.  Failure to complete the secret ballot election within the three hundred sixty five (365) days after the Tribe received the NOIO shall mean that the union shall not be permitted to deliver another NOIO for a period of two years (730 days).

    2.      Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 3-213 herein.

4

C.     Upon receipt of a NOIO, the Tribe shall:

1.     Within two (2) days provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought-after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses;

2.     For period of three hundred sixty-five (365) days thereafter, Tribe will not do any action nor make any statement that directly or indirectly states or implies any opposition by the Tribe to the selection by such employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.  This includes refraining from making derisive comments about unions; publishing or posting pamphlets, fliers, letters, posters or any other communication which could reasonably be interpreted as criticizing the union or advising Eligible Employees to vote "no" against the union.  However, the Tribe shall be free at all times to fully inform Eligible Employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe; and

3.     Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 3-213 herein.

D.     The union's offer in subsection (B) of this Section 3-207 shall be deemed an offer to accept the entirety of this Ordinance as a bilateral contract between the Tribe and the union, and the Tribe agrees to accept such offer.  By entering into such bilateral contract, the union and Tribe mutually waive any right to file any form of action or proceeding with the National Labor Relations Board for the three hundred sixty-five (365)-day period following the NOIO.

E.     The Tribe shall mandate that any entity responsible for all or part of the operation of the casino and related facility shall assume the obligations of the Tribe under this Ordinance.  If at the time of the management contract, the Tribe recognizes a labor organization as the representative of its employees, certified pursuant to this Ordinance, the labor organization will provide the contractor, upon request, the election officer's certification which constitutes evidence that the labor organization has been determined to be the majority representative of the Tribe's Eligible Employees.

## SECTION 3-208     ACCESS TO ELIGIBLE EMPLOYEES

A.     Access shall be granted to the union for the purposes of organizing Eligible Employees, provided that such organizing activity shall not interfere with patronage of the casino or related facility or with the normal work routine of the Eligible Employees and shall be done on non-work time in non-work areas that are designated as employee break rooms or locker rooms that are not open to the public.  The Tribe may require the union and or union organizers to be subject to the same licensing rules applied to individuals or entities with similar levels of access to the casino or related facility, provided that such licensing shall not be unreasonable, discriminatory, or designed to impede access.

B.     The Tribe, in its discretion, may also designate additional voluntary access to the Union in such areas as employee parking lots and non-casino facilities located on tribal lands.

C.      In determining whether organizing activities potentially interfere with normal tribal work routines, the union's activities shall not be permitted if the Tribal Labor Panel determines that they compromise the operation of the casino:

      1.      Security and surveillance systems throughout the casino, and reservation;

      2.      Access limitations designed to ensure security;

      3.      Internal controls designed to ensure security; or

      4.      Other systems designed to protect the integrity of the Tribe's gaming operations, tribal property and/or safety of casino personnel, patrons, employees or tribal members, residents, guests or invitees.

D.      The Tribe agrees to facilitate the dissemination of information from the union to Eligible Employees at the tribal casino by allowing posters, leaflets and other written materials to be posted in non-public employee break areas where the Tribe already posts announcements pertaining to Eligible Employees.  Actual posting of such posters, notices, and other materials shall be by employees desiring to post such materials.

## SECTION 3-209      INDIAN PREFERENCE EXPLICITLY PERMITTED

Nothing herein shall preclude the Tribe from giving Indian preference in employment, promotion, seniority, lay-offs or retention to members of any federally recognized Indian tribe or shall in any way affect the Tribe's right to follow tribal law, ordinances, personnel policies or the Tribe's customs or traditions regarding Indian preference in employment, promotion, seniority, lay-offs or retention.  Moreover, in the event of a conflict between tribal law, tribal ordinance or the Tribe's customs and traditions regarding Indian preference and this Ordinance, the tribal law, tribal ordinance, or the Tribe's customs and traditions shall govern.

## SECTION 3-210      SECRET BALLOT ELECTIONS

A.      The election officer shall be chosen within three (3) business days of notification by the labor organization to the Tribe of its intention to present authorization cards, and the same election officer shall preside thereafter for all proceedings under the request for recognition; provided, however, that if the election officer resigns, dies, or is incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the dispute resolution provisions herein.  Dated and signed authorized cards from thirty percent (30%) or more of the Eligible Employees within the bargaining unit verified by the elections officer will result in a secret ballot election.  The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards.  If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election.  The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

B.      Upon the showing of interest to the election officer pursuant to subsection (A), within two (2) working days the Tribe shall provide to the union an election eligibility list containing

the full first and last names of the Eligible Employees within the sought after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses. Nothing herein shall preclude a Tribe from voluntarily providing an election eligibility list at an earlier point of a union organizing campaign with or without an election.  The election shall be conducted by the election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1.  In the event either that a party refuses to enter into the consent election agreement or that the parties do not agree on the terms, the election officer shall issue an order that conforms to the terms of the form consent election agreement and shall have authority to decide any terms upon which the parties have not agreed, after giving the parties the opportunity to present their views in writing or in a telephonic conference call.  The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 3-213(B)(2).  All questions concerning representation of the Tribe and/or Eligible Employees by a labor organization shall be resolved by the election officer.

C.      The election officer shall certify the labor organization as the exclusive collective bargaining representative of a unit of employees if the labor organization has received the support of a majority of the Eligible Employees in a secret ballot election that the election officer determines to have been conducted fairly.  The numerical threshold for certification is fifty percent (50%) of the Eligible Employees plus one.  If the election officer determines that the election was conducted unfairly due to misconduct by the Tribe and/or employer or union, the election officer may order a re-run election.  If the election officer determines that there was the commission of serious Unfair Labor Practices by the Tribe, or in the event the union made the offer provided for in Section 3-207(B) that the Tribe violated its obligations under Section 3-207(C), that interferes with the election process and precludes the holding of a fair election, and the labor organization is able to demonstrate that it had the support of a majority of the employees in the unit at any time before or during the course of the Tribe's misconduct, the election officer shall certify the labor organization as the exclusive bargaining representative.

D.      The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel mutually chosen by both parties, provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

E.      A union which loses an election and has exhausted all dispute remedies related to the election may not invoke any provisions of this Ordinance at that particular casino or related facility until one (1) year after the election was lost.

## SECTION 3-211      COLLECTIVE BARGAINING IMPASSE

A.      Upon recognition, the Tribe and the union will negotiate in good faith for a collective bargaining agreement covering bargaining unit employees represented by the union.

B.      Except where the union has made the written offer set forth in Section 3-207(B), if collective bargaining negotiations result in impasse, the union shall have the right to strike. Strike-related picketing shall not be conducted on Indian lands as defined in 25 U.S.C. § 2703(4).

C.      Where the union makes the offer set forth in Section 3-207(B), if collective bargaining negotiations result in impasse, the matter shall be resolved as set forth in Section 3-213(C).

## SECTION 3-212      DECERTIFICATION OF BARGAINING AGENT

A.      The filing of a petition signed by thirty percent (30%) or more of the Eligible Employees in a bargaining unit seeking the decertification of a certified union, will result in a secret ballot election.  The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards.  If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election.  The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

B.      The election shall be conducted by an election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1.  The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 3-213(B)(2).  All questions concerning the decertification of the union shall be resolved by an election officer.  The election officer shall be chosen upon notification to the Tribe and the union of the intent of the Eligible Employees to present a decertification petition, and the same election officer shall preside thereafter for all proceedings under the request for decertification; provided however that if the election officer resigns, dies or is incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the dispute resolution provisions herein.

C.      The election officer shall order the labor organization decertified as the exclusive collective bargaining representative if a majority of the Eligible Employees support decertification of the labor organization in a secret ballot election that the election officer determines to have been conducted fairly.  The numerical threshold for decertification is fifty percent (50%) of the Eligible Employees plus one (1).  If the election officer determines that the election was conducted unfairly due to misconduct by the Tribe and/or employer or the union the election officer may order a re-run election or dismiss the decertification petition.

D.      A decertification proceeding may not begin until one (1) year after the certification of a labor union if there is no collective bargaining agreement.  Where there is a collective bargaining agreement, a decertification petition may only be filed no more than ninety (90) days and no less than sixty (60) days prior to the expiration of a collective bargaining agreement.   A decertification petition may be filed any time after the expiration of a collective bargaining agreement.

E.      The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel chosen in accordance with Section 3-213(C), provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

## SECTION 3-213        BINDING DISPUTE RESOLUTION MECHANISM

A.    All issues shall be resolved exclusively through the binding dispute resolution mechanisms herein.

B.    The method of binding dispute resolution shall be a resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the parties which panel shall serve all tribes that have adopted this Ordinance.  The Tribal Labor Panel shall have authority to hire staff and take other actions necessary to conduct elections, determine units, determine scope of negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all other activities needed to fulfill its obligations under this Ordinance.

    1.    Each member of the Tribal Labor Panel shall have relevant experience in federal labor law and/or federal Indian law with preference given to those with experience in both.  Names of individuals may be provided by such sources as, but not limited to, Indian Dispute Services, Federal Mediation and Conciliation Service, and the American Academy of Arbitrators.

    2.    Unless either party objects, one (1) arbitrator from the Tribal Labor Panel will render a binding decision on the dispute under the Ordinance.  If either party objects, the dispute will be decided by a three (3)-member panel, unless arbitrator scheduling conflicts prevent the arbitration from occurring within thirty (30) days of selection of the arbitrators, in which case a single arbitrator shall render a decision.  If one (1) arbitrator will be rendering a decision, five (5) Tribal Labor Panel names shall be submitted to the parties and each party may strike no more than two (2) names.  If the dispute will be decided by a three (3)-member panel, seven (7) Tribal Labor Panel names will be submitted and each party can strike no more than two (2) names.  A coin toss shall determine which party may strike the first name.  The arbitrator will generally follow the American Arbitration Association's procedural rules relating to labor dispute resolution.  The arbitrator must render a written, binding decision that complies in all respects with the provisions of this Ordinance within thirty (30) days after a hearing.

C.    1.    Upon certification of a union in accordance with Section 3-210 of this Ordinance, the Tribe and union shall negotiate for a period of ninety (90) days after certification.  If, at the conclusion of the ninety (90)-day period, no collective bargaining agreement is reached and either the union and/or the Tribe believes negotiations are at an impasse, at the request of either party, the matter shall be submitted to mediation with the Federal Mediation and Conciliation Service.  The costs of mediation and conciliation shall be borne equally by the parties.

    2.    Upon appointment, the mediator shall immediately schedule meetings at a time and location reasonably accessible to the parties.  Mediation shall proceed for a period of thirty (30) days.  Upon expiration of the thirty (30)-day period, if the parties do not resolve the issues to their mutual satisfaction, the mediator shall certify that the mediation process has been exhausted.  Upon mutual agreement of the parties, the mediator may extend the mediation period.

3.      Within twenty-one (21) days after the conclusion of mediation, the mediator shall file a report that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process.  With respect to any issues in dispute between the parties, the report shall include the basis for the mediator's determination.  The mediator's determination shall be supported by the record.

D.      In resolving the issues in dispute, the mediator may consider those factors commonly considered in similar proceedings.

E.      Either party may seek a motion to compel arbitration or a motion to confirm or vacate an arbitration award, under this Section 3-213, in the appropriate state superior court, unless a bilateral contract has been created in accordance with Section 3-207, in which case either party may proceed in federal court.  The Tribe agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming or vacating an arbitration award issued pursuant to the Ordinance in the appropriate state superior court or in federal court.  The parties are free to put at issue whether or not the arbitration award exceeds the authority of the Tribal Labor Panel.

---

Legislative History:

| | |
|---|---|
| 2/14/2019 | Submitted for public review by Tribal Council Resolution No. 2019-11 by vote of 7 for, 0 against, 0 abstaining. |
| 2/20/2019 | Thirty (30) day public review phase began. |
| 3/7/2019 | Public hearing held at Tribal Office. |
| 3/21/2019 | Thirty (30) day public review phase ended. |
| 3/28/2019 | Seven (7) day final review phase began. |
| 4/18/2019 | Tribal Council passed the Ordinance by Resolution No. 2019-23 by vote of 5 for, 0 against, 0 abstaining. |
| 4/18/2019 | Chairperson concurrence; the Ordinance is codified as Chapter 3 of the Labor Code. |

## **Attachment 1**

CONSENT ELECTION AGREEMENT PROCEDURES

      Pursuant to the Tribal Labor Relations Ordinance adopted pursuant to section 12.10 of the compact, the undersigned parties hereby agree as follows:

      1.     Jurisdiction.  Tribe is a federally recognized Indian tribal government subject to the Ordinance; and each employee organization named on the ballot is an employee organization within the meaning of the Ordinance; and the employees described in the voting unit are Eligible Employees within the meaning of the Ordinance.

      2.     Election.  An election by secret ballot shall be held under the supervision of the elections officer among the Eligible Employees as defined in Section 3-202 of the Ordinance of the Tribe named above, and in the manner described below, to determine which employee organization, if any, shall be certified to represent such employees pursuant to the Ordinance.

      3.     Voter Eligibility.  Unless otherwise indicated below, the eligible voters shall be all Eligible Employees who were employed on the eligibility cutoff date indicated below, and who are still employed on the date they cast their ballots in the election, i.e., the date the voted ballot is received by the elections officer. Eligible Employees who are ill, on vacation, on leave of absence or sabbatical, temporarily laid off, and employees who are in the military service of the United States shall be eligible to vote.

      4.     Voter Lists.  The Tribe shall electronically file with the elections officer a list of eligible voters within two (2) business days after receipt of a Notice of Election.

      5.     Notice of Election.  The elections officer shall serve Notices of Election on the Tribe and on each party to the election.  The Notice shall contain a sample ballot, a description of the voting unit and information regarding the balloting process.  Upon receipt, the Tribe shall post such Notice of Election conspicuously on all employee bulletin boards in each facility of the employer in which members of the voting unit are employed.  Once a Notice of Election is posted, where the union has made the written offer set forth in Section 3-207(B) of the Tribal Labor Relations Ordinance of 2019, the Tribe shall continue to refrain from publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises employees to vote "no" against the union.  The Tribe shall be free at all times to fully inform employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe.

      6.     Challenges.  The elections officer or an authorized agent of any party to the election may challenge, for good cause, the eligibility of a voter.  Any challenges shall be made prior to the tally of the ballots.

      7.     Tally of Ballots.  At the time and place indicated below, ballots shall be co-mingled and tabulated by the elections officer.  Each party shall be allowed to station an authorized agent at the ballot count to verify the tally of ballots.  At the conclusion of the counting, the elections officer shall serve a Tally of Ballots on each party.

8.      Objections and Post-election Procedures.  Objections to the conduct of the election may be filed with the elections officer within five (5) calendar days following the service of the Tally of Ballots.  Service and proof of service is required.

9.      Runoff Election.  In the event a runoff election is necessary, it shall be conducted at the direction of the elections officer.

10.     Wording on Ballot.  The choices on the ballot shall appear in the wording and order enumerated below.

FIRST:        [***]
SECOND:     [***]
THIRD:        [***]

11.     Cutoff Date for Voter Eligibility:  [***]

12.     Description of the Balloting Process.  A secret ballot election will take place within thirty (30) days after delivery of the voter list referenced in paragraph 4.  The employer will determine the location or locations of the polling places for the election.  There must be at least one (1) neutral location (such as a high school, senior center, or similar facility) which is not within the gaming facility and employees must also be afforded the option of voting by mail through procedures established by the elections officer.  Such procedures must include provisions that provide meaningful protection for each employee's ability to make an informed and voluntary individual choice on the issue of whether to accept or reject a union.  Such procedures must also ensure that neither employer nor union representatives shall observe employees personally marking, signing, and placing their ballot in the envelope.  Only voters, designated observers and the election officer or supporting staff can be present in the polling area.  Neither employer nor union representatives may campaign in or near the polling area.  If the election officer or supporting staff questions an employee's eligibility to vote in the election, the ballot will be placed in a sealed envelope until eligibility is determined.  The box will be opened under the supervision of the election officer when voting is finished.  Ballots submitted by mail must be received by the elections officer no later than the day of the election in order to be counted in the official tally of ballots.

13.     Voter List Format and Filing Deadline:  Not later than two (2) business days after receipt of the Notice of Election, the Tribe shall file with the elections officer, at [**address**], an alphabetical list of all eligible voters including their job titles, work locations and home addresses.

Copies of the list shall be served concurrently on the designated representative for the [***]; proof of service must be concurrently filed with elections officer.

In addition, the Tribe shall submit to the elections officer on or before [***], by electronic mail, a copy of the voter list in an Excel spreadsheet format, with columns labeled as follows:  First Name, Last Name, Street Address, City, State, and Zip Code.  Work locations and job titles need not be included in the electronic file.  The file shall be sent to [***].

14.     Notices of Election:  Shall be posted by the Tribe no later than [***].

A-2

15.     Date, Time and Location of Counting of Ballots:  Beginning at [**time**] on [**date**], at the [**address**].

16.     Each signatory to this Agreement hereby declares under penalty of perjury that s/he is a duly authorized agent empowered to enter into this Consent Election Agreement.

| (Name of Party) |
| --- |
| By |
| (Title)          (Date) |

| (Name of Party) |
| --- |
| By |
| (Title)          (Date) |

| (Name of Party) |
| --- |
| By |
| (Title)          (Date) |

| (Name of Party) |
| --- |
| By |
| (Title)          (Date) |

Date approved: _____

[**Author**]
Elections Officer

A-3