CARROLL & ASSOCIATES, P.C.
Sheila Lamb Carroll (SBN 142764)
Dacia J. Cenat (SBN 305161)
3600 American River Drive, Suite 205
Sacramento, CA 95864
Telephone: 916.488.5388
Facsimile: 916.488.5387
scarroll@thecarrollfirm.com
dcenat@thecarrollfirm.com

Attorneys for Defendant
WILTON RANCHERIA

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE,<br><br>        Plaintiff,<br><br>    v.<br><br>WILTON RANCHERIA,<br><br>        Defendant. | Case No. 2:23-cv-02767-KJM-DB<br><br>**WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR**<br><br>**DATE:**    January 26, 2024<br>**TIME**:     10:00 AM<br>**CTRM:**   3 (15th floor)<br>**JUDGE:**   Hon. Kimberly J. Mueller |

Carroll &
Associates, PC

0      Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION………………………………………………………………..1

II.   FACTUAL BACKGROUND………………………………………………….....3

    A.    Agreements And Laws Involving—And Applicable To—The Parties…………..3

        1.    The State And Tribe Sign A Compact, Containing A Model Tribal Labor Relations Ordinance………………………………………………..3

        2.    The Parties Enter Into A Memorandum Of Agreement, Incorporating The TLRO…………………………………………………………………4

        3.    The Compact Becomes Effective…………………………………………...5

        4.    The Tribe Enacts The TLRO……………………………………………….5

    B.    The Parties' Disagreement Over The Union Recognition Process………………..6

    C.    Arbitration Is Pending Before AAA……………………………………………..7

    D.    The Tribe's Counsel Met and Conferred With The Union's Counsel Regarding The Union's Defective Demand For Arbitration……………………...8

III.  LEGAL STANDARD……………………………………………………………..9

IV.   LEGAL ANALYSIS……………………………………………………………..9

    A.    The Court Should Grant The Tribe's Motion To Dismiss, Or Alternatively Deny The Instant Motion Based Upon Federal Rule Of Civil Procedure 12(b)(1)………………………………………………………………………..9

        1.    Arbitrator Brand's Decision Is A Condition Precedent To Any Further Arbitration……………………………………………………...9

        2.    Ripeness Limits The Power Of Federal Courts To Adjudicate Disputes……………………………………………………...12

        3.    The Union's Claim Demanding Arbitration Is Unripe, As No Substantial And Immediate Controversy Exists Or Is Otherwise Ripe For Review………………………………………………………13

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR

Carroll & Associates, PC

1        B.     The Court Should Grant The Tribe's Motion To Dismiss, Or

2                  Alternatively Deny The Instant Motion Based Upon Federal Rule

3                  Of Civil Procedure 12(b)(5) Based On Lack of Service…………………………16

4  V.     CONCLUSION…………………………………………………………………..17

Carroll &
Associates, PC

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

1

## TABLE OF AUTHORITIES

2 **Cases** **Page(s)**

3 *Abbott Labs. v. Gardner*,

4     387 U.S. 136, 148-49 (1967)……………………………………………………....1

5 *Ashcroft v. Iqbal*,

6     556 U.S. 662 (2009)………………………………………………………………9

7 *Aydin Corp. v. Union of India*,

8     940 F.2d 527 (9th Cir. 1991)……………………………………………………14

9 *Bell Atlantic Corp. v. Twombly*,

10     550 U.S. 544 (2007)………………………………………………………………9

11 *Brockmeyer v. May*,

12     383 F.3d 798, 801 (9th Cir. 2004)…………………………………………….9,16

13 *Cristo v. U.S. SEC*,

14     2020 U.S. Dist. LEXIS 127219, *12-18, 2020 WL 4040340 (S.D. Cal. July 17, 2020)...14

15 *Chandler v. State Farm Mut. Auto Ins. Co.*,

16     598 F.3d 1115, 1122–23 (9th Cir. 2010)…………………………………………...13

17 *Clinton v. Acequia, Inc.*,

18     94 F.3d 568, 572 (9th Cir. 1996)…………………………………………………...13

19 *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,

20     2021 U.S. Dist. LEXIS 243389, *16, 2021 WL 6049906 (N.D. Cal. 2021)…………..9,16

21 *Habliston v. FINRA Regulation, Inc.*,

22     2017 U.S. Dist. LEXIS 11691, 2017 WL 396580 (D.D.C. Jan. 27, 2017)……………....15

23 *Kerr-McGee Chemical Corporation v. United States Department of the Interior*,

24     709 F.2d 597, 600 (9th Cir. 1983)………………………………………………12

25 *Kokkonen v. Guardian Life Ins. Co.*, ……………………………………………….9

26     511 U.S. 375, 377 (1994)

27 *Leite v. Crane Co.*,

28     749 F.3d 1117, 1121 (9th Cir. 2014)……………………………………………9

*Murphy Bros. v. Michetti Pipe Stringing*,

    526 U.S. 344, 350 (1999)……………………………………………………....9

*Pacific Gas and Electric Co. v. State Energy Resources*,

    461 U.S. 190 (1983)………………………………………………………..12

*Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission*,

    659 F.2d 903. 910 (9th Cir. 1981)………………………………………….12

*Regional Rail Reorganization Act Cases*,

    419 U.S. 102, 140 (1974)…………………………………………………..12

*Richardson v. City and County of Honolulu*,

    124 F.3d 1150, 1160 (9th Cir. 1997)……………………………………….13

*State Farm Mut. Auto Ins. Co. v. Dole*,

    802 F.2d 474, 479 (D.C. Cir. 1986)……………………………………..12,13

*Thomas v. Union Carbide Agric. Prods. Co.*,

    473 U.S. 568, 580-81 (1985)……………………………………………….13


**Regulations and Rules**

Federal Practice and Procedure Section 3532 (1984)………………………………………….13

Federal Practice and Procedure section 3532 at 112 (2d ed. 1984)……………………………...13

Federal Rule of Civil Procedure 4…………………………………………………….9,16,17

Federal Rules of Civil Procedure 12(b)(1)………………………………………………..........9

Federal Rules of Civil Procedure 12(b)(5)………………………………………………….9,16

Federal Rule of Civil Procedure 12(h)(3)………………………………………………….1,9


**Other**

Constitution of Wilton Rancheria………………………………………………………….5

Memorandum of Agreement……………………………………………………………*passim*

Tribal Labor Relations Ordinance………………………………………………………..*passim*

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR

Carroll &
Associates, PC

# I.    INTRODUCTION

Defendant Wilton Rancheria, California ("the Tribe") hereby opposes UNITE HERE's ("the Union") Motion to Compel Arbitration and Selection of an Arbitrator ("Motion to Compel"), because the Court does not have subject-matter jurisdiction over the Tribe due to the Union's unripe claim demanding arbitration and because the Union did not properly serve the Tribe with its Complaint, Summons, or Motion to Compel.

The Tribe is a sovereign nation that subjects itself to Federal Court jurisdiction by a narrowly constructed waiver of sovereign immunity for the very limited purpose of compelling arbitration or confirming or vacating an award. The gravamen of the dispute is the Union's desire to unionize as quickly as possible by way of a one-step "card check"[1] process—instead of the two-step process set forth in the Tribe's Labor Code, which requires both a card check and secret ballot election, with set aside rights.[2] The Tribe cannot and will not waive these rights and respectfully notes that this Court does not have jurisdiction over a waiver of Tribal Law.

Ripeness is required for this court to exercise jurisdiction. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Accordingly, the Tribe requests that before the Court considers the Union's Motion to Compel, the Court first consider and rule upon the Tribe's Motion to Dismiss, given that this Court lacks subject-matter jurisdiction over the Tribe due to the Union's unripe claim demanding arbitration. If the Court grants the Tribe's Motion to Dismiss the Union's Complaint, the Union's instant Motion to Compel will be moot.

As set forth in the Tribe's Motion to Dismiss and herein, the Tribe and Union are *already* participating in arbitration before Arbitrator Norman Brand, who sits on the Tribal

---

[1] The parties use the phrase "card check" when referring to the card authorization process set forth in the Memorandum of Agreement and the Tribal Labor Relations Ordinance discussed herein.

[2] This Opposition focuses solely on the card check to provide clarity. Each and every issue that the Union seeks arbitration for, such as the dispute about access, fails for identical reasons. As explained in greater detail below, (i) the arbitration of each issue is contingent on a favorable award from Arbitrator Brand, and (ii) is presented in a Complaint that has not been properly served on the Tribe.

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR

Carroll & Associates, PC

1  Labor Panel administered by the American Arbitration Association ("AAA"). The Union has

2  represented to the Tribe that the arbitration that the Union is seeking to compel is to occur *after*

3  the arbitration that the Tribe and the Union are already participating in.[3] Declaration of Sheila

4  Carroll ("Carroll Decl."), ¶ 7; *see also* Pl.'s Compl., Exh. K-1-K-2, 89-90 of 90, ECF No. 1. The

5  issues that the Union requests this Court to compel the parties to arbitrate are undeniably

6  contingent upon a favorable ruling from Arbitrator Brand. The AAA arbitration is scheduled for

7  February 8, 2024, and the parties just had their initial joint conference with Arbitrator Brand on

8  December 15, 2023. Carroll Decl. ¶¶ 3, 18; *see also* Pl.'s Compl., Exh. K-1-K-2, 89 and 90 of

9  90, ECF No. 1. Until Arbitrator Brand makes his ruling on the issue currently before him, this

10  Court has no jurisdiction to compel further arbitration. The AAA arbitration scheduled for

11  February 8, 2024 must move forward first, as it will determine which documents dictate the

12  rules of the labor organization process as it relates to critical matters, such as card check

13  procedures and secret ballot elections.

14  Moreover, as explained in the Tribe's Motion to Dismiss and herein, the Union did not

15  properly serve the Tribe with its Complaint, Summons, or Motion to Compel. In fact, the Union

16  filed its Motion to Compel before it even effectuated proper service of its Complaint on the

17  Tribe. Carroll Decl., ¶ 12; Declaration of Christina Kazhe ("Kazhe Decl."), ¶ 16, Because the

18  Union did not properly serve the Tribe with its Motion to Compel (or the Complaint or

19  Summons), the Court should deny the Union's Motion to Compel.

20  For these reasons, the Tribe requests that the Court dismiss the Union's Motion to

21  Compel as moot, or alternatively, deny the Union's Motion to Compel. This ruling will allow

22  the AAA arbitration scheduled for February 8, 2024 to move forward and determine which

23  documents will dictate the rules of the labor organization process as it relates to critical matters,

24  such as card check procedures and secret ballot elections.

25  / / /

26

27

28

**Carroll &
Associates, PC**

---

[3] To the extent that the Union is pursuing arbitration that is simultaneous with, or in lieu of, the present arbitration, the Tribe asks the Court to consider the alternative grounds that will be presented in the Tribe's Reply to the Union's Opposition to the Tribe's Motion to Dismiss.

## II.    FACTUAL BACKGROUND

**A.    Agreements And Laws Involving—And Applicable To—The Parties**

### 1.    *The State And Tribe Sign A Compact, Containing A Model Tribal Labor Relations Ordinance*

The Tribe signed a Tribal-State Gaming Compact between the State of California and the Tribe ("Compact") on June 29, 2017, and the Governor of the State of California signed the Compact on July 19, 2017. RFJN Exh. 1 [Relevant portions of the Compact and the model TLRO]; Declaration of Christina Kazhe ("Kazhe Decl."), ¶ 18. The Compact included a model Tribal Labor Relations Ordinance, which the Tribe used as a template for its Tribal Labor Relations Ordinance of 2019 ("TLRO"): the Tribal Law later codified by the Tribal Council (the Tribe's legislative body) as Chapter 3 of the Wilton Rancheria Code under "Title 7 – Labor Code." RFJN Exhs. 1-2. Pursuant to Section 12.10 of the Compact, the Tribe was required to adopt an ordinance identical to the model Tribal Labor Relations Ordinance prior to commencing any gaming activities authorized by the Compact. RFJN Exh. 1, at § 12.10 [Relevant portions of the Compact and the model TLRO]. Specifically, Section 12.10, entitled "Labor Relations," provides:

> The Gaming Activities authorized by this Compact may only commence after the Tribe has adopted an ordinance identical to the Tribal Labor Relations Ordinance attached hereto as Appendix C, and the Gaming Activities may only continue as long as the Tribe maintains the ordinance. The Tribe shall provide written notice to the State that it has adopted the ordinance, along with a copy of the ordinance, before commencing the Gaming Activities authorized by this Compact.

*Id.*

The Union undeniably knew of the Compact between the State and the Tribe while it was being negotiated and after it was signed. To be clear, the Compact was signed by the Tribe and State in June and July of 2017, respectively. A month later, in August of 2017, the Union memorialized the fact that it had "agree[d] to actively support…the Tribe's efforts to obtain ratification of the Compact[.]" Pl.'s Compl. Exh. B-3, 32 of 90, ¶ 14, ECF No. 1.

/ / /

Carroll & Associates, PC

3                    Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR

2.    *The Parties Enter Into A Memorandum Of Agreement, Incorporating The TLRO*

In early August 2017, the Tribe, Boyd Gaming Corp., and the Union entered into a Memorandum of Agreement ("MOA"), wherein the parties agreed to a neutral approach to unionization of casino employees and to support the Compact. Pl.'s Compl. Exh. B-1-B-4, 30-33 of 90, ECF No. 1. The MOA became effective on August 7, 2017, which is the date the last party (the Tribe) signed the MOA. *Id.* At this time, the Tribe had signed the Compact and was in the process of obtaining ratification of the Compact. Paragraph 14 of the MOA expressly references the Compact, its process, and its timeline, stating "[t]he Union hereby agrees to actively support…the Tribe's efforts to obtain ratification of the Compact…." *Id.* In addition to paragraph 14, the MOA clearly indicates the intention to be subject to the TLRO. Paragraph 2 of the MOA expressly states that "[t]he parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino, and to hereby establish the following procedure for the purpose of ensuring an orderly environment for Employees to exercise their rights under the Tribal Relations Ordinance to organize collectively[.]" *Id.* Section 16 of the MOA further states:

> In the event that any provision of this Agreement should be rendered invalid by applicable legislation…such action shall not invalidate the entire Agreement, it being the express intention of the parties hereto that all other provisions not rendered invalid shall remain in full force and effect. Both parties agree that the subject matter of any provision found to be invalid shall be renegotiated for the purpose of replacing the invalidated provision with a valid substitute which most nearly achieves the same objective.

*Id.*

As the timeline, the MOA, and the Complaint detail, the Union was directly involved prior to the effective date of the Compact and supported ratification of the Compact and all its terms, which necessarily includes Section 12.10 of the Compact. Further, the Union is familiar with the fact that tribal-state gaming compacts require enactment of an ordinance utilizing the model Tribal Labor Relations Ordinance, as the requirement has been a part of tribal-state gaming compacts for years. The Union undoubtedly knew that the Tribe would be required to adopt Tribal Law with terms nearly identical to the model Tribal Labor Relations Ordinance as

Carroll &
Associates, PC

4                    Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

1    part of the Compact. In fact, the "Tribal Labor Relations Ordinance" was referenced in the

2    MOA and the parties agreed to adhere to it. There was no surprise or unfair advantage to the

3    Union when the Tribe enacted the TLRO.

4           ***3.    The Compact Becomes Effective***

5           The Compact was not ratified or effective until after execution of the MOA. After tribes

6    and the State of California agree to, and execute, tribal-state gaming compacts, the compacts are

7    required to be ratified by the California Legislature and approved by the Secretary of the

8    Interior before taking effect. With respect to the Tribe's Compact, the California Legislature

9    ratified the Compact on or about October 3, 2017. On or about November 19, 2017, the

10   Compact was then deemed approved by the Secretary of the Interior, confirmed by letter dated

11   December 15, 2017. Finally, the Compact took effect upon publication in the Federal Register

12   on January 22, 2018. Each action was taken without any modification to the Compact, including

13   Section 12.10 and the model Tribal Labor Relations Ordinance, maintaining the Union's

14   complete understanding of the terms of the Compact and the anticipated Tribal Law.

15          ***4.    The Tribe Enacts The TLRO***

16          Thereafter, on April 18, 2019, the Tribe enacted the TLRO, as required by the Compact,

17   and it became part of the Tribe's Labor Code.

18          The TLRO is Tribal Law duly enacted by the Tribe pursuant to the authority contained

19   in the Constitution of Wilton Rancheria ("Constitution") and the rights and privileges afforded

20   to sovereign tribes. Pursuant to Article VI, Section 2(a) of the Constitution, the Tribal Council,

21   the Tribe's legislative body, has the power to "make all laws, including resolutions, codes, and

22   statutes." Pursuant to Section 1-303(A) of the Tribal Council Organization Act of 2012, which

23   is another Tribal Law codified as Chapter 1 of the Tribe's Government Code, "[a]cts and/or

24   statutes shall be the formal tribal laws passed by the Tribal Council in development of the

25   Tribe's permanent body of law." The Tribal Council Organization Act of 2012 then sets forth a

26   formal three-step legislation process, consisting of an internal review phase, a public review

27   phase, and a final review phase, that all acts and amendments must go through, subject to

28   certain exceptions that are not relevant here.

**Carroll &
Associates, PC**

Tribal Council Resolution No. 2019-23 sets forth that the Tribe followed the formal three-step legislation process in enacting the TLRO. Kazhe Decl., ¶ 20, Exh. I. First, pursuant to Tribal Council Resolution No. 2019-11, the Tribal Council submitted the proposed TLRO for public review from February 20, 2019 to March 21, 2019. Second, the Tribal Council conducted a public hearing regarding the proposed TLRO on March 7, 2019 at the Tribe's office. Third, the proposed TLRO was submitted to each member of the Tribal Council for final review on March 28, 2019. Finally, pursuant to Tribal Council Resolution No. 2019-23 itself, the Tribe duly enacted the TLRO. *Id.* Consequently, the Tribe enacted the TLRO as Tribal Law based on authority independent of the Compact.

**B.    The Parties' Disagreement Over The Union Recognition Process**

Earlier this year it became apparent that the Tribe and Union disagreed over the Union recognition process and specifically, whether it involved a one-step "card check" process, as the Union contends, or a two-step process (with both a card check and secret ballot election), as set forth in the Tribe's Labor Code.

Ultimately, in early June 2023, the Union's counsel, Kristin Martin, reached out to the Tribe's General Counsel, Christina Kazhe, to inform the Tribe that the Union would like to select an arbitrator from the Federal Mediation and Conciliation Service ("FMCS"), as the Union "anticipate[d] asking for the card check to be done in the not too distant future." Pl.'s Compl., Exh. G-4, 77 of 90, ECF No. 1. The Tribe's General Counsel responded by stating that the Tribe was attempting to reconcile the TLRO and the MOA and invited the Union's input on the matter. *See e.g.,* Pl.'s Compl., Exh. G-2, 75 of 90, ECF No. 1. The Union's counsel then responded that the Union had no intention of following the TLRO's union recognition provision—specifically, the secret ballot election provision—and that it only intended to follow the MOA. Pl.'s Compl., Exh. G-1-G-2, 74-75 of 90, ECF No. 1. The parties continued their discussion over the following two months but given that the Union was unwilling to follow the TLRO, the parties were unable to reach any resolution. Kazhe Decl., ¶¶ 3-10, Exhs. A [Correspondence dated June 30, 2023 from K. Martin], B [Email thread beginning June 30, 2023], C [Email thread beginning July 7, 2023].

Carroll &
Associates, PC

6                    Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

**C.**    **Arbitration Is Pending Before AAA**

On August 18, 2023, the Tribe submitted its Demand for Arbitration to AAA, requesting that the Tribal Labor Panel resolve its dispute with the Union. Pl.'s Compl., Exh. J-1-J-2, 86-87 of 90, ECF No. 1; *see also* Kazhe Decl., ¶ 11. The Tribe described its grievance ("Grievance") as follows:

> Pursuant to the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, Wilton Rancheria was required to adopt and maintain Tribal Law identical to the Tribal Labor Relations Ordinance attached to the Compact. To comply with this requirement, Wilton Rancheria enacted the Tribal Labor Relations Ordinance of 2019 ("TLRO"), codified as Chapter 3 of the Wilton Rancheria Labor Code, on April 18, 2019. The TLRO provides for a two-step certification process before an arbitrator from the Tribal Labor Panel: (1) dated and signed authorization cards from thirty percent (30%) or more of the Eligible Employees; and (2) a secret ballot election requiring more than fifty percent (50%) of Eligible Employees. The TLRO requires all issues to be resolved by a resolution by the Tribal Labor Panel. Respondent refuses to comply with the two-step certification process and the dispute resolution mechanism identified in the TLRO, relying on a Memorandum of Agreement (MOA) signed by the parties on August 7, 2017, prior to the enactment of the Tribe's TLRO.

Pl.'s Compl., Exh. J-1-J-2, 86-87 of 90, ECF No. 1. Thus, the Tribe sought the following remedy: "A determination that Respondent must comply with the two-step certification process identified in the TLRO and resolve any disputes pursuant to the dispute resolution mechanism identified in the TLRO." *Id.*

That same day, August 18, 2023, the Tribe filed a Petition in the Wilton Rancheria Tribal Court seeking to compel arbitration, given the Union's prior refusal to agree to arbitrate the dispute. Kazhe Decl., ¶ 12, Exh. D [Petition]. Thereafter, the Union made repeated assurances that the Union will engage in the arbitration, fully understanding the narrow Grievance and remedy described above, resulting in two extensions of the Union's answer deadline and a stay in the Wilton Rancheria Tribal Court proceeding. *Id.*, ¶ 13, Exh. E [Three Tribal Court Orders].

On October 17, 2023, the Union's counsel confirmed, in no uncertain terms, that the Union "will agree to arbitrate, under the TLRO's arbitration procedures, the dispute about whether the MOA between the Tribe, Boyd, and [the Union] violates the TLRO." Kazhe Decl.,

1    ¶ 14, Exh. F [Email dated Oct. 17, 2023 from K. Martin]. Undeniably, the Union's counsel

2    agreed to the present arbitration, including the specific Grievance, albeit while

3    mischaracterizing the issue.

4        On November 7, 2023, the parties agreed to use Arbitrator Norman Brand from the

5    Tribal Labor Panel to hear the Grievance brought by the Tribe. Kazhe Decl., ¶ 15, Exh. G

6    [Email thread beginning on Nov. 2, 2023].

7        On December 15, 2023, the parties had their first call with Arbitrator Brand. Carroll

8    Decl., ¶ 18. During that call, he addressed the dispute at issue and set a briefing schedule. *Id.*

9        Accordingly, the Tribe and the Union have agreed to the pending arbitration before

10   Arbitrator Brand, including the specific Grievance and remedy sought. The arbitration hearing

11   has been scheduled for February 8, 2024. Pl.'s Compl., Exh. K-2, 90 of 90, ECF No. 1.

12   **D.    The Tribe's Counsel Met and Conferred With The Union's Counsel Regarding The**

13   **Union's Defective Demand For Arbitration**

14       On November 29, 2023, the Union filed its Complaint. Pl.'s Compl., ECF No. 1. Shortly

15   thereafter, on December 4, 2023, the Tribe's counsel, Sheila Carroll, and the Union's counsel,

16   Kristin Martin, had a telephone conversation to discuss the Union's Complaint. Carroll Decl., ¶

17   7. The Tribe's counsel was unable to reach an agreement with the Union's counsel on any

18   issues related to the Union's Complaint. *Id.* Consequently, during that conversation, the Tribe's

19   counsel informed the Union's counsel that the Tribe intends to bring a Motion to Dismiss and

20   briefly stated the grounds upon which the Motion to Dismiss would be based. *Id.* Thereafter, in

21   subsequent emails between counsel and during a further telephone conversation on December

22   15, 2023, the Tribe's counsel further met and conferred with the Union's counsel, while

23   discussing the substance for the Tribe's Motion to Dismiss to the Union's counsel. *Id.* at ¶¶ 8-

24   17, 19, Exhs. M [Email thread beginning on Nov. 30, 2023], N [Email thread beginning on Dec.

25   12, 2023]. Despite the Tribe's efforts to meet, confer, and reach a resolution with the Union and

26   its counsel, no resolution or settlement was achieved. *Id.* All meet and confer efforts have been

27   exhausted. *Id.* at ¶ 19.

28   / / /

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert the Court's lack of subject-matter jurisdiction by way of a motion to dismiss. Federal Rule of Civil Procedure 12(h)(3) also states that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Federal courts presume that they lack jurisdiction, and the plaintiff bears the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (once jurisdiction is raised, the Court presumes that "a cause lies outside [its] limited jurisdiction" and "the burden of establishing the contrary rests upon the party asserting jurisdiction"). To meet this burden at the pleading stage, "[t]he plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)" that provide the grounds to invoke a federal court's subject-matter jurisdiction.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Additionally, Federal Rule of Civil Procedure 12(b)(5) allows a party to bring a motion to dismiss for insufficient service of process. "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999). In the absence of service of process, a court may not exercise power over the defendant. *Id.* The plaintiff bears the burden of establishing that service is valid under Federal Rule of Civil Procedure 4 in response to a motion to dismiss based upon insufficient service of process. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2021 U.S. Dist. LEXIS 243389, *16, 2021 WL 6049906 (N.D. Cal. 2021).

### IV.    LEGAL ANALYSIS

**A.    The Court Should Grant The Tribe's Motion To Dismiss, Or Alternatively Deny The Instant Motion Based Upon Federal Rule Of Civil Procedure 12(b)(1)**

*1.    Arbitrator Brand's Decision Is A Condition Precedent To Any Further Arbitration*

As the Union points out in its Complaint, the Tribe and the Union entered into a MOA.

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR

Carroll & Associates, PC

But contrary to the Union's steadfast contention, the discussion does not start—or end—solely with the MOA. The Union blatantly ignores the fact that the MOA—notably, paragraph 2 of the MOA—expressly incorporates Tribal law into the MOA. The MOA says nothing about disregarding the TLRO codified as Chapter 3 of the Tribe's Labor Code, which is essentially what the Union is asking this Court to do. Notably, the Union was fully aware of the future legislation at the time the Union executed the MOA. The Compact contains a model Tribal Labor Relations Ordinance, which the Tribe was required to adopt and maintain pursuant to Section 12.10 of the Compact (in order to open and operate a casino). Pursuant to Paragraph 14 of the MOA, the Union agreed to, and actually did, actively support ratification of the Compact, which included the above requirement to enact the TLRO. Pl.'s Compl. ¶¶ 12-14, ECF No. 1. Although the language of the model Tribal Labor Relations Ordinance is nearly identical to the codified TLRO, the documents are, in fact, not the same—despite the Union's efforts to equate the two by attaching and basing arguments off of the model Tribal Labor Relations Ordinance and not the codified TLRO. The codified TLRO is Tribal Law that must be followed and cannot be ignored. Despite all of this, the Union now ignores the requirements set forth in the TLRO and treats the MOA as if it is the only document governing the parties. In doing so, the Union ignores the fact that the Tribe is in fact a sovereign nation. The Union's position also flies in the face of (1) the MOA—specifically, paragraph 2 of the MOA—which solidifies that "[t]he parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino….", and (2) Tribal law—to which the parties are presently bound to follow (and to which this Court must honor).

The MOA and TLRO both set forth procedures for (1) selecting an arbitrator or election officer to oversee the union recognition process, including the card check process, and (2) resolving disputes through arbitration. The TLRO provides that the election officer shall be a member of the Tribal Labor Panel and that any arbitration shall take place before the Tribal Labor Panel, whereas the MOA provides that the arbitrator shall be chosen from a panel of arbitrators from the FMCS or from any other source that the parties agree and that the arbitration should take place before the FMCS or before an arbitrator selected from any other

Carroll & Associates, PC

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR

source. The Tribe already demanded arbitration before the Tribal Labor Panel, and the Union agreed and promptly participated in the arbitrator selection process. Kazhe Decl., ¶¶ 14-15, Exhs. F [Email dated Oct. 17, 2023 from K. Martin], G [Email thread beginning on Nov. 7, 2023]; *see also* Pl.'s Compl., Exh. K-1-K-2, 89 and 90 of 90, ECF No. 1. The Union knew the scope of the issue before the Tribal Labor Panel before it agreed to Arbitrator Brand, and the Union's counsel has reached out to Arbitrator Brand and the case administrator since that selection. *Id.* The issue that is currently before Arbitrator Brand is narrow in scope and concerns the Grievance set forth in the Demand for Arbitration filed by the Tribe. Pl.'s Compl. Exh. J-1-J-2, 86-87 of 90, ECF No. 1. The issue undeniably involves whether the Union must abide by the procedures set forth for union recognition in the TLRO (which is expressly incorporated into the MOA). *Id.* Regardless of the Union's contention that the TLRO does not apply to it, the Union has already agreed to arbitrate this issue before Arbitrator Brand. The issue before Arbitrator Brand is in the process of being decided – and must be decided – before any more issues are compelled to arbitration, especially in a different forum than the one currently being used: AAA. Legal counsel for the Union impermissibly attempted to broaden the scope of the AAA arbitration by way of a letter to Arbitrator Brand, and then, without waiting for any response from Arbitrator Brand, asked this Court to compel the Tribe to another arbitration so that the parties may select an arbitrator to handle the card check process. Carroll Decl., ¶ 4, Exh. J [Correspondence dated Nov. 28, 2023 from K. Martin]. The Tribe responded, noting that such expansion was (i) inappropriate under the TLRO and the AAA rules, (ii) highly speculative, and (iii) premature. *Id.* at ¶ 5, Exh. K [Correspondence dated Nov. 29, 2023 from S. Carroll]. During the initial joint conference with Arbitrator Brand on December 15, 2023, Arbitrator Brand discussed the dispute before him and outlined a briefing schedule for the February 8, 2024 arbitration. *Id.* at ¶ 18. The Union has chosen not to wait to file its own Demand for Arbitration to request a card check if and when a decision is made in their favor, and once the deadlines to set aside a decision expire. Instead, the Union chose to bring this Complaint before this Court, without going through the proper process, in an attempt to rob the Tribe of its ability to govern itself, as it is lawfully entitled.

Carroll &
Associates, PC

1    In its Complaint, the Union asks this Court to compel the Tribe to select an arbitrator

2    with FMCS, who can conduct a dispositive card check set forth by the MOA, and to "submit

3    any disputes about the interpretation or application of the [MOA]" before FMCS. Pl.'s Compl.

4    8-9 of 90, ECF No. 1. However, the parties cannot yet arbitrate the issues that the Union asks

5    this Court to compel to arbitration, as the Union's arbitration demand is contingent upon a

6    favorable ruling from Arbitrator Brand, finding that the Union does not need to follow the

7    procedures set forth in the TLRO for union recognition, including both a card check and secret

8    ballot election. To be clear, if Arbitrator Brand finds in the Union's favor, and the Tribe

9    exhausts its remedies to set aside the decision, then at that point in time, the Union could move

10   this Court to compel arbitration before FMCS *provided that the Tribe refused to arbitrate*.

11   (Notably, this has not happened.) However, if Arbitrator Brand finds in the Tribe's favor, then it

12   would be wholly improper for the Union to ask this Court to compel arbitration before FMCS,

13   as the Union would need to follow the procedures and requirements set forth in the TLRO

14   instead, meaning that the arbitration would be before the Tribal Labor Panel—not FMCS.

15   Therefore, Arbitrator Brand's decision is a condition precedent to the arbitration that the Union

16   is seeking, and this means that the Union's Complaint is not yet ripe.

17       ***2.    Ripeness Limits The Power Of Federal Courts To Adjudicate Disputes***

18       Ripeness is a question of timing. *Regional Rail Reorganization Act Cases*, 419 U.S. 102,

19   140 (1974). It is a constitutional and jurisdictional doctrine derived from Article III's "case or

20   controversy" clause. See e.g., *State Farm Mut. Auto Ins. Co. v. Dole*, 802 F.2d 474, 479 (D.C.

21   Cir. 1986), cert. denied, 480 U.S. 951 (1987). Because ripeness—or the lack thereof—is a

22   jurisdictional issue, the Ninth Circuit requires federal courts to resolve ripeness issues before

23   deciding the merits. *Kerr-McGee Chemical Corporation v. United States Department of the*

24   *Interior*, 709 F.2d 597, 600 (9th Cir. 1983); *Pacific Legal Foundation v. State Energy*

25   *Resources Conservation & Development Commission*, 659 F.2d 903. 910 (9th Cir. 1981), aff'd

26   in *Pacific Gas and Electric Co. v. State Energy Resources*, 461 U.S. 190 (1983).

27       "The 'basic rationale' of Article III ripeness doctrine 'is to prevent the courts, through

28   avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"

Carroll &
Associates, PC

12                Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

1  *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (citations omitted). Federal courts

2  normally ought not resolve issues "involving 'contingent future events that may not occur as

3  anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agric. Prods. Co.*, 473

4  U.S. 568, 580-81 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and

5  Procedure § 3532 (1984)). The central concern in the ripeness inquiry "is whether the case

6  involves uncertain or contingent future events that may not occur as anticipated, or indeed may

7  not occur at all." *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122–23 (9th Cir.

8  2010) (quoting *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir.

9  1997); citing 13A Charles Alan Wright et al., Federal Practice and Procedure § 3532 at 112 (2d

10 ed. 1984)).

11     ***3.      The Union's Claim Demanding Arbitration Is Unripe, As No Substantial And***

12              ***Immediate Controversy Exists Or Is Otherwise Ripe For Review***

13         Under the current facts and circumstances, the Union's claim (for an order compelling

14 the Tribe to arbitration) is not yet ripe, as it presents no live case or controversy. This is because

15 the parties are already participating in an arbitration proceeding before the Tribal Labor Panel

16 *and* the outcome of that arbitration is a condition precedent to the Union's arbitration demand in

17 the instant case.

18         As set forth above, the Union is asking this Court to compel the Tribe to select an

19 arbitrator with FMCS, who can conduct a card check process, and to "submit any disputes about

20 the interpretation or application of the [MOA]" before FMCS. Pl.'s Compl. 8-9 of 90, ECF No.

21 1. The Union completely ignores the fact that arbitration is already pending, *and* that arbitration

22 will dictate what the Union can or cannot ask this Court to do. Markedly, this Court cannot

23 compel the parties to further arbitration unless and until Arbitrator Brand finds in the Union's

24 favor. To be clear, if Arbitrator Brand finds in the Union's favor (that the Union does not need

25 to follow the procedures set forth in the TLRO for union recognition or dispute resolution), and

26 the Tribe exhausts its remedies to set aside the decision, then at that point in time, the Union

27 could move this Court to compel arbitration before FMCS *provided that the Tribe refused to*

28 *arbitrate*. These events have not occurred yet, and therefore, the Union's claim demanding

**Carroll &**
**Associates, PC**

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

1   arbitration is not yet ripe. This is because if Arbitrator Brand finds in the Tribe's favor (that the

2   Union needs to follow the procedures and requirements for union recognition and dispute

3   resolution set forth in the TLRO), or Arbitrator Brand provides some other dispute resolution

4   mechanism (such as resolving disputes before a neutral arbitrator that is neither the FMCS nor

5   the Tribal Labor Panel), then the Union cannot demand that this Court compel arbitration before

6   FMCS. Therefore, Arbitrator Brand's decision is a condition precedent to the further arbitration

7   that the Union is seeking.

8           The case of *Aydin Corp. v. Union of India*, 940 F.2d 527 (9th Cir. 1991) is instructive. In

9   *Aydin*, the plaintiff filed suit for declaratory relief, in the United States District Court for the

10  Northern District of California, while an arbitration proceeding was taking place in India. *Id.*

11  The plaintiff asked the District Court to declare that any award from the pending arbitration

12  would not be enforceable against it in the United States. *Id.* The issue became whether the

13  enforceability of an arbitration award "that has yet to be awarded is 'of sufficient immediacy

14  and reality' such that it is ripe for review." *Id.* at 528. The Ninth Circuit affirmed the District

15  Court's dismissal of the claim for want of jurisdiction, finding that "[t]he future existence and

16  enforcement … of an Indian [arbitration] award against [the plaintiff] is speculative." *Id.* at 528.

17  The Court noted that it had no "doubt that [the plaintiff] would find such a favorable declaration

18  helpful," given that the plaintiff "might use such a pronouncement to persuade [defendant] to

19  settle the dispute or forego the pending arbitration." *Id.* at 528-28. But the Court held that there

20  was no ripe Article III case or controversy, since the dispute was not yet "sufficiently immediate

21  and real." *Id.* at 529. Like *Aydin*, the Union's Complaint fails to allege any controversy that is

22  sufficiently immediate and real to confer jurisdiction on this Court.

23          Likewise, the case of *Cristo v. U.S. SEC*, 2020 U.S. Dist. LEXIS 127219, *12-18, 2020

24  WL 4040340 (S.D. Cal. July 17, 2020) is also instructive. In *Cristo*, there was an underlying

25  arbitration pending at the time the plaintiff filed a separate federal court action. *Id.* at *8, 12.

26  The Court noted that the outcome of the arbitration had not yet been determined and that the

27  plaintiff failed to show, and could not show, that he had suffered any concrete injury or

28  imminent harm. *Id.* at *16. Thus, the Court explained that plaintiff's allegations "concern[ed]

**Carroll &**
**Associates, PC**

14                          Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

conduct currently pending with the arbitration panel which are not yet concluded, and are therefore, not ripe." *Id.* Consequently, the Court found that it lacked subject-matter jurisdiction over the plaintiff's unripe claims. *Id.* at *17. In making its decision, the Court heavily relied on the case of *Habliston v. FINRA Regulation, Inc.*, 2017 U.S. Dist. LEXIS 11691, 2017 WL 396580 (D.D.C. Jan. 27, 2017).

In *Habliston*, 2017 U.S. Dist. LEXIS 11691, the plaintiffs filed a complaint in federal court while arbitration was pending. *Id.* at *1. The plaintiffs alleged that their rights were violated due to an allegedly unfair arbitration process. *Id.* at *5. The Court found that "[s]ince the arbitration [wa]s still ongoing, plaintiffs' challenge to the proceeding [wa]s not ripe for review." *Id.* at *11. Thus, the Court dismissed plaintiffs' unripe claims. *Id.* at *12.

Lastly, the case of *Synopsys, Inc. v. Siemens Indus. Software*, No. 20-cv-04151-WHO, 2021 U.S. Dist. LEXIS 65099, 2021 WL 1238309 (N.D. Cal. Apr. 2, 2021) is also instructive. In *Synopsys*, the parties executed an agreement, which, among other things, granted a license to use certain patents and contained a three-step dispute resolution process: (1) informal attempts to settle; (2) mediation; and (3) arbitration if the parties fail to resolve the dispute in mediation. *Id.* at *3-4. The defendant moved to stay the federal proceeding pending arbitration, while the plaintiff opposed, stating "that there is not yet any issue referable to arbitration because the parties have not completed the first two steps of the PLSA's three step grievance procedures." *Id.* at *6-8. As the Northern District of California Court states, "[t]he primary question then, is whether [the Court] should, or must, stay this action under § 3 of the FAA where (1) the parties have agreed to arbitrate any dispute regarding the scope of the PLSA's license over the 20.1.rel.1.0 release of Aprisa once the first two steps of the PLSA's grievance procedures have been satisfied; and (2) the first two steps of the PLSA's grievance procedures have indisputably not been satisfied." *Id.* at *9. The Court "conclude[d] that the parties have not triggered the [agreement's] arbitration provision and that a stay under the FAA is premature." *Id.* at *10. The Court highlighted that several cases "indicate that where it is clear the conditions precedent to an arbitration provision have not been met, the arbitration provision is not triggered, and the FAA's provisions do not apply." *Id.* at *11.

Carroll &
Associates, PC

15                    Case No. 2:23-cv-02767-KJM-DB
WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND
SELECTION OF AN ARBITRATOR

1    Similarly, the Tribe and the Union have agreed to arbitrate before Arbitrator Brand the

2    fundamental dispute of whether the Union must comply with the two-step certification process

3    identified in the TLRO and resolve any disputes pursuant to the dispute resolution mechanism

4    identified in the TLRO. Pl.'s Compl. Exh. J-1-J-2, 86-87 of 90, ECF No. 1. Until Arbitrator

5    Brand issues his decision, it is premature for the Union to ask this Court to order another

6    arbitration, as the Union's claim demanding arbitration is contingent upon a favorable ruling

7    from Arbitrator Brand, finding that the Union does not have to follow the procedures set forth in

8    the TLRO.

9    At this point in time, the Court lacks jurisdiction over the Tribe to determine how and

10   when an additional arbitration will occur. Accordingly, the Court should dismiss the Union's

11   claim demanding arbitration, as it is not yet ripe.

12   **B.**   **The Court Should Grant The Tribe's Motion To Dismiss, Or Alternatively Deny**

13   **The Instant Motion Based Upon Federal Rule Of Civil Procedure 12(b)(5) Based**

14   **On Lack Of Service**

15   Federal Rule of Civil Procedure 4 sets forth the requirements for properly effectuating

16   service of a complaint and summons upon a defendant. The Union has not complied with the

17   requirements of Federal Rule of Civil Procedure 4, and therefore, the Tribe denies that the

18   Union has properly served the Tribe with the Complaint or Summons. As set forth above, when

19   a defendant brings a motion to dismiss based upon insufficient service of process, the plaintiff

20   bears the burden of establishing that service is valid under Federal Rule of Civil Procedure 4.

21   *Brockmeyer*, 383 F.3d at 801; *Elite Semiconductor, Inc.*, 2021 U.S. Dist. LEXIS 243389, at *16.

22   In an effort to cooperate with the Union's counsel, the Tribe's counsel agreed to accept

23   service of the Complaint (and Summons) *via a Notice and Acknowledgement of Receipt*, which

24   the Tribe's counsel would then sign and return within 20 days. Carroll Decl., ¶¶ 7, 9, Exh. M

25   [Email thread beginning on Nov. 30, 2023]. This agreement to accept service was unequivocally

26   contingent upon the Union providing the Tribe with a Notice and Acknowledgement of Receipt.

27   *Id.* The Union's counsel responded that the deadlines associated with a Notice and

28   Acknowledgement of Receipt wouldn't work with the Union's schedule, and therefore, chose

not to proceed with service via a Notice and Acknowledgement of Receipt. *Id.* at ¶ 10. Instead, the Union's counsel merely mailed the Tribe's counsel and General Counsel the Complaint and Summons. *Id.* at ¶¶ 11-12; Kazhe Decl., ¶ 16. Federal Rule of Civil Procedure 4 does not allow plaintiff's counsel to merely mail defense counsel copies of the Complaint and Summons, especially when defense counsel has not agreed to waive service. The Tribe's counsel specifically stated that the *only* way she could accept service was via a Notice and Acknowledgement of Receipt, otherwise she did "not have authority and [the Union] will need to proceed by personal service if not serving by notice of acknowledgement." Carroll Decl., ¶ 9, Exh. M [Email thread beginning on Nov. 30, 2023].

Without a signed Notice and Acknowledgement of Receipt, the Union's attempt to serve the Tribe's counsel via mail is improper. Accordingly, the Court should dismiss the Union's Complaint upon this additional ground.

## V.    CONCLUSION

The Court should dismiss the Union's instant Motion to Compel as moot and grant the Tribe's Motion to Dismiss on the ground that it lacks subject-matter jurisdiction over the Tribe due to the Union's unripe claim demanding arbitration. Alternatively, the Court should deny the Union's Motion to Compel on the grounds that the Union's Motion to Compel is unripe and that the Union did not properly serve the Tribe with its Complaint, Summons, or Motion to Compel. A court order denying the instant Motion to Dismiss would allow the parties to move forward with the AAA arbitration on February 8, 2024, and then move forward with any subsequent arbitration as needed and pursuant to the appropriate governing rules.

Dated:  December 18, 2023

CARROLL & ASSOCIATES PC

By:    /s/ Sheila Lamb Carroll
Sheila Lamb Carroll (SBN 142764)
Dacia J. Cenat (SBN 305161)
Attorneys for Wilton Rancheria

Carroll &
Associates, PC

WILTON RANCHERIA'S OPPOSITION TO UNITE HERE'S MOTION TO COMPEL ARBITRATION AND SELECTION OF AN ARBITRATOR