I'm John H. Adams, Jr., CA Bar No. 253341
jhadams@littler.com
Steven G. Biddle *(Pro Hac Vice Pending)*
sbiddle@littler.com
LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
Telephone:   916-830-7200
Fax No.:   916-560-5136

Attorneys for Defendant
WILTON RANCHERIA

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Unite Here,<br><br>        Plaintiff,<br><br>    v.<br><br>Wilton Rancheria,<br><br>        Defendant. | Case No. 2:23-CV-02767-KJM-DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO VACATE OR CORRECT ARBITRATION AWARD**<br><br>DATE:    August 2, 2024<br>TIME:    10:00 a.m.<br>CTRM:   3 (15th Floor)<br>JUDGE:  Honorable Kimberly J. Mueller |

## **TABLE OF CONTENTS**

|     |     | PAGE |
| --- | --- | --- |
| I. | INTRODUCTION | 5 |
| II. | STATEMENT OF FACTS | 5 |
| III. | JURISDICTION | 8 |
| IV. | STANDARD OF REVIEW | 9 |
| V. | ARGUMENT | 10 |
|     | A. The Legal Bases for Vacating or Correcting the Award. | 10 |
|     | B. The Arbitrator Exceeded His Powers in Violation of Wilton's Statutory Rights. | 11 |
|     | C. The Arbitrator Failed to Acknowledge Wilton's Status as a Sovereign Nation. | 12 |
|     | D. The Arbitrator Exceeded His Powers in Ruling That a Private Agreement Can Relieve a Party of Its Legal Obligations. | 14 |
| VI. | CONCLUSION | 15 |

LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD

2

CASE NO. 2:23-CV-02767-KJM-DB

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahdout v. Hekmatjah*,
   213 Cal.App.4th 21 (Ct. App. 2013)..................................................................................4

*All Points Traders, Inc. v. Barrington Assocs.*,
   211 Cal. App. 3d 723 (1989) ............................................................................................12

*Board of Educ. v. Round Valley Teachers Ass'n.*,
   13 Cal.4th 269 (1996) ......................................................................................................12

*Bond v. United States*,
   572 U.S. 844 (2014).........................................................................................................14

*Brown v. TGS Mgmt.*,
   57 Cal.App.5th 303 (Ct. App. 2020)................................................................................11

*California Dept. of Hum. Res. v. Serv. Employees Int'l Union, Local 1000*,
   209 Cal.App.4th 1420 (2012) ..........................................................................................11

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
   31 Cal. App. 5th 840 (2019) ............................................................................................11

*Haaland v. Brackeen*,
   __ U.S. __, No. 21-376 (June 15, 2023) (Gorsuch, J., concurring) .........................................13

*Honchariw v. FJM Private Mortg. Fund*,
   83 Cal.App.5th 893 (Ct. App. 2022)................................................................................10

*Medellin v. Texas*,
   552 U.S. 491 (2008).........................................................................................................14

*Moncharsh v. Heily Blase*,
   3 Cal.4th 1 (1992) ............................................................................................................11

*Pearson Dental Supplies, Inc. v. Superior Court*,
   48 Cal.4th 655 (2010) ......................................................................................................10

*Richey v. AutoNation, Inc.*,
   60 Cal.4th 909 (2015) ................................................................................................10, 11

*Sayta v. Martin*,
   No. 16-cv-03775-LB (N.D. Cal. Feb. 7, 2017).................................................................14

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE
OR CORRECT ARBITRATION AWARD

3

CASE NO. 2:23-CV-02767-KJM-DB

**Statutes**

25 U.S.C. § 2710 ................................................................................................................5

Cal. Code of Civil Proc. § 1286.2 ............................................................................9, 10, 15

Cal. Bus. & Prof. Code § 7031.5 .......................................................................................10

Cal. Bus. & Prof. Code § 16600 ........................................................................................10

Cal. Equal Pay Act ............................................................................................................15

Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ..................................................5

Tribal Labor Relations Ordinance of 2019 .....................................................................5, 6

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD

4

CASE NO. 2:23-CV-02767-KJM-DB

## I. INTRODUCTION

Defendant, Wilton Rancheria ("Wilton" or "the Tribe"), by and through its undersigned counsel, hereby moves this Court for an order vacating or correcting the March 17, 2024, Arbitration Award and Opinion ("Award") issued following a hearing before Arbitrator Norman Brand. As discussed in detail below, the Arbitrator improperly ruled that a private agreement (the August 2017 MOA) is controlling over a Tribal statute (the TLRO) relating to labor relations and, in doing so, ignored the Tribe's sovereignty and statutory rights and disregarded compelling public policy. Moreover, when the Arbitrator ruled the Tribe must comply with the union-related provisions in the MOA between the Parties, rather than contrary provisions in the later-enacted TLRO, he ignored the explicit, overriding directive in the MOA through which the Parties agreed "the Tribal Labor Relations Ordinance governs labor relations at the Casino." Accordingly, because the Arbitrator exceeded his powers and the Award cannot be corrected without affecting the merits of the decision, this Court should vacate or correct the Award.

## II. STATEMENT OF FACTS

Wilton Rancheria is a federally-recognized Indian tribe located near Elk Grove, California, that operates the Sky River Casino ("the Casino") pursuant to authorization from the United States Secretary of the Interior under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA"). For a Tribe to operate "class III" (i.e., casino-style) gaming, IGRA requires that the Tribe first negotiate a "Tribal-State compact" with the state in which the casino will be operated "governing the conduct of gaming activities." 25 U.S.C. § 2710(d)(3).

Wilton and the State of California ("State") executed a Tribal-State Gaming Compact ("Compact") in June 2017. The stated effective date of the Compact was January 22, 2018. As a prerequisite to engaging in casino gaming, the State negotiated with the Tribe to include in the Compact a template, and the Tribe agreed to enact a statute modeling the template Tribal Labor Relations Ordinance through its Tribal legislative process. Most notably, the template Tribal Labor Relations Ordinance contains the procedures to be used if a union indicates an interest in representing employees of the Casino, including a process for a secret ballot election if the interested union is able

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE
OR CORRECT ARBITRATION AWARD

5

CASE NO. 2:23-CV-02767-KJM-DB

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

to gather signed cards from at least 30% of the eligible employees. On April 18, 2019, the Tribe enacted the Tribal Labor Relations Ordinance of 2019 ("TLRO") as Tribal legislation in a form virtually identical to the template required by the Compact.

As evidenced by references to the Compact and the TLRO in a Memorandum of Agreement ("MOA") entered into in August 2017 between the Tribe, Boyd Gaming (as the Tribe's gaming management company), and Unite Here ("Union"), the Union was aware of the provisions of the TLRO. By this time, the Tribe had signed the Compact and was in the process of obtaining ratification. Pursuant to paragraph 14 of the MOA, "[t]he Union hereby agrees to actively support…the Tribe's efforts to obtain ratification of the Compact…." (See Declaration of John H. Adams, Jr. ("Adams Decl.", Exhibit 1, MOA.) In addition to paragraph 14, the MOA clearly indicates the Parties' intention that the Union's employee organizing efforts would be governed by the provisions of the TLRO. In fact, paragraph 2 of the MOA expressly states, "[t]he parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino, and to hereby establish the following procedure for the purpose of ensuring an orderly environment for Employees to exercise their rights under the Tribal Relations Ordinance to organize collectively[.]" *Id.*

However, the MOA also contains provisions that differ from the TLRO. For example, under the MOA, if the Union provides a notice of intent to organize ("NOIO"), the Tribe was required to furnish the Union a list of employees within 15 days. (See Adams Decl., Exhibit 1, MOA, paragraph 6.) Conversely, Section 3-207(c) of the TLRO (appearing as Section 7(c) in the State's template) states the Tribe must provide the employee list within two days of receiving the Union's NOIO. (See Adams Decl., Exhibit 2, TLRO.) More importantly, Section 3-210 of the TLRO (appearing as Section 10 in the template) states that if the Union provides the Tribe with signed and dated authorization cards from 30% or more employees, there will be a secret ballot election held among eligible employees to determine if they wish to be represented by the Union, and if more than 50% of the employees vote for the Union, the Union would become the certified representative of the employees. To the contrary, the MOA purports to deprive employees of a secret ballot election and provides that the Union would be recognized as the exclusive collective bargaining representative of the employees if the Union

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA 95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE
OR CORRECT ARBITRATION AWARD

6

CASE NO. 2:23-CV-02767-KJM-DB

presents signed authorization cards from a majority of the employees (this process is known colloquially as "card check"), without the benefit of a secret ballot election. (See Adams Decl., Exhibit 1, MOA, paragraph 7.) In any event, because the MOA states the TLRO governs labor relations at the Casino, and the TLRO provides for a secret ballot election if a union presents to an arbitrator signed cards from at least 30% of the employees, the MOA therefore also requires a secret ballot election.[1]

Wilton enacted the TLRO on April 18, 2019, and the Casino opened in August 2022. On February 2, 2023, the Union presented the Tribe with a written NOIO, and the Tribe thereafter provided the Union with the employee list pursuant to the TLRO. On June 20, 2023, the Union informed the Tribe that it had collected signed authorization cards from a majority of the eligible employees, but instead of agreeing to hold a secret ballot election as required by the TLRO, the Union claimed that the Tribe had to recognize the Union as the exclusive bargaining representative of the eligible employees. The Tribe objected to the notion that card check under an agreement (the MOA) could supersede Tribal law (the TLRO) and stated that it would agree to hold an election under the procedures outlined in the TLRO, especially because the Parties had explicitly agreed in the MOA that the TLRO would govern labor relations. Eventually, the Parties agreed to have an arbitrator decide whether the MOA or TLRO controlled the Union's organizing efforts.

The Parties chose Arbitrator Norman Brand to determine this discrete issue. Arbitrator Brand recited the basis for the dispute between Wilton and the Union in footnote 2 of his Award dated March 17, 2024, as follows:

> Pursuant to the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, Wilton Rancheria was required to adopt and maintain Tribal Law identical to the Tribal Labor Relations Ordinance attached to the Compact. To comply with this requirement, Wilton Rancheria enacted the Tribal Labor Relations Ordinance of 2019 (TLRO), codified as Chapter 3 of the Wilton Rancheria Labor Code, on April 18, 2019. The TLRO provides for a two-step certification process before an arbitrator from the Tribal Labor Panel: (1) dated and signed authorization cards from thirty percent (30%) or more of the Eligible Employees; and (2) a secret ballot election

---

[1] In his testimony at the Arbitration hearing, former Tribal Chairman Raymond Hitchcock was asked about the Tribe's negotiations with the Union concerning the MOA. He testified that although paragraph 2 (stating that the parties agreed the TLRO would govern labor relations at the Casino) was not included in the initial draft the Union presented to the Tribe, the Tribe insisted on adding it to ensure employees would have the right to participate in a secret ballot election to determine whether they wished to be represented by the Union. (See Adams Decl., Exhibit 4, Hearing Transcript Excerpts at 52:10-53:12.)

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE
OR CORRECT ARBITRATION AWARD

7

CASE NO. 2:23-CV-02767-KJM-DB

requiring more than fifty percent (50%) of Eligible Employees. The TLRO requires all issues to be resolved by a resolution by the Tribal Labor Panel. [The Union] refuses to comply with the two-step certification process and the dispute resolution mechanism identified in the TLRO, relying on a Memorandum of Agreement (MOA) signed by the parties on August 7, 2017, prior to the enactment of the Tribe's TLRO.

(See Adams Decl., Exhibit 3, Arbitration Award and Opinion.) The Arbitrator framed the issue he was deciding as "[w]hether the Union must comply with the TLRO promulgated April 18, 2019, or the Tribe must comply with the MOA signed by the parties on August 7, 2017." *Id.*

In his Award, the Arbitrator decided the "Tribe must comply with the MOA signed by the parties on August 7, 2017." The Arbitrator set forth three reasons for his finding: (1) the Tribe agreed to the MOA and, "[n]othing suggests the Tribe was unaware that it was agreeing to permit the Union to organize its employees and gain recognition through the card check process described in ¶7;" (2) the Tribe's contention that the purpose of the MOA was "…to memorialize the tribe's promise to maintain neutrality while allowing the union to organize in exchange for the union's support of ratification of the compact []" was unsupported; and (3) "the Tribe fails to show that the TLRO is a law it made as a sovereign that takes precedence over the MOA." *Id.* In deciding that the Tribe must comply with the MOA, the Arbitrator improperly failed to recognize that he was giving precedence to an <u>agreement</u> (that itself incorporated the TLRO election process) over a <u>legislative enactment of a sovereign nation</u>, and the Award therefore should be vacated or corrected.

### III.    JURISDICTION

Regardless of whether the dispute resolution provisions of the TLRO or MOA apply to this matter, this Court has jurisdiction to consider this Motion. Section 3-213 (e) of the TLRO states, in pertinent part:

> Either party may seek a motion to compel arbitration or a motion to confirm or vacate an arbitration award … in the appropriate state superior court, unless a bilateral contract has been created in accordance with Section 3-207, in which case either party may proceed in federal court. The Tribe agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming or vacating an arbitration award issued pursuant to the Ordinance in the appropriate state superior court or in federal court.

(See Adams Decl., Exhibit 2, TLRO.) "Section 3-207" in the above passage refers to Section 3-207 of the TLRO, indicating that a bilateral contract is created between the Tribe and a union that delivers to

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA 95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD

8

CASE NO. 2:23-CV-02767-KJM-DB

the Tribe a written NOIO. *Id.*

Similarly, the dispute resolution paragraph (11) in the Parties' August 2017 MOA provides that the "United States District Court for the Eastern District of California" has exclusive jurisdiction "in any action concerning arbitration under this Agreement." (See Adams Decl., Exhibit 1, MOA.) Regardless of whether the Court determines the TLRO or MOA controls, this Court has jurisdiction to decide this matter.

### IV. STANDARD OF REVIEW

Section 1286.2(a) of the California Code of Civil Procedure ("California Arbitration Act" or "CAA") sets forth the grounds for vacating or correcting an arbitrator's award. Under the CAA, a court should vacate or correct an award if:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was corruption in any of the arbitrators;

(3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator;

**(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted;**

(5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title; or

(6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives.

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA 95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE
OR CORRECT ARBITRATION AWARD

9

CASE NO. 2:23-CV-02767-KJM-DB

Cal. Code Civ. Proc. § 1286.2(a). As related to the instant matter, and as discussed in more detail below, courts have explained that arbitrators exceed their powers within the meaning of Section 1286.2(a)(4) by issuing an award that "violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy."

## V. ARGUMENT

### A. The Legal Bases for Vacating or Correcting the Award

Courts have explained that arbitrators exceed their powers within the meaning of Section 1286.2(a)(4) of the CAA by issuing an award that "violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." *Richey v. AutoNation, Inc.,* 60 Cal.4th 909, 916 (2015). And although "[a]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact . . .," where the award violates a party's statutory rights or contravenes an explicit expression of public policy, the reviewing court should vacate or correct the award. *Richey* at 917; *see also Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal.4th 655, 679-80 (2010) (in another California Supreme Court decision, the Court found an arbitrator's legal error deprived a party of its statutory rights when the arbitrator misapplied the relevant tolling statute and incorrectly held that the party's claim was time-barred and, in so erring, "misconstrued the procedural framework under which the parties agreed the arbitration was to be conducted, rather than misinterpreting the law governing the claim itself.").

Since the *Pearson* decision, other California courts have vacated arbitration awards because they violate public policy or a party's statutory rights. For example, in *Ahdout v. Hekmatjah*, 213 Cal.App.4th 21, 31 (Ct. App. 2013), the court reversed the trial court's order confirming the arbitration award because the petitioner's challenge fell within the CAA's "public policy" exception to the general prohibition of judicial review of arbitration awards. In that case, the court found that Cal. Bus. & Prof. Code § 7031.5 constitutes a clear-cut and explicit legislative expression of public policy mandating the disgorgement of compensation received by an unlicensed contractor that the arbitrator failed to properly consider. Similarly, in *Honchariw v. FJM Private Mortg. Fund*, 83 Cal.App.5th 893, 898 (Ct. App. 2022), the court ruled that because the arbitration award violated California public policy, the

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE      10      CASE NO. 2:23-CV-02767-KJM-DB
OR CORRECT ARBITRATION AWARD

award had to be vacated. Also, in *Brown v. TGS Mgmt.*, 57 Cal.App.5th 303, 306 (Ct. App. 2020), the court reversed the trial court and set aside an arbitration award that found an employee violated his nondisclosure agreement (NDA) by disclosing confidential information because the arbitrator did not consider whether the definition of "confidential information" in the NDA was overbroad and violated Cal. Bus. & Prof. Code § 16600. Accordingly, this Court clearly has the ability to, and should, vacate or correct the Award in the instant case.

### B.     The Arbitrator Exceeded His Powers in Violation of Wilton's Statutory Rights.

In the Award, the Arbitrator exceeded his powers by refusing to recognize the Tribe as a sovereign government with legislative authority, ignoring the TLRO as a law, overlooking the explicit agreement of the Parties in the MOA that the TLRO's election process was controlling, and disregarding the precedence of a Tribal law over an agreement between two parties. Under the CAA, an arbitrator exceeds his powers when he enforces an illegal or unenforceable contract, waives a party's unwaivable statutory rights, or contravenes an explicit legislative intent. *See Richey* at 916; *see also Board of Educ. v. Round Valley Teachers Ass'n.,* 13 Cal.4th 269, 272–277 (1996) (arbitrator exceeded powers by giving effect to collective bargaining provisions that violated statutory rights in the Education Code); *California Dept. of Hum. Res. v. Serv. Employees Int'l Union, Local 1000*, 209 Cal.App.4th 1420, 1434 (2012) (arbitrator lacked power to make an award that violated explicit public policy favoring legislative oversight of state employee contracts when he interpreted a memorandum of understanding between the union and state to require salary increases the Legislature did not approve).

In *Moncharsh v. Heily Blase*, 3 Cal.4th 1, 32 (1992), the California Supreme Court stated that judicial review is warranted when a party claims an arbitrator enforced an entire contract or transaction that is illegal (*citing Loving & Evans v. Blick*, 33 Cal.2d 603, 609 (1949) (arbitrator could not enforce a contract that otherwise would have been void under state law because the contractor was unlicensed) and *All Points Traders, Inc. v. Barrington Assocs.*, 211 Cal. App. 3d 723, 738 (1989) (arbitrator could not enforce a contract awarding commissions to an unlicensed real estate broker in violation of state law). Similarly, in *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 868 (2019), the court held that arbitrators "exceed their powers when they act in a manner not authorized

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD      11      CASE NO. 2:23-CV-02767-KJM-DB

by the contract or by law, act without subject matter jurisdiction, decide an issue that was not submitted to arbitration, arbitrarily remake the contract, uphold an illegal contract, issue an award that violates a well-defined public policy, issue an award that violates a statutory right, fashion a remedy that is not rationally related to the contract, or select a remedy not authorized by law."

Here, the arbitrator erred by crediting the MOA, which is an illegal and unenforceable contract because it seeks to modify provisions of a legislatively-enacted law (the TLRO). Even more incredibly, the Arbitrator discounted former Tribal Chairman Hitchcock's testimony that the initial draft MOA the Union sent to the Tribe did not contain the direction that the TLRO provisions control labor relations matters in the Casino, but paragraph 2 of the final, signed version of the MOA unequivocally includes that language after the Tribe insisted on it:

> Q. Did you think the addition of this paragraph was important?
>
> A. Absolutely.
>
> Q. Why?
>
> …
>
> A. The Tribal Labor Relations Ordinance clearly adds a second piece, which is the secret ballot, which allows for the employees to be able to comfortably decide amongst themselves whether or not they want to unionize or not once card check has been reached.
>
> Q. BY MS. CARROLL: In signing the MOA, did you ever think you were giving up your right to a secret ballot?
>
> A. Absolutely not. That's why there's language in the MOA that clearly says the TLRO will govern.

(See Adams Decl., Exhibit 4, Hearing Transcript Excerpts at 52:10-13, 53:12.) By ignoring both the explicit, controlling provision in the MOA and the Tribe's unmistakable intent in negotiating for its inclusion, the Arbitrator exceeded his powers.

**C. The Arbitrator Failed to Acknowledge Wilton's Status as a Sovereign Nation.**

In his Award, it also is clear the Arbitrator disregarded the Tribe's status as a sovereign government as well as public policy and legislative intent favoring Tribal sovereignty generally. Such principles have been confirmed by the United States Supreme Court:

> I do not mean to overstate the point. Even in the heyday of the plenary-power theory, this Court never doubted that Tribes retain a variety of self-government powers. It has

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA 95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD    12    CASE NO. 2:23-CV-02767-KJM-DB

always acknowledged that Tribes are 'a separate people, with the power of regulating their internal and social relations.'

*Haaland v. Brackeen*, __ U.S. __, No. 21-376, at *76 (June 15, 2023) (Gorsuch, J., concurring) (quoting *United States v. Kagama*, 118 U.S. 375, 381-82 (1886).

The Arbitrator's Award overlooks the Tribe's sovereignty and unreasonably subordinates the TLRO and the Tribe's legislative process. For example, on page 19 of the Award, the Arbitrator states:

- "…the Tribe fails to show that the TLRO is a law it made as a sovereign that takes precedence over the MOA;"
- "In agreeing to that compact, the Tribe voluntarily gave up its right to legislate about labor relations;"
- "The TLRO exists only because the Tribe ceded its power to regulate labor relations to the State;" and
- "Passing the TLRO was not a sovereign act."

In finding that the MOA takes precedence over the TLRO, the Arbitrator further claimed that by entering into the Tribal-State Compact:

> The Tribe ceded its sovereign right to control labor relations in the casino. Consequently, enacting the TLRO in 2019 was not a sovereign act but a compact obligation to the State. Therefore, enacting the TLRO did not affect the Tribe's obligations under the MOA it negotiated with the Union.

Not only are these statements untrue, the Arbitrator blatantly disregarded and disrespected the Tribe's sovereignty and statutory rights.[2] Notably, (i) as a sovereign, the Tribe has the power and right to enact legislation impacting labor relations; (ii) in the Compact, the Tribe agreed to exercise this right by enacting the TLRO, not voluntarily giving up such a right; and (iii) sovereigns, such as the Tribe, regularly agree to enact legislation. *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 848 (2014)

---

[2] Illustrative of the Arbitrator's disregard for the Tribe's law and its sovereignty, the Arbitrator allowed into evidence several Tribal Labor Relations Ordinances of other tribes despite Wilton counsel's objections, and made those a crucial part of his Award. Wilton's objections included that considering testimony about "other tribes who have different law…would sort of be like making a decision about Canada and saying it relates to Mexico, or even one place within the EU within another, except the difference here is, of course, we own our own land." (See Adams Decl., Exhibit 4, Hearing Transcript Excerpts at 69:2-10.) As Wilton's counsel emphasized, "the TLRO of Wilton Rancheria is *different and governed by their law*." (Emphasis added). *Id.* at 65:21-25.

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD    13    CASE NO. 2:23-CV-02767-KJM-DB

("The United States…ratified the treaty in 1997" and "[t]o fulfill the United States' obligations…Congress enacted the Chemical Weapons Convention Implementation Act of 1998."); *Medellin v. Texas*, 552 U.S. 491, 526 (2008) ("[T]he terms of a non-self-executing treaty can become domestic law only in the same way as any other law--through passage of legislation[.]").

Indeed, former Chairman Hitchcock testified explicitly to the fact that the TLRO is a Tribal law, passed pursuant to the Tribe's legislative authority:

> Q. BY MS. CARROLL: Did a version of that Tribal Labor Relations Ordinance, which we've been calling the TLRO, did that later become tribal law?
> A. Yes, it did.
> Q. How did that happen?
> A. Through the tribal law process. It's an ordinance process that creates resolutions that actually enacts tribal law similar to any governmental entity.

(See Adams Decl., Exhibit 4, Hearing Transcript Excerpts at 52:24-52:6.) Throughout his Award, the Arbitrator thus wholly ignored the Tribe's statutory right to, as a sovereign government, enact legislation and negotiate a Compact with the State of California that includes an agreement to enact legislation.

### D. The Arbitrator Exceeded His Powers in Ruling That a Private Agreement Can Relieve a Party of Its Legal Obligations.

Finally, the Arbitrator's award defies logic and the rules of statutory interpretation and application. An earlier agreement that purports to relieve a party of its legal obligations under a law is perhaps illegal and is at least unenforceable. *See, e.g., Sayta v. Martin*, No. 16-cv-03775-LB, at *8 (N.D. Cal. Feb. 7, 2017) (citing *Green v. Mt. Diablo Hosp. Dist.*, 207 Cal.App.3d 63, 73 (Ct. App. 1989) (noting that "[c]ontracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts."). Here, the Union and Tribe signed the MOA in 2017, and the TLRO, a Tribal law with different requirements for the process a union and the Tribe must follow when that union seeks to represent the Casino's employees, was enacted by the Tribe in 2019. In essence, the Arbitrator's Award holds that the MOA, a private agreement between the Parties executed before the TLRO was enacted, can override the Tribe's and Union's obligations that were created when the TLRO was later passed. Simply said, parties cannot "contract around" compliance with a law.

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO VACATE
OR CORRECT ARBITRATION AWARD

14

CASE NO. 2:23-CV-02767-KJM-DB

As an illustration of how absurd this notion is, imagine if in 1948, the State of California and a union, while negotiating wages in a collective bargaining agreement ("CBA"), agreed to include a provision that the State will pay female employees less than male employees performing the same work. In 1949, California passed The California Equal Pay Act to prohibit employers from paying employees less than employees of the opposite sex for equal work. Clearly, the wage provision in that CBA would be illegal and unenforceable. But this is exactly what the Arbitration Award in the instant matter purports to do – give legitimacy to an (earlier) agreement over a (later-enacted) law that covers the same topics.

## VI.   CONCLUSION

Based on the foregoing, it is clear the Arbitrator exceeded his authority by, among other things, failing to recognize that Wilton Rancheria, a federally recognized Tribal sovereign government, has the power to enact binding legislation that takes precedence over an agreement between parties. In ruling that "the Tribe must comply with the MOA" and disregarding the TLRO enacted by the Tribe to cover labor relations, as well as the Parties agreement in the MOA that the TLRO governs Casino labor relations, including the process for union organizing highlighted by a secret ballot election for employees, "the arbitrator exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Cal. Code Civ. Proc. § 1286.2 (a)(4). Accordingly, this Court should vacate and correct the Award, and rule that the Parties must proceed under the provisions of the TLRO.

Respectfully submitted this 14th day of June 2024.

LITTLER MENDELSON, P.C.

/s/ *John H. Adams, Jr.*
John H. Adams, Jr.
Steven G. Biddle *(Pro Hac Vice Pending)*

Attorneys for Defendant
WILTON RANCHERIA

4867-3399-3672.1 / 124796-1001

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO VACATE OR CORRECT ARBITRATION AWARD    15    CASE NO. 2:23-CV-02767-KJM-DB