UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE,<br><br>                  Plaintiff,<br><br>      v.<br><br>Wilton Rancheria,<br><br>                  Defendant. | No. 2:23-cv-02767-KJM-SCR<br><br>ORDER |

Plaintiff UNITE HERE (the Union) seeks an order compelling defendant Wilton Rancheria (the Tribe) to arbitrate a dispute over the process for organizing the Tribe's casino employees into a union. The Tribe opposes and requests the court dismiss for lack of jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(5). For the reasons below, the court **denies the motion to dismiss** and **grants the motion to compel**.

I.    **BACKGROUND**

The Union is a labor organization representing employees in various industries including casinos, hotels and food service operations. Compl. ¶ 3, ECF No. 1. The Tribe is a federally recognized Indian tribe that owns Sky River Casino (the Casino). *Id.* ¶ 1. Boyd Gaming Corporation (the Operator) operates the Casino for the Tribe. *Id.*

In 2017, the Governor of California and the Chairman of the Tribe signed a Compact that authorizes the Tribe to operate the Casino under the Indian Gaming Regulatory Act, 25 U.S.C.

§ 2701 *et seq.*[1] *See generally* Compact, Req. Ex. 1, ECF No. 5-4. The Compact requires the Tribe to adopt "an ordinance identical to the Tribal Labor Relations Ordinance" (TLRO) attached to the Compact as "Appendix C" prior to operating the Casino. *Id.* § 12.10; Appendix C.[2] The Tribe subsequently enacted the TLRO, which then became part of the Tribe's Labor Code. MTD Mem. at 10,[3] ECF No. 5-1; TLRO, Req. Ex. 2, ECF No. 5-4.

After the Tribe signed the Compact, but before the Tribe enacted the TLRO, the Union, the Tribe and the Operator entered into a Memorandum of Agreement (Agreement). MTD Mem. at 8–9; Agreement, Compl. Ex. B, ECF No. 1. The Agreement provides "[t]he parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino." Agreement ¶ 2. The Agreement then sets out a process by which the Union could become the collective bargaining representative for certain classifications of employees (Employees) at the Casino. Agreement ¶ 7.

The process begins with the Union providing written notice to the Tribe or the Operator of its intent to organize Employees. *Id.* ¶ 5. Once notice is provided, then "the Tribe and the Operator shall provide access to its premises and to such Employees by the Union." *Id.* If the Union requests recognition as the exclusive collective bargaining agent, "[t]he arbitrator identified in Paragraph 11, or another person mutually agreed to by the parties" will conduct a "card check" process by reviewing "Employees' authorization cards and membership information

---

[1] The Tribe requests the court take judicial notice of (1) portions of the Tribal-State Gaming Compact between the Tribe and the State of California and (2) Chapter 3 of the Tribe's Labor Code enacted by the Tribe's legislative body in 2019. *See* Req. at 1, ECF No. 5-4. Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted). The Ninth Circuit has confirmed "matters of public record" include executed Compacts. *See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 968 n.4 (9th Cir. 2008). Furthermore, the court finds the contents of the Labor Code, referenced in this order as the TLRO, which was printed from the Tribe's website is not subject to reasonable dispute. *See Blue Lake Rancheria v. United States*, No. 08-4206 SC, 2010 WL 144989, at *2 (N.D. Cal. Jan. 8, 2010) (taking judicial notice of a printout from a tribe's website), *rev'd and remanded on other grounds*, 653 F.3d 1112 (9th Cir. 2011). Accordingly, the court **grants** the Tribe's unopposed request for judicial notice.

[2] Both parties have provided the court with a copy of Appendix C. *See* Compl. Ex. A, ECF No. 1; Req. Ex. 2 at 17, ECF No. 5-4.

[3] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

submitted by the Union in support of its claim to represent a majority of such Employees." *Id.* ¶ 7. Paragraph eleven provides the process for selecting an arbitrator from the Federal Mediation and Conciliation Service (FMCS). *Id.* ¶ 11. Further, paragraph eleven contains an arbitration clause, which states: "[t]he parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration." *Id.* "For the sole purpose of enabling a suit to compel arbitration . . . the Tribe agree[d] to a limited waiver of sovereign immunity." *Id.* ¶ 12.

In February 2023, the Union provided written notice of its intent to organize Employees covered by the Agreement. Compl. ¶ 22. The Tribe and Operator subsequently provided the Union's representatives access to the Employees in non-public areas of the Casino. *Id.* That same month, the Union reached out to the Operator's counsel requesting the identification of the Tribe's counsel. *See* Identity E-mails, Compl. Ex. E, ECF No. 1. The Union then requested the FMCS provide a list of seven arbitrators. *See* FMCS List, Compl. Ex. D, ECF No. 1.

Ultimately, counsel for the Union and the Tribe connected in June 2023. *See* June E-mails, Compl. Ex. G, ECF No. 1; Connection E-mails, Compl. Ex. F, ECF No. 1. However, counsel for the Union and the Tribe disagreed over the appropriate Union recognition process. *See* June E-mails. In contrast to the one-step "card check" process laid out in the Agreement, the TLRO provides for a two-step process, which includes both a card check and a secret ballot election. TLRO § 3-210. The Union sought to proceed under the Agreement, while the Tribe sought to "harmonize[] the parties' [A]greement [] and the Tribal Labor Relations Ordinance of 2019." June E-mails.

The Union then emailed a letter to the Tribe and the Operator and stated the Union had collected authorization cards from a majority of Employees; it requested "recognition as the exclusive collective bargaining agent for such employees." Unite Here Notification E-mail, Compl. Ex. H, ECF No. 1. The Casino's President and Chief Operating Officer responded stating "[b]ased on your assertion, there is no need to continue the card collection process," so security will "collect all visitor badges that have been assigned to [the Union's] team." Union Access E-
/////

3

mails, Compl. Ex. I, ECF No. 1.  Thereafter, the Union lost access to the non-public areas of the Casino.  Compl. ¶ 31.

In August 2023, the Tribe submitted a demand for arbitration to the American Arbitration Association (AAA).  AAA Demand at 86, Compl. Ex. J, ECF No. 1; Christina Kazhe Decl. ¶ 11, ECF No. 5-3.  In contrast to the terms of the Agreement, the TLRO provides arbitration must occur before an arbitrator who is a member of the Tribal Labor Panel.  Compl. ¶ 35; TLRO § 3-213.  In its demand, the Tribe states the Union "refuses to comply with the two-step certification process and the dispute resolution mechanism identified in the TLRO, [instead] relying on [] [the] [A]greement."  AAA Demand at 86.  The Tribe sought the following remedy: "[a] determination that [the Union] must comply with the two-step certification process identified in the TLRO and resolve any disputes pursuant to the dispute resolution mechanism identified in the TLRO."  *Id.*  The same day, the Tribe filed a petition in the Wilton Rancheria Tribal Court seeking to compel arbitration, "given the Union's prior refusal to agree to arbitrate the dispute."  MTD Mem. at 12; Petition, Kazhe Decl. Ex. D, ECF No. 5-3.

The Union proceeded to make "repeated assurances" that it would engage in arbitration, which resulted in "two extensions of the Union's answer deadline and a stay in the Wilton Rancheria Tribal State Court proceeding."  Kazhe Decl. ¶ 13; Tribal State Court Orders, Kazhe Decl. Ex. E, ECF No. 5-3.

In October 2023, the Union "agre[ed] to arbitrate, under the TLRO's arbitration procedures, the dispute about whether the [Agreement] between the Tribe, [Operator] and [Union] violate[d] the TLRO."  October E-mail, Kazhe Decl. Ex. F, ECF No. 5-3.  The Union alleges it "agreed with the goal of expediting resolution of the parties' dispute about the validity of the card-check process required by paragraph 7 of the Agreement and so the card check could be completed."  Compl. ¶ 36.

In early November 2023, the Union and the Tribe selected Norman Brand to serve as their arbitrator.  *Id.* ¶ 37.  The parties scheduled the arbitration hearing for February 8, 2024.  *Id.*; Sheila Lamb Carroll Decl. ¶ 3, ECF No. 5-2.

/////

On November 27, 2023, the Union asked if the Tribe would agree "that if Arbitrator Brand decides in the Union's favor, Arbitrator Brand will be the arbitrator to conduct the card check." Arbitration Scope E-mails at 90, Compl. Ex. K, ECF No. 1. The Tribe responded saying it could not "currently agree to Arbitrator Brand conducting a card check if Arbitrator Brand's decision is in the Union's favor." *Id.* at 89. In explanation, the Tribe stated, "[t]he remedy sought includes a determination that [the Union] must comply with the certification process identified in the TLRO, not a decision on whether the card check under the [Agreement] may proceed." *Id.*

The Union then sent a letter to Arbitrator Brand seeking "to clarify the issue or issues that will be presented[.]" Union November 2023 Letter at 7, Carroll Decl. Ex. J, ECF No. 5-2. First, it sought to clarify whether the Tribe's demand includes "whether the card check under the [Agreement] may proceed." *Id.* at 9. Second, it requested the Arbitrator "decide the related issue of whether the paragraph 5 of the [Agreement] is valid or if the TLRO somehow voids that provision." *Id.* The Tribe sent an opposition letter objecting in part to the Union's "attempts to restructure the issue(s) at dispute." Tribe Letter at 19, Carroll Decl. Ex. K, ECF No. 5-2. In the letter, the Tribe stated the Union had "plenty of opportunities to refuse arbitration and/or pursue alternative dispute resolution mechanisms if [the Union] did not agree with the issue(s) presented in the Demand for Arbitration." *Id.* On December 15, Arbitrator Brand issued a Case Management Order, memorializing the parties' agreement that the issue before him was "[w]hether the Union must comply with the TLRO promulgated April 18, 2019 or the Tribe must comply with the [Agreement] signed by the parties on August 7, 2017." Brand Case Mgmt. Order, Carroll Decl. Ex. A, ECF No. 10-2.

In the interim, the Union filed its complaint in this court. *See generally* Compl. The Union alleged "[d]elay in selecting the arbitrator under paragraph 11 of the Agreement until after Arbitrator Brand decides whether the Agreement is valid will further delay the card-check process and recognition of the Union under paragraph 7 of the Agreement." Compl. ¶ 39. Further, the Union claimed such delay "will cause the Union irreparable harm." *Id.*

A few days later, the Union filed its motion to compel arbitration. *See generally* Compel Mot., ECF No. 4. Specifically, the Union seeks an order: (1) compelling the Tribe to participate

5

in selecting the Agreement's sole arbitrator; (2) compelling the Tribe "to take any steps necessary to enable the Agreement's sole arbitrator, or another mutually agreeable arbitrator, to conduct the card check required by paragraph 7 of the Agreement" and (3) compelling the Tribe to arbitrate a dispute over whether the Union's representatives have a continued right of access to non-public areas of the Casino after the Union is recognized as the employees' collective bargaining representative. Compel Mem. at 9–10, ECF No. 4. The Union's motion to compel has been fully briefed. *See generally* Compel Opp'n, ECF No. 6; Compel Reply, ECF No. 7.

Concurrently, the Tribe filed its motion to dismiss, arguing this court does not have subject matter jurisdiction because the Union's claim is unripe, and the Union did not properly serve the Tribe. *See* MTD at 1, ECF No. 5. The motion to dismiss is also fully briefed. *See generally* MTD Opp'n, ECF No. 8; MTD Reply, ECF No. 10. The court heard arguments on both motions on January 26, 2024. Hr'g Mins., ECF No. 12. Kristin Martin appeared for the Union and Sheila Lamb Carroll appeared for the Tribe. *Id.*

At hearing, the court sought to clarify whether all the issues raised in the motion to compel could be resolved before Arbitrator Brand and questioned whether a stay was appropriate given the arbitration proceeding was set to begin within two weeks. *See* Tr. at 10, ECF No. 19. The Union argued there were some issues Arbitrator Brand would be unable to decide, but stated they would stipulate that a future arbitrator chosen under the Agreement should defer to Arbitrator Brand's determination of validity. *Id.* at 11:12–24. The Tribe's counsel stated "we may stipulate to that" but argued a ruling from Arbitrator Brand was first needed, so the parties understood what parts of the Agreement applied. *Id.* at 12:5–17. The parties later stated they may be willing to stipulate to a follow-up arbitration proceeding before Arbitrator Brand. *Id.* at 13:22–14:16; *see also* Compel Reply at 6 n.2.

The court directed the parties to meet and confer and file a joint status report informing the court whether the parties had in fact reached a stipulation, or anything about the posture of the case had changed. *Id.* at 19:2–23:25; Hr'g Mins., ECF No. 12. In their joint status report, the parties indicated Arbitrator Brand would issue a decision no later than March 16, 2024. *See* First JSR, ECF No. 15. On February 23, 2024, this court stayed the matter pending the resolution of

6

the arbitration proceedings before Arbitrator Brand. *See* Min. Order, ECF No. 16. In doing so, the court directed the parties to file a joint status report no later than fourteen (14) days after Arbitrator Brand issued his decision. *Id.* The court further ordered the parties to indicate whether the stay should be lifted, how the decision impacted the pending matters before this court and whether a supplemental briefing schedule would be required. *Id.* Arbitrator Brand issued an award on March 17, 2024, finding "[t]he Tribe must comply with the [Agreement] signed by the parties on August 7, 2017." Award, Second JSR Attach., ECF No. 18. The parties then filed a joint status report with their respective positions. *See generally* Second JSR, ECF No. 18. Following a review of the parties' second joint status report, the court lifted the previously imposed stay, declined the Tribe's request for supplemental briefing and submitted the pending motion to compel and motion to dismiss. *See* Prior Order (Apr. 19, 2024), ECF No. 20.

## II.   MOTION TO DISMISS

In every case, the threshold question a federal court must answer affirmatively is whether it has jurisdiction. *See United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments."). This inquiry includes evaluating whether a claim is ripe for review. *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015). Ripeness pertains to federal courts' subject matter jurisdiction and is therefore properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). This inquiry also includes evaluating whether a defendant was properly served in accordance with Federal Rule of Civil Procedure 4. *SEC v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir.2007). Here, the Tribe seeks to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction on ripeness grounds and under Rule 12(b)(5) for insufficient service of process. *See generally* MTD. The court evaluates these arguments in turn.

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction: Ripeness

Rule 12(b)(1) attacks on jurisdiction can either be facial, confining the court's inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack contends "that the allegations

7

contained in a complaint are insufficient on their face to invoke federal jurisdiction," while a factual attack contests "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the Tribe's motion is a factual attack, supported by sworn affidavits and other evidence properly brought before the court at this stage. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). Accordingly, the party opposing the motion—the Union—must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Specifically, the Union must demonstrate the instant controversy is ripe for review.

Ripeness is a "question of timing[.]" *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (internal marks and citations omitted). It "separate[s] matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Id.* The ripeness inquiry is "intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009) (internal marks and citations omitted). A question is ripe for decision when it can be decided without considering "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122–23 (9th Cir. 2010) (internal marks and citations omitted).

"Ripeness is both a constitutional and a prudential doctrine." *Maldonado*, 556 F.3d at 1044. The constitutional inquiry looks to whether there is a live case or controversy and "the issues presented are definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (internal marks and citation omitted). The prudential test for ripeness is two-pronged in that the court must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

/////

Here, the Union argues "the ripeness doctrine does not deprive the [c]ourt of jurisdiction to address the injury caused by [the] Tribe' refusal to arbitrate." MTD Opp'n at 3. According to the Union, the dispute is ripe—and has been ripe—since the Tribe refused to select an Arbitrator under the Agreement to conduct the card-check. *Id.* The Union states "[t]he issue – whether the Tribe must select an arbitrator and arbitrate disputes under the Agreement – is ready for the court to decide." *Id.* at 6. The court agrees. When the Union filed the motion to compel arbitration there was, and continues to be, a live dispute between the parties regarding the interpretation and application of the Agreement. These disputes were not, as the Tribe contends, contingent on a "favorable ruling from Arbitrator Brand." Compel Opp'n at 7.

For example, the Agreement provides that after the Union collects Employees' authorization cards and requests recognition as the exclusive bargaining agent, a mutually agreed upon arbitrator will count the cards. *See* Agreement ¶¶ 5, 7, 11. The Union has collected the Employees' authorization cards, and the Tribe has refused to select an arbitrator under the Agreement to count the cards. Unite Here Notification E-mail; June E-mails. Further, the Agreement provides that if the Union provides written notice to the Tribe or the Operator of its intent to organize Employees, the Tribe and the Operator shall provide access to its premises. Agreement ¶ 5. The Union has provided written notice and the Operator had provided access to its premises, but then revoked access. *See* Unite Here Notification E-mail; Union Access E-mails. These issues are not abstract nor contingent on a future event. *See Maldonado*, 556 F.3d at 1044. While Arbitrator Brand's decision bears upon the issues raised in the instant motion to compel, the decision itself was not a "condition precedent" as the Tribe suggests. Instead, as described further below, the question of whether the Union can rely on the Agreement's process for certifying a union as a collective bargaining representative given the TLRO's conflicting procedure is a defense to enforcement of the Agreement as a whole. Arbitrator Brand's decision on this issue is not—and was not—a condition precedent rendering the instant motion to compel unripe. *See* Compel Opp'n at 6; Brand Case Mgmt. Order ¶ 9. Therefore, the question of whether to compel the parties to arbitrate the disputes under the Agreement is ready, and has been ready, for the court to decide.

9

**B.     Motion to Dismiss for Insufficient Service**

Courts also lack jurisdiction over a defendant who has not been properly served under Federal Rule of Civil Procedure 4. *SEC*, 504 F.3d at 1138–39. Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a party may file a motion to dismiss for "insufficient service of process." When service is challenged, plaintiff has the burden of establishing its validity. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). A court may quash service, rather than dismiss the action, if there is no prejudice to the defendant and it appears proper service can be effected. *Stevens v. Sec. Pac. Natl Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976); *see also Team Enterprises, LLC v. Western Investment Real Estate Trust*, 2008 WL 4367560, at *1 (E.D. Cal. 2008).

While plaintiff previously has not completed service, *see* MTD Mem. at 21, it has now served the Tribe, *see* Kristin L. Martin Decl. ¶¶ 2–3, ECF No. 8-1; MTD Reply at 10. At hearing, the Tribe conceded the service issue is moot. Tr. at 2:24–25. Accordingly, the court **declines** to dismiss this case for insufficient service of process.

**III.     MOTION TO COMPEL ARBITRATION**

The Union moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4 (FAA). *See* Compel Mot. at 1. The FAA "reflects the fundamental principle that arbitration is a matter of contract" and like other contracts, arbitration agreements can be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The FAA also allows district courts to hear motions to compel arbitration. 9 U.S.C. § 4. A court must normally answer two questions in response to a motion to compel arbitration: (1) whether the parties agreed to arbitrate; and (2) whether their agreement covers the dispute the plaintiff has brought before the court. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The party moving to compel arbitration bears the burden to prove these elements by a preponderance of evidence. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th

/////

Cir. 2014). If the party moving to compel carries that burden, arbitration is mandatory, not discretionary. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### A. Valid Agreement to Arbitrate Exists

As the party seeking to compel arbitration, the Union bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson*, 771 F.3d at 565 (citation omitted). Under the FAA, courts apply state contract law to determine whether there is a valid agreement to arbitrate. *Id.* (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)). In California, a contract is formed if the (1) parties are capable of contracting; (2) they consent; (3) there is a lawful object; and (4) there is sufficient cause or consideration. Cal. Civ. Code § 1550.

The Tribe concedes the parties entered into an Agreement. Compel Opp'n at 14; *see generally* Agreement. However, the Tribe contends the Agreement cannot be read in isolation from the TLRO, which "is Tribal Law that must be followed[.]" *Id.* at 15. Specifically, the Tribe notes the TLRO and the Agreement set forth conflicting procedures for (1) selecting an arbitrator to oversee the card check process and (2) resolving disputes through arbitration. *Id.*

A party may challenge validity under 9 U.S.C. § 2 in two ways. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70. The first way challenges "the validity of the agreement to arbitrate." *Id.* (internal marks and citation omitted). The second way challenges "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). A challenge to the Agreement as a whole, rather than the specific arbitration provision, is a question for the arbitrator—not the court. *Buckeye Check Cashing, Inc.*, 546 U.S. at 446; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (federal court may adjudicate claim for "fraud in the inducement of the arbitration clause" but not "fraud in the inducement of the contract generally").

In a comparable case, the Ninth Circuit held the argument that the National Labor Relations Act preempted another Tribal Labor Relations Ordinance where the two conflicted was

11

1   "a challenge to the contract [, namely, the TLRO,] as a whole." *See Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 703 (9th Cir. 2022). Similarly, here, the Tribe's argument that Tribal Law, rather than the Agreement, "must be followed" is a challenge to the Agreement as a whole. *See* Compel Opp'n at 15.

At the time this issue was briefed, the parties were set to arbitrate whether they had to comply with the TLRO or the Agreement before Arbitrator Brand. *See* Brand Case Mgmt. Order. However, as noted above, while the outcome of the arbitration before Arbitrator Brand impacts the instant motion to compel, it does not detract from the conclusion that the Union has shown by a preponderance of the evidence that the Agreement contains a valid provision to arbitrate. *See also Unite Here Loc. 30,* at 704 (noting "federal courts apply a presumption in favor of arbitrability" (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960))).

### B.    Arbitration Agreement Covers Disputes at Issue

Next, the court turns to whether the arbitration provision in the Agreement covers the relevant dispute. *Brennan*, 796 F.3d at 1130. The arbitration provision provides "[t]he parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration." Agreement ¶ 11. Here, as discussed above, the Union seeks to compel the Tribe to: (1) select an arbitrator as outlined in paragraph eleven of the Agreement, (2) enable the Agreement's sole arbitrator, or another agreed upon arbitrator, to conduct the card check process outlined in paragraph seven of the Agreement and (3) arbitrate the access dispute under paragraph five of the Agreement. *See* Compel Mot. at 7. Each of these issues relates directly to how the Agreement is interpreted or applied. For example, whether the parties must select an arbitrator under the Agreement is a question directly related to the "application" of the Agreement. While the Tribe initially argued this court needed to await Arbitrator Brand's decision prior to ruling on this issue, *see* Compel Opp'n at 17, this argument did not and does not negate the fact that this dispute relates to the Agreement's application. Additionally, whether the arbitrator can conduct the card check process outlined in the Agreement and whether the Tribe violated the Agreement by revoking the Union's access to Employees are

1  interpretation or application questions, which the parties agreed the arbitrator would resolve.
2  Therefore, because there is a valid arbitration provision contained in the Agreement and the
3  disputes are covered under the provision, arbitration under the Agreement is mandatory.  *See* 9
4  U.S.C. § 2; *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.
5       To the extent the Tribe argues arbitrating under the Agreement interferes with its
6  sovereign immunity, this argument is unpersuasive given the record here.  "[W]hen a tribe agrees
7  to judicial enforcement of an arbitration agreement it waives its immunity concerning that
8  agreement."  *Unite Here Loc. 30*, 35 F.4th at 704 (citing *C & L Enters. v. Citizen Band
9  Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418–20 (2001)).  The Tribe expressly waived its
10 sovereign immunity "[f]or the sole purpose of enabling a suit to compel arbitration" and
11 "consent[ed] to be sued in federal court."  Agreement ¶ 12.

12 **IV.   CONCLUSION**

13      For the reasons set forth above, the court **denies** the Tribe's motion to dismiss and **grants**
14 the union's motion to compel.  The parties are directed to inform the court within seven (7) days
15 whether in light of this order, this action should be stayed under 9 U.S.C. § 3 or dismissed in its
16 entirety.  *Compare Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014)
17 (holding that "notwithstanding the language of § 3, a district court may either stay the action or
18 dismiss it outright when, as here, the court determines that all of the claims raised in the action
19 are subject to arbitration") *with Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (when "a party
20 requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding"); *see
21 also* 9 U.S.C. § 3 (after determining an issue is referrable to arbitration, courts "shall on
22 application of one of the parties stay the trial of the action").

23      This order resolves ECF Nos. 4 and 5.
24      IT IS SO ORDERED.
25 DATED: August 6, 2024.

CHIEF UNITED STATES DISTRICT JUDGE