John H. Adams, Jr., CA Bar No. 253341
jhadams@littler.com
Steven G. Biddle (Pro Hac Vice)
sbiddle@littler.com
LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
Telephone:     916-830-7200
Fax No.:       916-560-5136

Attorneys for Defendant
WILTON RANCHERIA

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Unite Here,<br><br>        Plaintiff,<br><br>    v.<br><br>Wilton Rancheria,<br><br>        Defendant. | Case No. 2:23-CV-02767-KJM-SCR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER**<br><br>DATE:     October 31, 2024<br>TIME:     10:00 a.m.<br>CTRM:    3 (15th Floor)<br>JUDGE:   Honorable Kimberly J. Mueller |

## I.    INTRODUCTION

Defendant Wilton Rancheria ("Wilton" or the "Tribe"), by and through its undersigned counsel, hereby submits this Memorandum of Points and Authorities in Support of its Opposition to Plaintiff's Motion to Hold Defendant Wilton Rancheria in Contempt of the Court's August 7, 2024 Order ("Motion"). ECF No. 41. As explained below, Wilton has complied with the Court's Order (ECF No. 32).  In fact, following the necessary resolution of key issues—which the Union notably does not acknowledge in its Motion—the Parties are in receipt of a new FMCS list of arbitrators and are set to select an arbitrator by October 14, 2024. Therefore, there is no basis for the Union's claim that the Tribe failed to comply with the Court's August 7 Order and no support for sanctions against Wilton.

LITTLER MENDELSON, P.C.
500 Capitol Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER

CASE NO. 2:23-CV-02767-KJM-SCR

The Union's allegations that the Tribe disregarded the Court's Order and stalled arbitration are undercut by the Tribe's extensive written and telephonic communications with counsel for the Union in an attempt to resolve the matter of selecting an arbitrator who complied with the qualifying requirements in the Parties' agreement to arbitrate and proceed to arbitration. Indeed, on the same day the Union filed the instant Motion, the Parties were engaged in discussions to select an arbitrator "from any other source" as permitted by paragraph 11 of the Parties' 2017 Memorandum of Agreement ("MOA") (*see* Exhibit 1). As requested by the Union, the Tribe found and proposed several different arbitrators on multiple occasions, including on the date the Motion was filed. After the Union filed the Motion and unilaterally contacted an arbitrator inappropriately claiming Wilton had consented to the arbitrator, it became apparent the Parties would not be able to select an arbitrator "[b]y mutual agreement . . . from any other source." Accordingly, the Parties determined to solicit a new FMCS list from which an arbitrator would be chosen. Notably, the Union prematurely filed its Motion *one day prior* to the date it told Wilton it would seek the Court's intervention if the Parties had not agreed to a method of selecting an arbitrator. Thus, in addition to misrepresenting Wilton's diligent attempts to comply with the Court's Order, the Union also failed to abide by section 4(A) of the Court's Civil Standing Order requiring a party prior to filing a motion to "meet and confer to discuss thoroughly the substance of the contemplated motion and any potential resolution." It is therefore demonstrably untrue that "[e]fforts to resolve the issue raised by this motion have been exhausted."

For these reasons, Wilton requests that the Court deny the Union's Motion in its entirety and sanction the Union in the amount of the attorneys' fees Wilton has had to expend in opposing the Union's unwarranted Motion.

## II.    FACTUAL BACKGROUND

On August 8, 2024, the day after the Parties received the Court's August 7 Order, counsel for the Parties began discussing the process for complying with the Order, including submitting a report to the Court and choosing an arbitrator to decide the remaining issues in this dispute. Based on the Court's August 7 Order, paragraph 11 of the MOA, the dispute resolution section, controls the selection of an arbitrator. In relevant part, paragraph 11 directs that:

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

The Tribe's and the Union's representatives shall meet within fourteen (14) calendar days after the receipt of a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). Selection of a sole and impartial arbitrator shall be made by the Tribe and the Union representatives each alternately striking, with Union making the first strike, one (1) name from a seven (7) member panel of arbitrators, received from the ("FMCS"), who are members of the National Academy of Arbitrators and who reside in California, Arizona, New Mexico or Nevada. The person whose name remains will be requested to serve as the impartial arbitrator. By mutual agreement, the parties may waive the use of the panel named above and refer the matter in dispute to an arbitrator selected from any other source.

The provision therefore presented several issues the Parties needed to resolve in order to comply with the Court's Order. First, the Parties had not received an FMCS list since the Union obtained the original list on March 8, 2023, almost 1½ years prior to the Court's August 7 Order, thereby rendering selection of an arbitrator from that list "within fourteen (14) calendar days after the receipt of [the] panel" impossible and making the list stale. Second, the arbitrators on the 2023 list did not comply with the requirement in paragraph 11 that the arbitrators "reside in California, Arizona, New Mexico or Nevada." In fact, of the seven arbitrators on that list, five have their primary addresses outside of those states—two from Illinois, one from Georgia, one from Texas, and one from Colorado. Accordingly, the Tribe was justified in suggesting, from the outset, that the Parties either choose a different, mutually-acceptable arbitrator or seek a new list of arbitrators from FMCS that comports with the stated requirements.

A chronology of the significant and warranted discussions between counsel for the Union and counsel for the Tribe to select a new arbitrator establishes Wilton's diligent and good faith efforts to comply with the Court's Order. These events support the Tribe's position that it engaged in sincere negotiations and confirms that the Union's Motion is without merit.

- Shortly after the Order was issued, counsel for the Parties exchanged emails regarding the Order and scheduled a call for Monday, August 12.

- During the August 12 call, counsel for the Parties discussed preparing a joint status report to the Court as directed in the Order, and subsequently exchanged draft reports. Counsel did not discuss the selection of an arbitrator.

- On August 14, the Union's counsel informed counsel for the Tribe that it did not want to submit a joint report. The Parties submitted separate reports.

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER

3

CASE NO. 2:23-CV-02767-KJM-SCR

- On August 26, the Union's counsel made its first attempt to select an arbitrator, sending a letter to Wilton's counsel requesting Wilton's counsel's availability. *See* Exhibit 2. The Union's August 26 letter did not include the attachment referenced in the letter.

- On September 2, Wilton's counsel informed Union's counsel (1) that the Union's letter was missing the referenced attachment, and (2) of some preliminary thoughts, including that the Parties should probably request an updated list of arbitrators from FMCS. That same day, Union's counsel responded by (1) providing the missing attachment, and (2) stating that "[i]f [the Tribe] want[s] to propose another arbitrator, on whom [the Union] might agree, please do so." *See* Exhibit 3.

- On September 6, Union's counsel emailed Wilton's counsel asking for a telephone conference on Monday, September 9. Wilton's counsel responded that he had a deposition that day but was available the following day (Tuesday). Union's counsel responded by stating that she was unavailable on Tuesday and suggesting a call on Friday, September 13, to which both Parties agreed. *See* Exhibit 4.

- On September 13, counsel for the Parties held the call and discussed options for selecting an arbitrator pursuant to paragraph 11 of the Parties' MOA, including the possibility of obtaining a new FMCS list or mutually agreeing to an arbitrator "from any other source." To that end, it was discussed that Wilton would research possible alternate labor arbitrators and compile a list to send to the Union for consideration.

- On September 16, Union's counsel sent a letter to Wilton's counsel purportedly summarizing the September 13 call. *See* Exhibit 5. The letter misrepresented Wilton's counsel's remarks and the Tribe's position. Notably, however, the Union's letter confirms *again* that "if [Wilton] wanted to propose a different arbitrator, [the Union] would consider the proposal."

- On September 18, Wilton's counsel emailed Union's counsel stating that Wilton's counsel was working on a comprehensive response to the Union and would send that shortly. *See* Exhibit 6.

- On September 19, before Wilton's counsel could finalize the comprehensive response and list of potential arbitrators, Union's counsel sent an email stating, "[the Union] is not interested in anything less than compliance with the parties' agreement." *See* Exhibit 6. Counsel's remarks were puzzling to Wilton because following paragraph 11 of the MOA was the position Wilton had been espousing in the ongoing communications between counsel.

- On September 20, Wilton's counsel sent a letter to Union's counsel clarifying the misrepresentations regarding the September 13 call and detailing the reasons the old 2023 FMCS list of arbitrators did not comply with the MOA, including the residency and timing requirements. *See* Exhibit 7. The September 20 letter also briefly addressed the issue(s) before the arbitrator and inquired into the Union's position on the selection of the "Type of Industry" to avoid the possibility of further delay (if, for example, the Parties receive a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER

4

CASE NO. 2:23-CV-02767-KJM-SCR

LITTLER MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

new list and subsequently disagree on the issue(s) or the "Type of Industry" selection). Finally, the September 20 letter, following the repeated telephonic and written confirmation that the Union would consider alternative arbitrators, presented a list of five well-known, California-based labor arbitrators for the Union's consideration.

- Late that afternoon, on a Friday at 4:47 PM, Union's counsel emailed Wilton's counsel, who had already left for the day to attend a reception. Union's counsel had apparently misinterpreted Wilton's counsel's September 20 letter and sought to clarify whether Wilton was willing to use any of the arbitrators listed in the September 20 letter. To clarify, Union's counsel asked "if my client selects one of them, then will that person be the Agreement's sole arbitrator?" *See* Exhibit 8.

- Before providing any reasonable opportunity to respond, Union's counsel emailed Wilton's counsel on Saturday, September 21, stating "I don't know why you have not responded to my email below" and "Please respond this weekend or let me know if you are available to speak on Monday." *See* Exhibit 9.

- On Monday September 23, Wilton's counsel responded, reiterating that the list of five arbitrators were names Wilton put forward for discussion with the Union, as the Union's counsel had requested Wilton's counsel do. *See* Exhibit 10. The September 23 email stated that the list of arbitrators were "intended to be an alternative to the 2023 [FMCS] list because of the issues we've already discussed with that list, and were included just as possibilities for the parties to consider because, at this point, [the Tribe has] not even contacted them to determine their interest and availability in presiding over this arbitration." In addition to the offer to discuss the matter in a telephone call, the September 23 email provided the Union with three options to move forward, each of which would lead to the selection of an arbitrator: (1) "If the listed five are possibilities, [Wilton's counsel] would be happy to contact their offices to see about their availability and interest and report back to [Union's counsel], and then [the Parties] could either agree on someone remaining on the list or take turns striking names;" (2) "if the Union would like to provide…a few additional arbitrators for the Tribe to consider, please do so;" and (3) "request a new FMCS list."

- In two follow-up emails on September 23, Union's counsel first asked that counsel have a call on Wednesday, September 25 and, in a subsequent email, stated that the Union is "not interested in picking from a list of arbitrators whom you have selected, or negotiating about a list of arbitrators from whom we can select." *See* Exhibit 10. Not only is this inconsistent with the prior telephonic and written correspondence between the Parties, the Union's September 23 email is inconsistent with itself. Immediately following the above-mentioned statement, the Union's counsel stated, again, that "If you want to propose one or more arbitrators who the Tribe would accept as the Agreement's sole arbitrator, we will consider the suggestions." *See* Exhibit 10.

- The following day, September 24, Wilton's counsel emailed the Union's counsel in preparation for their planned September 25 call, stating: (1) the "August 7 Order includes compelling the Tribe to select an arbitrator under the MOA," "the Tribe has identified

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO HOLD DEFENDANT
WILTON RANCHERIA IN CONTEMPT OF THE
COURT'S AUGUST 7, 2024 ORDER

5          CASE NO. 2:23-CV-02767-KJM-SCR

certain objections to the old FMCS list" that "were based on the MOA itself and practical considerations," and that "[t]he Union has not responded to these objections;" (2) Union's counsel "offered that the Union would consider other arbitrators beyond FMCS, as allowed under the MOA" and the Tribe "took the time to research potential arbitrators suitable for the dispute and presented them to you for the Union's input" but "the Union did not provide any input or rationale for rejecting these names;" (3) that the Tribe "also offered to use a new FMCS list … or continue to research potential candidates to get to a more definitive list;" and (4) "[t]hus far, the Union, and not the Tribe, has refused to engage in a method for selecting a mutually agreeable arbitrator." *See* Exhibit 10.

- During the September 25 call, Wilton's counsel focused on attempting to agree to a path forward, highlighting (to the Union's agreement) that the Parties can obtain a more appropriate arbitrator by mutual agreement than by use of an FMCS list (whether old or new). Union's counsel, on the other hand, was noncommittal to any path forward, demanded to know *on the call* which arbitrators were acceptable to the Tribe (seemingly allowing the Union to refuse to use those arbitrators and effectively receiving extra strike(s) from the panel of arbitrators), and threatened the pending Motion on several occasions. Eventually, Union's counsel indicated, for the first time, that they would be amenable to a new FMCS list. Wilton's counsel stated that the Tribe also would present two to three arbitrators from the prior list of five that would definitely be acceptable to the Tribe despite the undue benefit to the Union of receiving extra strike(s).

- After the September 25 telephone conference, the Union's counsel sent an email "to confirm how we left things" in which she, again, misstated the conversation. The email stated that Wilton's counsel would confirm the selection of one or both options presented in the email. The first option was that "[t]he Tribe will agree to any of the five arbitrators whose names you sent me by letter last week, and the Union may select any one of them to be the Agreement's sole arbitrator." Not only is this inconsistent with the telephone conference but, as the Tribe had confirmed in writing, this was never the option the Tribe was presenting. The second option from the Union was that "[t]he Tribe will select from a new list obtained from the FMCS following the criteria in the agreement" (i.e., compliance with the residency requirement, as the request itself would resolve the timing requirement). *See* Exhibit 10.

- The following day, September 26, at 11:59 a.m., Wilton's counsel responded to clarify the September 25 call and the Tribe's position stating, again, that the Parties "did not discuss one option being that the Tribe would affirm that it was OK choosing <u>any</u> of the five arbitrators on the list and then the Union could pick any one of them to serve as the arbitrator." Wilton's counsel further clarified that "the list of five I sen[t] you consists of active, experienced California-based labor arbitrators for the Union and Tribe to consider, and the option we discussed yesterday was that I would tell you by this morning 2-3 of the arbitrators on the list the Tribe would find [to be definitively] acceptable." Wilton's counsel then presented "Mark Burstein or Matthew Goldberg" as definitively acceptable arbitrators for the Tribe and, in an effort to expedite matters, offered to "contact Mr. Burstein's and Mr. Goldberg's offices to ask about their availability, rates. etc." and report back to Union's counsel. *See* Exhibit 11.

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO HOLD DEFENDANT
WILTON RANCHERIA IN CONTEMPT OF THE
COURT'S AUGUST 7, 2024 ORDER

6                 CASE NO. 2:23-CV-02767-KJM-SCR

- That same day, at 12:12 p.m., Union's counsel responded by rejecting the two proffered names, failing to present an arbitrator of their own, and again mischaracterizing Wilton's counsel's correspondence. *See* Exhibit 11. After repeatedly stating, both telephonically and in email correspondence, that the Tribe was willing to discuss the list of five arbitrators or strike from the list (in addition to all of the other options the Tribe presented), the Union's counsel stated that "[y]ou now have made clear that the Tribe will not agree to any of the three remaining arbitrators on the list of five that the Tribe compiled, and because the Union does not agree to Burstein or Goldberg, none of those arbitrators are acceptable to both parties." The Union's counsel then stated that "I will give you until the close of business today to tell me in writing by email that the Tribe would like the Union to request a new FMCS [list]" (which, notably, the Tribe had already confirmed, considering that the Tribe was requesting that the Parties use a new FMCS list. It was the Union that previously refused and wanted to use the old FMCS list). Counsel for the Union further stated "If you do not do so, I will file the motion for contempt sanctions tomorrow" (i.e., Friday, September 27). *See* Exhibit 11.

- That same day, September 26, Wilton's counsel responded, summarizing the ongoing discussions and clarifying that "nothing in my prior email or conversations indicated that the remaining three arbitrators were unacceptable to the Tribe." In an effort to move forward and avoid unnecessary discussion about prior conversations, Wilton's counsel established the indisputable basis for the ongoing discussions stating, "[h]owever you want to frame our conversation, the Tribe's proposal was undeniably made under the ['By mutual agreement, the parties may…refer the matter…to an arbitrator selected from any other source'] provision." Wilton's counsel then presented two simple options: (1) "If the Union wants to continue attempting to use the foregoing provision, we'd be happy to review any potential arbitrator(s) the Union would like to propose;" and (2) "If the Union does not want to continue attempting to use the foregoing provision and pick a mutually agreeable arbitrator, the Union can request a new FMCS list and we will consider those names." Notably, this email was very clear that the Union could not unilaterally select an arbitrator, stating "[i]f the Union wants to continue attempting to use the [aforementioned] provision, we'd be happy to review any potential arbitrator(s) the Union would like to propose" and ending on "Please let me know which, if any, of the three remaining arbitrators on the 'list of five' would be acceptable to the Union and we likely can choose from there." *See* Exhibit 11.

- Despite indicating the Union would wait to file a motion for contempt until September 27, the Union nonetheless proceeded to file the instant Motion on September 26 at about the same time Wilton was sending the aforementioned response.

- At 11:43 a.m. on Friday, September 27, ignoring the clear and repeated statements of ongoing discussions and the direction to respond back to Wilton's counsel (if selecting an arbitrator from any other source) or seek a new FMCS list, the Union's counsel emailed Wilton's counsel and stated, in part, "[i]t appears that Wilton Rancheria is now willing to proceed before any of the five arbitrators on the list that Wilton compiled" and unilaterally selected an arbitrator. *See* Exhibit 12. At 11:52 a.m., before Wilton's counsel could respond, the Union's counsel unilaterally contacted the arbitrator the Union unilaterally

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER

7

CASE NO. 2:23-CV-02767-KJM-SCR

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

selected. In the communication, counsel for the Union misrepresented Wilton's consent (or lack thereof) to the selection of the arbitrator, stating that "[w]e would like you to serve as the sole arbitrator under the attached agreement if you are willing and have the availability to handle this time-sensitive case." *See* Exhibit 13.

- That same day, when Wilton's counsel returned to his office, he emailed the Union's counsel and clarified that Wilton's counsel "never agreed the Union could just unilaterally choose any of the three remaining [arbitrators] on the list and contact that person" and that Wilton's counsel "reasonably understood that the parties were still discussing who to choose from the list or whether to get a new FMCS list, and nothing had been finalized." The email outlined the then-recent misconduct by the Union stating, (1) "Wilton has been the only party that actually proposed any specific arbitrators for the parties to consider, first the list of five and then two from that list, and we did both [] based on your request;" (2) Wilton has also "consistently confirmed that obtaining a new FMCS list is always a possibility;" (3) "the Union did not exhaust the required meet and confer obligation before you filed" the pending Motion; and (4) the Union "unjustifiabl[y] misrepresent[ed] that Wilton agreed to use Arbitrator Hirsch." Based on this misconduct, it became apparent to Wilton that ongoing discussions on the selection of an arbitrator "from any other source" would not be fruitful and was only leading to continued arguments. Accordingly, Wilton's counsel stated that "Wilton is no longer willing to use an arbitrator by mutual agreement" and is "demanding that the parties use a new FMCS [list] and strike in accordance with the MOA." *See* Exhibit 12.

- To clarify the matter, Wilton's counsel also responded to Arbitrator Hirsch, the arbitrator the Union's counsel had emailed and apologized for the miscommunication, explaining that the Parties had not agreed to choose a specific arbitrator for this matter. *See* Exhibit 13.

- On September 30, the Parties received a new FMCS list that complies with the requirements of the MOA.

- On October 8, Wilton's counsel reached out to the Union's counsel seeking her availability to engage in the striking process and stating that under the terms of the MOA, the Parties must select an arbitrator by Monday, October 14. That same day, the Union's counsel responded stating, "I will make myself available at the time you select, but frankly, with your behavior (I understand, directed by your client), I will believe it when I see it." *See* Exhibit 14.

## III.    WILTON HAS COMPLIED WITH THE COURT'S ORDER AND CONTEMPT IS NOT APPROPRIATE.

The punitive sanction of contempt of court sought by the Union is inappropriate here. Wilton complied with the Court's Order and was in the process of resolving the matter entirely at the moment the Union preemptively filed its Motion. "The decision to award sanctions is a matter within the court's

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO HOLD DEFENDANT
WILTON RANCHERIA IN CONTEMPT OF THE
COURT'S AUGUST 7, 2024 ORDER

8                CASE NO. 2:23-CV-02767-KJM-SCR

sound discretion." *Washington v. Essex*, No. 2:12-cv-3054 JAM-DB, at *3 (E.D. Cal. June 18, 2018). Civil contempt may be an appropriate sanction when a "party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply" is demonstrated by "clear and convincing evidence." *Novotech (Australia) PTY v. SureClinical, Inc.*, 2:22-cv-01259 JAM AC (E.D. Cal. July 31, 2023) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,10 F.3d 693, 695 (9th Cir. 1993)). "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *Id.* (internal citations omitted).

As the detailed chronology makes clear, Wilton did not refuse to select an arbitrator as the Union alleges, and the Tribe "substantially complied" with the Court's Order by conferring with the Union in an earnest attempt to arrive at a mutually-agreeable arbitrator that would comply with the arbitration provision in the Parties' MOA. To accomplish this goal, the Tribe: (1) reviewed the old FMCS list and identified its failures in complying with the MOA's express requirements; (2) presented, on several occasions, the option of utilizing a new FMCS list that complies with the MOA's requirements; (3) researched and provided a list of five well-known, California-based labor arbitrators as alternative options to any FMCS list, as permitted under the MOA and requested by the Union; (4) upon request by the Union, presented two of the arbitrators that would definitively be acceptable by the Tribe despite the undue benefit to the Union; and (5) engaged in repeated and ongoing telephonic and written communication with the Union to reach an agreement as to an arbitrator. In the meantime, the Union did little more than threaten unnecessary filings and misrepresent prior conversations. The alleged delays presented in the Union's Motion is entirely based on the Union's own failure to engage with the Tribe.

Moreover, in the Motion, the Union inappropriately takes the opportunity to further support its opposition to the Motion to Vacate filed by the Tribe. For example, the Union's discussion of judicial estoppel is not only incorrect, it also is based entirely on the Tribe's efforts to vacate Arbitrator Brand's decision. Accordingly, the Court should disregard any arguments unrelated to the pending Motion.

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER

9

CASE NO. 2:23-CV-02767-KJM-SCR

## IV.     CONCLUSION

The Union's contention that the Tribe failed to comply with the Court's Order is incorrect. As established, the Tribe worked with the Union diligently and in good faith to select an arbitrator. Although the process understandably took some time, the Union filed its Motion without the proper basis for doing so. At all times leading up to, and even after, the filing of the Motion, the Parties were actively conferring about the selection of an arbitrator. The Union clearly did not need to file this Motion and, contrary to Union counsel's certification, it is not correct that "[e]fforts to resolve the issue raised by this motion have been exhausted." Accordingly, Wilton respectfully requests that the Court deny the Union's Motion and award Wilton its attorneys' fees expended in preparing this Opposition.

Respectfully submitted this 10th day of October 2024.


LITTLER MENDELSON, P.C.

*/s/ Steven G. Biddle*
John H. Adams, Jr.
Steven G. Biddle *(Pro Hac Vice)*

Attorneys for Defendant
WILTON RANCHERIA

4856-3269-0156.4 / 124796-1001

LITTLER
MENDELSON, P.C.
500 Capital Mall
Suite 2000
Sacramento, CA
95814
Phone: 916-830-7200

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD DEFENDANT WILTON RANCHERIA IN CONTEMPT OF THE COURT'S AUGUST 7, 2024 ORDER

10                  CASE NO. 2:23-CV-02767-KJM-SCR