UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE,<br><br>               Plaintiff,<br><br>   v.<br><br>Wilton Rancheria,<br><br>               Defendant. | No. 2:23-cv-02767-KJM-SCR<br><br>ORDER |

UNITE HERE is an organization that represents employees in casinos, hotels and the food service industry, and it is the plaintiff in this lawsuit. Wilton Rancheria is a federally recognized Indian Tribe, and it is the defendant. The parties completed arbitration related to the Union's efforts to organize employees at the Tribe's casino earlier this year, and the Tribe now seeks to vacate the arbitrator's award. As explained in this order, because the arbitrator's decision was rational and within his authority, the court **denies** the Tribe's motion to vacate the award.

**I.    BACKGROUND**

The Union filed this lawsuit to compel the Tribe to follow a process laid out in a 2017 "Memorandum of Agreement" or "MOA" between the two of them. *See* MOA, Compl. Ex. B, ECF No. 1; Prev. Order (Aug. 7, 2024) at 2, ECF No. 32. Under that agreement, if the Union gives written notice of its intent to organize employees at the Tribe's casino in Elk Grove, California, then the Tribe and the casino's operator are obligated to give the Union access to the

casino and its employees. *See* Prev. Order (Aug. 7, 2024) at 2. If the Union requests recognition as an exclusive collective bargaining agent, then an arbitrator checks employee authorization cards or membership records to confirm whether the Union represents a majority. *See id.* at 2–3. The Union alleges in its complaint that it received access and requested recognition, which would mean it was time to select an arbitrator, but the Tribe refused to do so. *See* Compl. ¶¶ 22, 29, 32. The Union also alleges the Tribe and its casino operator later excluded the Union's representatives from parts of the casino. *See id.* ¶ 31.

Soon after this case was filed, the Tribe moved to dismiss the Union's complaint. *See generally* Mot. Dismiss, ECF No. 5. It relied primarily on the argument that the case was unripe. *See generally* Mem. Dismiss, ECF No. 5-1. In the Tribe's view, before any disputes about the 2017 agreement and card check could be litigated or arbitrated, it was first necessary to resolve a different dispute and complete a parallel arbitration that had begun on approximately the same timeline. *See* Mem. Dismiss at 9–16. The parallel arbitration had its roots in a gaming compact between the Tribe and the State of California, which became effective in early 2018. *See id.* at 2–3. As required by that compact, the Tribe adopted a "Tribal Labor Relations Ordinance" or "TLRO." *See id.* at 2–3; *see also* TLRO, Compl. Ex. A, ECF No. 1. That ordinance makes a card check only the first step in a two-step process for recognizing a bargaining representative; the second step is a secret ballot election. *See* TLRO § 3-210.[1] The ordinance, like the 2017 agreement, includes an arbitration clause, and by the time the Union filed this case, the Tribe had already demanded arbitration under the ordinance. *See* Prev. Order at 4. Arbitration had in fact already begun. *See id.* The arbitrator, Norman Brand, had framed the issue as "[w]hether the Union must comply with the TLRO . . . or the Tribe must comply with the MOA." Case Mgmt. Order, Carroll Decl. ¶ 3 & Ex. A, ECF No. 10-2. And so, the Tribe argued, the Union's motion to compel arbitration under the 2017 agreement would be premature until the arbitrator decided whether the ordinance or agreement would control. *See* Mem. Dismiss at 9–16.

---

[1] For clarity, the court refers in this order to the section numbers used in the version of the TLRO adopted by Wilton Rancheria, not those in the version attached to the complaint. *See* Biddle Decl. Ex. 2, ECF No. 33-2.

2

1  After a hearing, this court stayed the Union's lawsuit until the pending arbitration was
2  complete. *See* Min. Order (Feb. 23, 2024), ECF No. 16. The arbitrator issued his decision a few
3  months later. *See* Joint Status Rep. & Attachment, ECF No. 18.[2] He ordered the Tribe to comply
4  with the 2017 agreement. *See* Award at 20. The arbitrator's opinion offers "three reasons for this
5  finding:"

- First, the arbitrator cited the "essential promises" of the 2017 agreement. *Id.* at 16. The Union received the Tribe's promises both to be neutral during a Union organizing campaign and to recognize a card check, and in return, the Tribe secured the Union's political support in its "efforts to have the legislature approve its compact with the State." *Id.* The "bargaining history" was, in the arbitrator's assessment, "unequivocal." *Id.* The arbitrator did not credit the testimony the Tribe had offered in support of its contrary position. The person who offered that testimony—a former Tribe chairperson—had not attend the negotiations, so he had no first-hand knowledge of what was discussed. *See id.* Nor was the arbitrator persuaded by the Tribe's claim that it had been misled about what it was agreeing to. The Tribe had been represented by an experienced negotiator who had gone up against the Union in similar negotiations about multiple similar agreements before. *See id.* at 16–17.
- Second, the arbitrator concluded that the Tribe's version of events lacked "support in the evidence, logic, or the MOA" itself. *Id.* at 17. The person who had negotiated the MOA on behalf of the Union "credibly testified" in the arbitration "that the whole purpose of the negotiation was to get a card check agreement." *Id.* The arbitrator found that position was "logical because the Union could have most of what it negotiated in the MOA—without supporting ratification of the Compact—if it sought certification through an election under the TLRO." *Id.* The arbitrator found confirmation of this conclusion in the fact that the Tribe's

---

[2] The award is also attached as an exhibit to Steven Biddle's declaration. *See* Award, Biddle Decl. Ex. 3, ECF No. 33-2.

3

interpretation of its ordinance was unprecedented and novel. *Id.* at 18. The Tribe's preferred interpretation also turned some provisions in the 2017 agreement into useless "surplusage," contrary to the rules of contract interpretation. *Id.* at 18–19.

- Third, the Tribe did not show in the arbitration that "the TLRO is a law it made as a sovereign that takes precedence over the MOA." *Id.* at 19. Rather than the act of a sovereign, the arbitrator saw the TLRO as evidence the Tribe had actually surrendered "its right to legislate about labor relations." *Id.* "Therefore," the arbitrator concluded, "enacting the TLRO did not affect the Tribe's obligations under the MOA it negotiated with the Union." *Id.* at 20.

After the arbitrator made this award, the Tribe sought to vacate it by filing a motion in this action. *See* Joint Status Rep., ECF No. 18; Prev. Order (Apr. 19, 2024), ECF No. 20; Mot. Vacate, ECF No. 22. It was clear the Tribe had not met and conferred effectively with the Union about that motion, however, as required by this court's standing orders, so the court struck it without prejudice to renewal. *See* Prev. Order (Apr. 19, 2024) at 2. The court also lifted the stay that had been in effect while the arbitration was pending, denied the Tribe's motion to dismiss, and granted the Union's motion to compel arbitration under the 2017 agreement, i.e., the card-check process. *See* Prev. Order (Aug. 7, 2024) at 13. After the court issued these orders, the Tribe renewed its motion to vacate the arbitrator's decision, this time after meeting and conferring. *See generally* Renewed Mot. Vacate, ECF No. 33. The Union opposes the motion, *see generally* Opp'n at 36, and the Tribe has filed its reply, *see generally* Reply, ECF No. 37. The court took the matter under submission without holding a hearing. Min. Order (Sept. 25, 2024), ECF No. 40.

## II.    JURISDICTION AND LEGAL STANDARD

It is first necessary to clarify the basis of this court's jurisdiction and the applicable law. The Tribe and the Union agree this court has jurisdiction, but they disagree about the reasons. The Union alleges in its complaint that this court has jurisdiction over its claims against the Union under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Compl. ¶ 5,

4

ECF No. 1. True: federal district courts have jurisdiction over suits for violations of contracts between employers and labor organizations "representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The Tribe is an employer, the Union is a labor organization representing employees in the hospitality and casino industries, and neither side doubts the 2017 agreement is a contract. *See, e.g.*, *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 702 (9th Cir. 2022) (holding district court has jurisdiction over claim for an order compelling arbitration under contract between union and tribal employer).

But section 301 of the Labor Management Relations Act does not give this court original jurisdiction over the Tribe's motion and its arguments against the Union. The Tribe is asking this court to vacate an arbitration award, not to compel arbitration. More fundamentally, a motion to vacate an arbitration award cannot fairly be called a "suit" for a "violation" of a "contract" between an employer and a labor organization. *See id.* (rejecting similar jurisdictional claim). In this case, there is only one contract between an employer and a labor organization—the 2017 agreement—and the Tribe does not contend there has been any violation of that agreement. It argues, in fact, that this court should not enforce the 2017 agreement. *See, e.g.*, Mem. at 14–15. Nor can the Tribe's labor ordinance, which it does seek to enforce, be fairly described as a "contract," let alone a contract between an employer and a labor organization.

For its part, the Tribe argues this court has jurisdiction under the disputed labor ordinance itself. *See* Mem. at 8–9. That ordinance does permit lawsuits about arbitration awards to be filed in federal court, and the Tribe has waived its sovereign immunity against such a lawsuit. *See* TLRO § 3-213(E). This court's jurisdiction, however, is not conferred in the first instance by agreements between litigants, but rather by the Constitution and by Congress. *See, e.g.*, *Badgerow v. Walters*, 596 U.S. 1, 7–8 (2022). To be sure, suits against tribes are "barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). But a sovereign's decision to waive its sovereign immunity does not automatically grant federal district courts jurisdiction over any dispute in which the same sovereign might become involved, not even when that sovereign is the United States itself. *See, e.g.*, *Fort Sill Apache Tribe v. Nat'l*

5

1    *Indian Gaming Comm'n*, 317 F. Supp. 3d 504, 513 (D.D.C. 2018) (distinguishing "affirmative
2    grant of subject matter jurisdiction" from "an unequivocal waiver of sovereign immunity").

3    Some of the Tribe's arguments also suggest it relies on the Federal Arbitration Act (FAA)
4    as an independent source of federal subject matter jurisdiction. *See, e.g.*, Reply at 2–3
5    (contending its motion was proper under cases interpreting FAA). But the FAA "does not itself
6    create jurisdiction." *Badgerow*, 596 U.S. at 4. A district court must have an independent basis
7    for federal subject matter jurisdiction before it can adjudicate a motion to vacate an arbitral award
8    under the FAA. *See id.* at 7–19.

9    Although the Tribe does not mention this court's supplemental jurisdiction, the Union has
10   suggested in other filings that this court would have supplemental jurisdiction over a counterclaim
11   by the Tribe if it asserted one. *See* Joint Status Rep. at 4, ECF No. 68. Federal district courts
12   have supplemental jurisdiction "over all other claims that are so related to claims in the action
13   within such original jurisdiction that they form part of the same case or controversy under Article
14   III of the United States Constitution." 28 U.S.C. § 1367(a). The parties' disagreement about the
15   arbitration award also is part of the same "case or controversy" as the Union's original claim, i.e.,
16   whether the Tribe must move forward with the card check as the Union demands or whether the
17   Union must follow the procedure laid out in the Tribe's labor ordinance. Exercising supplemental
18   jurisdiction in this case also would put this court in good company. Other federal courts have
19   exercised supplemental jurisdiction over similar claims in similar disputes. *See, e.g.*, *Sycuan*,
20   35 F.4th at 701; *Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres*, No.
21   17-00289, 2019 WL 6481528, at *1 & n.4 (M.D. Pa. Oct. 8, 2019), *aff'd*, 834 F. App'x 752
22   (3d Cir. 2020) (per curiam).

23   Although the Union does not doubt this court would have jurisdiction over a counterclaim
24   if the Tribe had asserted one, it points out the Tribe has not actually filed any counterclaims, nor
25   even an answer. Opp'n at 2. It has filed only motions. Based on the absence of any answer or
26   counterclaims from the docket, the Union urges the court to reject the Tribe's motion outright.
27   *See id.* at 2–4. The Tribe contends it was not required to file a counterclaim, citing cases in which

1 other courts have held a motion is the correct procedural tool for those who seek to vacate an
2 arbitration award. *See* Reply at 2–3.

3       Both of the parties' arguments are correct in part. The Federal Rules did require the Tribe
4 to answer the Union's complaint within fourteen days of this court's previous order. *See* Fed. R.
5 Civ. P. 12(a)(4). The Tribe's failure "to plead or otherwise defend" could result in the entry of
6 default. *See* Fed. R. Civ. P. 55(a). But that pleading was not a prerequisite to the Tribe's current
7 motion. Under section 10 of the FAA, a party challenging an arbitration award must file an
8 "application," not a complaint. 9 U.S.C. § 10(a). Section 6 of the Federal Arbitration Act also
9 confirms applications are to be "made and heard in the manner provided by law for the making
10 and hearing of motions," not pleadings. 9 U.S.C. § 6. The Federal Rules of Civil Procedure also
11 make an express exception for procedures required by the FAA. *See* Fed. R. Civ. P. 81(a)(6).
12 For these reasons, as the Tribe correctly points out, *see* Reply at 2–3, federal courts have held
13 repeatedly that motions are the correct procedural tool for challenging an arbitration award under
14 the FAA, *see, e.g.*, *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 570–71 (7th Cir. 2007);
15 *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46 (2d Cir. 1994);
16 *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir. 1988). And so it is
17 true both that the Federal Rules required the Tribe to file an answer in response to the Union's
18 complaint and that the Tribe could move to vacate the arbitration award without filing a
19 counterclaim.

20       It would be this simple if it were obvious that the FAA in fact governs this dispute.
21 Unfortunately it is not so obvious. Despite the Tribe's references to the FAA, it relies on the
22 California Arbitration Act to explain why, in its view, the arbitrator's award must be vacated. *See*
23 Mem. at 9–10 (citing Cal. Civ. Proc. Code § 1286.2). The Union's position is more consistent,
24 but not completely so. It cites both the Labor Management Relations Act and the FAA in the
25 jurisdictional allegations of its complaint. Compl. ¶ 5 (citing 9 U.S.C. § 1 et seq. and 29 U.S.C.
26 § 185). In opposition to the Tribe's motion, by contrast, the Union says nothing about the FAA.
27 It instead urges the court to refer solely to the "federal common law" that has developed under

1  section 301 of the Labor Management Relations Act. *See* Opp'n at 5–7 (citing 29 U.S.C.
2  § 185(a)).

3  Resolving the question of whether state law applies here is not difficult. Neither party has
4  cited anything to suggest they clearly intended the California Arbitration Act to govern this
5  dispute rather than federal law, and the court has found nothing to fill this gap. *Cf. Johnson v.*
6  *Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (requiring evidence of "clear intent" for state
7  arbitration law to apply, such as express citation of that law). The court will not test the
8  arbitration award under the terms of the California Arbitration Act.

9  Resolving which of the two federal options applies, if one does, is more difficult. The
10 Union relies on two premises to argue in favor of the Labor Management Relations Act. First, it
11 cites section 301 of the Labor Management Relations Act, which gives federal courts jurisdiction
12 over "[s]uits for violation of contracts between an employer and a labor organization." Opp'n at
13 5 (quoting 29 U.S.C. § 185(a)). Second, the Union points out it agreed to the arbitration that
14 culminated in the disputed opinion and award. *See id.* (citing Martin Decl. ¶¶ 3–4 & Exs. 2–3).
15 By the Union's reasoning, the Tribe is an "employer," the Union is a "labor organization," and
16 their agreement to arbitrate is a "contract," so the Labor Management Relations Act must apply.
17 *See id.* at 5–6.

18 The flaw in this reasoning lies in its application of section 301. As noted, that section
19 gives district courts jurisdiction over "[s]uits for violation of contracts" between employers and
20 labor organizations. 29 U.S.C. § 183(a). And again, as discussed above, a motion to vacate an
21 arbitration award cannot fairly be described as a suit for violation of a contract. It is true that, as
22 in *Sycuan*, this court has jurisdiction over the Union's claim for an order compelling arbitration
23 under the parties' 2017 agreement. *See* 35 F.4th at 702. That claim was based on the Union's
24 allegation that the Tribe violated its agreement to identify the arbitrator who would conduct a card
25 check. *See id.* The Tribe, by contrast, does not allege in its motion that the Union violated an
26 agreement, least of all its agreement to participate in arbitration under the Tribe's labor ordinance.
27 There is no dispute: the Union kept its promise to arbitrate. It participated in the arbitration
28 before Arbitrator Brand. The Tribe's claim is not that the Union has violated a contract promise,

8

1   but rather that the Union must comply with an ordinance, the TLRO, and that the arbitrator was
2   wrong to say otherwise.

3   The Union cites several cases to support its position, but in none did a court rely on the
4   Labor Management Relations Act to resolve a dispute like this one. *See* Opp'n at 5. First, in
5   *Sycuan*, discussed above, the Ninth Circuit held that section 301 did not permit the district court
6   to resolve a different tribe's claims about its own labor ordinance. *See* 35 F.4th at 702. A tribal
7   ordinance is not a contract between an employer and a labor organization. *Id.* Second, in *Service*
8   *Employees International Union v. St. Vincent Medical Center*, applying section 301 was a
9   straightforward exercise: a union alleged a hospital had refused to arbitrate as it had previously
10  agreed to do, and it sued to compel arbitration as agreed. *See* 344 F.3d 977, 981–82 (9th Cir.
11  2003). The situation was similar in *Hotel Employees, Restaurant Employees Union, Local 2 v.*
12  *Marriott*, the third case the Union cites. *See generally* 961 F.2d 1464 (9th Cir. 1992). In that
13  case, a union sought to enforce a hotel's promises to use a card check procedure and to remain
14  neutral during an organizing campaign. *See id.* at 1465–66, 1468. Fourth, the Supreme Court's
15  decision in *Retail Clerks v. Lion Dry Goods* is further afield. *See* 369 U.S. 17 (1962). The Court
16  held simply that the word "contracts" in section 301(a) includes more than just "collective
17  bargaining contracts." *See id.* 25–26. The fifth and final case the Union cites in its opposition
18  does more to undermine its position than strengthen it: in that case, another judge of this court
19  confirmed a disputed arbitration award under the Federal Arbitration Act—not the Labor
20  Management Relations Act. *See Unite Here Loc. 19 v. Picayune Rancheria of Chukchansi*
21  *Indians*, 101 F. Supp. 3d 929, 933–34 (E.D. Cal. 2015) (applying 9 U.S.C. § 10(c)).

22  The Union also cites cases in which courts have held that section 301 "grants a district
23  court jurisdiction to enforce [or vacate] an arbitration award entered into pursuant to a collective
24  bargaining agreement." *Sheet Metal Workers Int'l Ass'n, Loc. Union No. 150 v. Air Sys. Eng'g,*
25  *Inc.*, 948 F.2d 1089, 1091 (9th Cir. 1990); *see also, e.g., Sheet Metal Workers' Int'l Ass'n Loc.*
26  *Union No. 359 v. Madison Indus., Inc. of Arizona*, 84 F.3d 1186, 1190 (9th Cir. 1996). The
27  arbitration award in this case was not "entered into pursuant to a collective bargaining
28  agreement." The arbitration was conducted under the Tribe's disputed labor ordinance.

9

The FAA offers a better fit than the Labor Management Relations Act. The FAA applies broadly to all arbitration agreements "evidencing a transaction involving commerce" under section 2. 9 U.S.C. § 2. Nothing in the record suggests any reason to doubt the Tribe's agreement to arbitrate with the Union under the TRLO evidences a "transaction involving commerce." Section 10 also includes specific and directly applicable standards for motions to vacate arbitration awards. *See* 9 U.S.C. § 10(a).[3]

Section 1 of the FAA does include a carveout clarifying it does not govern arbitrations about "contracts of employment." 9 U.S.C. § 1. That language may suggest "Congress did not mean the [FAA] to be used to review arbitration awards involving collective bargaining agreements." *San Diego Cnty. Dist. Council of Carpenters of United Bhd. of Carpenters & Joiners of Am. v. Cory*, 685 F.2d 1137, 1141 (9th Cir. 1982). But it does not suggest Congress intended to exclude disputes like this one, in which no party has entered a "collective bargaining agreement" and no one has cited any particular "contracts of employment."

For these reasons, the court finds section 10 of the FAA provides the best choice of legal standards for adjudicating the Tribe's motion. Having reached this conclusion, the court also finds that a motion, not a counterclaim, is the correct vehicle for challenging the arbitrator's award, as explained above.

## III. DISCUSSION

At the outset, contrary to the Union's argument in opposition, the Tribe sought to vacate the arbitration award before the relevant deadline. *See* Opp'n at 4. Under the FAA, "[n]otice of a

---

[3] The arbitration was conducted in Sacramento, California, which is within this District. *See* Award at 3. The arbitrator appears to have signed the award in San Francisco, California, *see id.* at 20, which is within the Northern District of California. Despite that reference to San Francisco, the court finds the award was made within this District for purposes of section 10(a) of the Federal Arbitration Act. *See* 9 U.S.C. § 10(a) ("In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . ."). The court also finds this District is the appropriate statutory venue for the Tribe's motion. *See* 28 U.S.C. § 1391(b)(1) and (2) ("A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .").

10

motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The Tribe first moved to vacate the award on June 14, 2024, within three months of the day the award was made on March 17, 2024, and it renewed its motion without any prejudicial delays. *Cf. Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (holding three-month deadline is subject to equitable tolling if claimant acted with due diligence in pursuing its claim and tolling would not prejudice opposing party).

Under section 10 of the FAA, the court may vacate an arbitration award in only a few limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Supreme Court and Ninth Circuit have confirmed these are the only reasons a court can vacate an award. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)). The party seeking to vacate an arbitration award must show it is entitled to that relief. *Id.*

The Tribe does not offer evidence of corruption, fraud, partiality, misconduct, misbehavior, or refusals to postpone hearings or hear evidence. It argues the arbitrator exceeded his authority, *see* Renewed Mem. Vacate at 11–12, ECF No. 33-1, disregarded the Tribe's status as a sovereign nation, *id.* 13–14, and irrationally allowed a private agreement to supersede a binding ordinance, *id.* at 14–15. These arguments can fairly be characterized as contentions that

11

the arbitrator "exceeded [his] powers" or "imperfectly executed them" under section 10(a)(4). The court will measure the award in this case against that standard.

That said, this is a "highly deferential" standard. *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1192 (9th Cir. 2004). Awards cannot be vacated under section 10(a)(4) just because an arbitrator has misinterpreted the law or applied it incorrectly. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc). Nor do factual errors alone justify a vacatur. *Coutee v. Barington Cap. Grp., L.P.*, 336 F.3d 1128, 1133–34 (9th Cir. 2003). District courts do not weigh evidence again or revisit factual disputes in response to motions to vacate, nor do they decide whether the arbitrator's legal reasoning was right or wrong. *See Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009). To prevail, the party challenging an award must show the award was "'completely irrational' or exhibits a 'manifest disregard of law." *Kyocera*, 341 F.3d at 997 (first quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986), then quoting *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1059–60 (9th Cir. 1991)). "[P]lausible" and "arguabl[e]" reasoning withstands a motion under section 10. *See U.S. Life*, 591 F.3d at 1178 (first quoting *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir. 1991), then quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

The Tribe has not shown the arbitrator exceeded his powers or executed them "imperfectly" under this standard. Contrary to the Tribe's motion, the arbitrator did not "disregard" the Tribe's sovereignty, Renewed Mem. Vacate at 13; refuse to recognize the Tribe as a "sovereign government with legislative authority," *id.* at 11; or "unreasonably subordinate[] the TLRO" to an "illegal" private agreement, i.e., the parties' 2017 Memorandum of Agreement, *id.* at 12–13, 14–15. He considered and rejected the Tribe's argument that its ordinance was "a law that is made as a sovereign." Award at 19. He concluded the Tribe had "ceded its power to regulate labor relations" to California based on evidence about the compact's negotiation and language within the ordinance. *Id.* For that reason, in his view, the labor ordinance "was not a sovereign act but a compact obligation to the State," and it "did not affect the Tribe's obligations under the MOA it negotiated with the Union." *Id.* at 20. Right or wrong, that conclusion is not

"completely irrational." *Kyocera*, 341 F.3d at 997 (quoting *French*, 784 F.2d at 906). As the arbitrator explained, the Tribe agreed to pass the ordinance as part of its gaming compact. It added prefatory language to its ordinance implying it would not have adopted that ordinance if it had not been required to do so. *See* Award at 6–7.

The Tribe also contends the arbitrator exceeded his authority by enforcing the Tribe's 2017 agreement with the Union rather than its labor ordinance. *See, e.g.*, Reply at 8. That is, by the Tribe's argument, the only authority the arbitrator had was to enforce the ordinance, which meant any other decision would go beyond his authority. *See id.* ("The Arbitrator clearly exceeded his authority by giving effect to a contract over the statutory rights of the Tribe (to enact legislation as a sovereign) and the statutory rights of the Casino employees under the TLRO, thereby violating public policy."). But the Tribe agreed in the arbitration that the arbitrator's role was to decide "[w]hether the Union must comply with the TLRO . . . or the Tribe must comply with the MOA . . . ." Award at 3. The Tribe cannot agree to arbitrate whether the labor ordinance or 2017 agreement is applicable, then contend in this court in a motion to vacate that the arbitrator had authority only to enforce the ordinance. As the Ninth Circuit has put it, a party cannot agree to arbitrate a particular issue, "await the outcome and, after an unfavorable decision, challenge the authority of the arbitrators to act on that very issue." *PowerAgent*, 358 F.3d at 1192.

Nor did the arbitrator act irrationally by "discounting" testimony by the Tribe's former Chairman, as the Tribe contends. *See* Renewed Mem. Vacate at 12. The arbitrator heard and considered the former chairman's testimony, found he was not "credible," and explained why. Award at 11, 16–17. His reasons were not irrational: the chairman was not present during the negotiations in question, and his opinions were not logical in the broader context of the Tribe's negotiations. This court cannot now second-guess these conclusions, even if they were wrong, as the Tribe contends. *See, e.g.*, *Bosack*, 586 F.3d at 1106 ("We have repeatedly held that an award may not be vacated even where there is a clearly erroneous finding of fact.").

Finally, the Tribe contends in reply that the arbitrator disregarded paragraph two of the 2017 agreement. *See* Reply at 6–7. That paragraph states the parties' joint position "that the

13

1   Tribal Labor Relations Ordinance governs labor relations at the Casino." MOA ¶ 2. The
2   arbitrator did not disregard that paragraph. He quoted it and explained two reasons why the
3   Tribe's arguments were "unconvincing." Award at 18–19. First, although several other tribes
4   had entered similar agreements and had passed similar ordinances, none had advanced the
5   argument the Tribe was then making. *See id.* at 18. Second, the Tribe's position would render
6   paragraph 7, which created the card check procedure, "surplusage." *Id.* The arbitrator declined to
7   adopt "an interpretation of one part of a contract that makes another part surplusage." *Id.*
8       In sum, the record shows the arbitrator considered the parties' 2017 agreement, the Tribe's
9   labor ordinance, and the negotiations and histories behind each of those documents, then weighed
10  the evidence and arguments each side presented. He considered the Tribe's arguments and
11  rejected them, and he explained why. Right or wrong, his conclusions were rational. This court
12  cannot vacate the award under section 10 of the Federal Arbitration Act, which is the applicable
13  legal standard.

## IV.  CONCLUSION

The court **denies** the motion to vacate (ECF No. 33). The parties are **ordered to show cause within fourteen days** why this action should not be closed and judgment entered in favor of the Union.

IT IS SO ORDERED.

DATED: December 6, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE